UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-60080-Civ-MARRA/JOHNSON

COURT APPOINTED RECEIVER
of LANCER OFFSHORE, INC.
and OMNIFUND, LTD.

      Plaintiff

vs.

THE CITCO GROUP LTD., CITCO
FUND SERVICES (CURACAO) N.V.,
CITCO FUND SERVICES (USA) INC.,
INTER CARIBBEAN SERVICES, LTD.,
ANTHONY STOCKS, KIERAN CONROY,
and DECLAN QUILLIGAN

      Defendants.

_____/

_____**ORDER AND OPINION ON THE CITCO GROUP**
_____**AND CITCO USA'S MOTION TO DISMISS**

      **THIS CAUSE** is before the Court upon The Citco Group Ltd. and Citco Fund

Services (USA), Inc.'s Motion to Dismiss the Receiver's Amended Complaint [DE 49].

The motion is fully briefed and ripe for review.

      The 113-page, 319 paragraph Amended Complaint ("Complaint" or "Compl.")

contains eleven separate counts.  In the Complaint, the Receiver sues, among other

defendants, The Citco Group Ltd. ("The Citco Group"), Citco Fund Services (USA),

Inc. ("CFS-USA") and Citco Fund Services (Curacao) N.V. ("CFS-Curacao").  The

Receiver refers to these three defendants collectively as the "Citco Defendants" even

though they are three distinct corporations.  The Citco Group is the parent and CFS-

Curacao and CFS-USA are subsidiaries.  The Receiver's claims against the "Citco Defendants" stem from CFS-Curacao's contractual role as administrator of two offshore hedge funds: Lancer Offshore, Inc. and the OmniFund, Ltd. (collectively, the "Offshore Funds" or "Funds").  The Receiver brings this action on behalf of the Offshore Funds and asserts claims for damages caused directly to the Funds by defendants, as opposed to any damages the defendants may have caused to the Offshore Funds' investors and creditors.

The Receiver brings claims against the "Citco Defendants" for professional malpractice, gross negligence, breach of fiduciary duty under common law and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and breach of contract.  The Receiver brings this action against the "Citco Defendants" for their actions and inactions that allegedly breached their respective fiduciary duties to the Offshore Funds.  The Citco Group and CFS-USA filed the instant motion to dismiss; CFS-Curacao filed a separate motion to dismiss which is addressed by separate order.

Movants argue the Receiver improperly ascribes the alleged duties and breaches of CFS-Curacao to the "Citco Defendants" as a whole, without distinguishing among the three separate corporate entities, in violation of Rule of Civil Procedure 8(a).  Defendants argue the Amended Complaint fails to state claims against them because the Receiver does not articulate what alleged acts or duties are attributable to The Citco Group or to CFS-USA, and instead lumps them together with CFS-

Curacao.  Movants also argue for dismissal of Count I (professional malpractice),

Count II (breach of contract), Count III (gross negligence), Count IV (breach of

fiduciary duty), Counts VI and VII (aiding and abetting a breach of fiduciary duty),

Count IX (ERISA) and XI (ERISA co-fiduciary).   Finally, Movants argue the Amended

Complaint should be dismissed under the doctrine of *forum non conveniens*.

## Facts[1]

### The "Citco Defendants" Individually

**The Citco Group**

The parent, The Citco Group, is an integrated financial services holding

company that operates through numerous subsidiaries.  Compl. ¶ 24.  The Citco Group

offers corporate and fiduciary services, fund administration and shareholder services,

custody and banking, fund advisory and brokerage services, and international pension

services.  *Id.*  The Citco Group does not earn any revenue independent of the revenue

generated by its subsidiaries, and it serves as the vehicle by which its operating

subsidiaries procure business, and it conducts extensive fund management services

for funds operated within the United States and around the world.  Compl. ¶ 25.  The

Citco Group holds its network of subsidiaries out as the world's top providers of hedge

fund administration services.  Compl. ¶ 27.  The Citco Group represents that its

operating subsidiaries constitute a "global fund administrator" and that its operating

_____

[1]  The facts are gleaned from the Amended Complaint and accepted, for
purposes of this motion, as true.

subsidiaries' ability to administer funds in offices throughout the world renders the combined enterprise able to provide a "consistent service platform."  Compl. ¶ 29.

The Citco Group claims that its operating subsidiaries allow its personnel "the ability to transfer between offices and divisions" in order to maintain consistent levels of performance worldwide.  Compl. ¶ 30.  Substantially all information regarding hedge funds administered by any of The Citco Group's offices is maintained in a centralized database that can be accessed by the fund manager.  Compl. ¶ 31.

William Keunen ("Keunen") is the Director of Fund Services for The Citco Group.  The managing director of each office of The Citco Group that provides fund administration services reports to Keunen.  Compl. ¶ 37.  Keunen, in turn, reports to a four-person executive committee for The Citco Group.  *Id.*  In his role with The Citco Group, Keunen was involved directly with the issues in this case, as he received and responded to both internal and external e-mail inquiries regarding the Offshore Funds, received and responded to correspondence regarding the Offshore Funds, and engaged in meetings and telephone discussions with various Lancer and Citco personnel regarding the Offshore Funds.  Compl. ¶ 38. Further, Keunen reported to all Citco directors regarding issues that Citco's internal audit department raised in May 2002 regarding the Lancer portfolio and fund valuation.  *Id.*

**CFS-Curacao**[2]

CFS-Curacao is the Curacao based operating subsidiary of The Citco Group. Compl. ¶ 19.  CFS-Curacao performed extensive fund management services for Offshore Funds while those funds were operated and managed by Lauer and Lancer. Compl. ¶ 21.  Pursuant to formal Administrative Service Agreements ("ASAs"), CFS-Curacao was to provide clerical and administrative services to the Offshore Funds, including maintaining the Funds' financial books and records, processing subscriptions and redemptions, and computing the Net Asset Value ("NAV") of the Offshore Funds. Compl. Ex. H.

**CFS-USA**

CFS-USA holds itself out as an office of The Citco Group.  Compl. ¶ 28. William Keunen, the Director of Fund Services for The Citco Group, is an officer of CFS-USA.  Compl. ¶¶ 36-37.  CFS-USA maintains a sophisticated, trademarked software system called "Ephesus," which has "fully integrated general ledger capabilities. . ."  Compl. ¶ 33.  This software system includes "an order entry and order acceptance based system to process subscriptions, redemptions (including cash tracking), transfers and switches," and a sophisticated intranet.  *Id.*  This software is available to and used by the rest of The Citco Group's entities around the world.  *Id.*

---

[2]  As noted above, CFS-Curacao has filed its own separate motion to dismiss which is addressed by separate order.

<u>Standard of Review</u>

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.* at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*

<u>Grouping the Parent with Two Subsidiaries</u>

Defendants move to dismiss the complaint for failing to comply with Fed.R.Civ.P. 8 ("Rule 8").  To satisfy the notice pleading standard under Rule 8, a

complaint must set forth a short and plain statement of the facts upon which the claim is based that is sufficient to give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest.  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'"  *Roe v. Aware Woman Center for Choice, Inc.*  253 F.3d 678, 683 (11th Cir. 2001) (citing *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

In this case, the Complaint does not always differentiate between The Citco Group, the parent, and The Citco Group's two subsidiaries, CFS-Curacao and CFS-USA. Instead, in many instances, the Complaint alleges violations by the collective "Citco Defendants."   The Receiver employs this categorization even though he acknowledges that The Citco Group, CFS-USA and CFS-Curacao are three separate corporate entities.  Compl. ¶¶ 19, 24, 35.  By lumping these three defendants together in each claim and providing minimal individualized allegations to distinguish their conduct, even though their roles were different, the Receiver's Complaint challenges the standard of Rule 8.  *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2nd Cir. 2001); *Median v. Bauer*, 2004 WL 136636, *6 (S.D.N.Y. Jan. 27, 2004) (a plaintiff fails to satisfy Rule 8 where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the

defendants as to what they did wrong); *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005); *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, 2004 WL 2813121, *7 (S.D.N.Y. Dec. 8, 2004).  The Citco Group and CFS-USA argue that the vague and consistent use of the term "Citco Defendants" renders the Amended Complaint unanswerable.[3]

Here, the Receiver's grouping of three defendants which stand in different relationships to the Funds creates unnecessary confusion.  Throughout the 319 paragraphs of the Complaint, the Receiver makes hundreds of references to the "Citco Defendants" as a single, monolithic entity, ignoring the very obvious distinctions between CFS-Curacao, the administrator of the Offshore Funds, and The Citco Group and CFS-USA, separate corporations with no apparent contractual or legal duties to the Offshore Funds.  For instance, in paragraph 10, it is alleged ". . . the

---

[3] The requirements of Rule 8 is particularly pertinent here since the Receiver is suing both a parent corporation and two subsidiaries.  Indeed, even though the Complaint does not expressly invoke a "veil-piercing" theory of liability, Movants assume the Receiver is invoking such a theory because he seeks to hold The Citco Group and CFS-USA liable for the alleged acts of CFS-Curacao solely because of the corporate affiliation between them.  Generally, to state a cognizable claim for piercing the corporate veil, the plaintiff must allege facts that, if taken as true, demonstrate that the subsidiaries are mere instrumentalities of the parent, and that the defendants engaged in "improper conduct" in the formation or use of the subsidiary.  *See, e.g., MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1357 (S.D. Fla. 2000); *Aldea Communications, Inc. v. Gardner*, 725 So.2d 456 (Fla. Dist. Ct. App. 1999); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1119-20 (Fla. 1984).  For purposes of the instant motion, the Court agrees with Movants that the Receiver has not alleged a veil piercing theory of liability.  *See Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 845 (11th Cir. 1989).

Citco Defendants served as administrator for the Offshore Funds . . ."  Compl. ¶ 10.

Even though the Receiver acknowledges that The Citco Group and CFS-USA were not

in direct contractual privity with the Funds, he asserts that they, together with CFS-

Curacao, acted as fund administrators.

Additionally, the Receiver claims that he seeks to hold Movants directly liable

for their own misconduct as well as vicariously liable as agents or alter egos of CFS-

Curacao.  The Receiver claims that by this motion The Citco Group and CFS-USA

improperly attempt to avoid liability for their direct participation in formulating,

participating, ratifying, monitoring, and implementing the Offshore Funds' bogus

valuations by hiding behind corporate formalities.

**Specific Allegations Relating to The Citco Group**

By repeatedly grouping these three defendants and yet arguing that he alleges

individual action on the part of Movants when he does not, the Receiver creates

confusion and makes the analysis in this case unnecessarily burdensome.  For

instance, in defense of his argument that he does allege direct participation by The

Citco Group and CFS-USA, the Receiver asserts that he "pleads that *The Citco Group

and Citco USA* (i) 'signed off on grossly inflated valuations and collected their

administrative fees, which were based on these grossly inflated valuations;' (ii)

'knowingly accepted and approved Lauer's absurd valuations;' and (iii) '[directed]

that NAV's be issued even in the face of overwhelming evidence that Lauer

manipulated fund values and claimed absurd valuations for certain holdings in various

companies in the Offshore Funds' portfolios.' Compl. ¶¶ 3, 8, 10." DE 70 at 3 (emphasis supplied). This is just not accurate. In the three paragraphs cited to illustrate his argument, the Receiver only names the "Citco Defendants."

With this said, and ignoring for purposes of this discussion the countless times the term "Citco Defendants" is employed in the Complaint,[4] the Court finds merit in the Receiver's claim that the Complaint includes sufficient individualize allegations that The Citco Group directly participated in CFS-Curacao's wrongful acts through the conduit of The Citco Group's own management. As noted previously, the Receiver alleges that The Citco Group and its subsidiaries constitute a global fund administrator. Compl. ¶ 29. It is further alleged that after receiving an e-mail from Director Defendant Declan Quilligan, which detailed the litany of problems with the Offshore Funds' inflated valuations, William Keunen, acting within his authority as Director of Fund Services for The Citco Group, directed CFS-Curacao to "send out the NAV for January." Compl. ¶¶ 37, 165; *see* Exhibit Q. It is also alleged that Keunen drafted a memorandum to Christopher Smeets, President and CEO of The Citco Group, which detailed the overstated values of the Offshore Funds and concluded that if PricewaterhouseCoopers Curacao, the Offshore Funds' auditors, "decide not to sign, our mission is clear - resign immediately . . . if PwC do sign, we should still

---

[4] Indeed, the majority of the paragraphs cited by the Receiver in support of his argument that he asserts claims against The Citco Group and CFS-USA, either make generic reference to "the Citco Defendants" (Compl. ¶¶ 3, 7-11, 67, 115-117, 167) or contain allegations of corporate affiliations ( Compl. ¶¶ 14, 17, 37).

consider our exit strategy, but by doing [sic] is likely to create shock-waves that could cause significant distress, and our association will not be pretty."  Compl. ¶ 170.  It is also alleged that Keunen wrote in preparation for The Citco Group's executive committee meeting: "[t]he other topic for the EC this week will be Lancer - we need to have our strategy in place."  Compl. ¶ 172.

Based on these allegations, the Court finds that the Complaint alleges sufficient facts specifically related to The Citco Group as a separate and independent entity to conduct an analysis of the claims asserted against it.  *See In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) (quoting *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998)) ("where the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of,'" the parent corporation will be "directly liable for its own actions.")

**Insufficient Allegations Against CFS-USA**

While the Court has found that the Complaint contains sufficient individualized allegations to analyze the claims asserted against both The Citco Group, and in another Order, against CFS-Curacao, (two of the three "Citco Defendants"), the Court cannot see how CFS-USA is properly brought into the fold.  The Receiver's allegation that CFS-USA maintains a sophisticated software system used by The Citco Group's subsidiaries world wide is insufficient to state a claim.  The only thread that connects CFS-USA to this suit is the fact that William Keunen is a named officer of that

company.  But there are no allegations that Keunen took any action as an officer of

CFS-USA.  Having Keunen as a named officer, in and of itself, does not suggest direct

participation by CFS-USA.  As the Complaint fails to state a claim against CFS-USA,

CFS-USA is dismissed from this cause, without prejudice.  If the Receiver includes

CFS-USA in his Amended Complaint, he must make independent allegations against it

which demonstrate it engaged in wrongful conduct.

**Common Law Tort Claims**[5]

**Professional Malpractice**

In Count I, the Receiver purports to state a claim for professional malpractice

against the Citco Defendants.  Compl. ¶¶ 181-184.  Movants argue that Count I must

be rejected because the Receiver alleges no possible basis for finding that either

entity is a "professional" under Florida law.  As this Court recently held in a related

matter, a claim for professional malpractice cannot stand where there are no

allegations that the defendant was required to obtain a four-year degree for licensing

in Florida.  *See Bruhl et al. v. PricewaterhouseCoopers Int'l et al.*, No. 03-23044,

---

[5]  Movants state that it is not necessary for the Court to engage in a choice of law analysis, since according to them, the Receiver's Complaint fails to state causes of action in tort under both the law of the British Virgin Islands and Florida.  The Receiver believes that under a conflicts of law analysis Florida law applies.  In any event, both the Receiver and Movants agree that Florida law can and should be applied to the claims asserted in this matter.  Since there appears to be no dispute among the parties on what law may be applied to resolve the issues raised in the instant motion, the Court will look to Florida law for the sufficiency of the common law tort claims.

2007 WL 983263, at *8 (S.D. Fla. Mar. 27, 2007) ("*Bruhl*").

Since the Complaint contains no allegations which would bring Movants within the definition of a "professional," this claim fails as a matter of law.  *See e.g., Garden v. Frier*, 602 So.2d 1273, 1275 (Fla.1992); *Warter v. Boston Securities*, No. 03-81026, 2004 U.S. Dist. LEXIS 5682, at *13 (S.D. Fla. Mar. 22, 2004) ("a securities broker is not a 'professional' for purposes of the economic loss rule because securities brokers are not required to obtain a four-year degree for licensing in Florida"); *Moransais v. Heathman*, 744 So.2d 973, 976 (Fla. 1999).

That The Citco Group promotes its network of subsidiaries as the world's top provider of hedge fund administration services is irrelevant.  Absent allegations that Movants meet the definition of a professional under Florida law, Plaintiffs' malpractice claim must be dismissed.  The Receiver's arguments regarding not needing direct privity would be relevant only if Movants were professionals.  Accordingly, the motion to dismiss Count 1 as to Movants will be granted, without prejudice.

**Breach of Contract**

Movants argue that the Receiver cannot state a cause of action for breach of contract against The Citco Group and CFS-USA (Count II) because the Administrative Services Agreements at issue were with CFS-Curacao alone, not with the "Citco Defendants."  "Because neither [The Citco Group] nor CFS-USA is a party to the contracts at issue, this Count must be dismissed."  DE 50 at 14.  The Receiver

responds by claiming that the Complaint sufficiently alleges CFS-Curacao's actual and apparent agency and for this reason, The Citco Group and CFS-USA are vicariously liable for breach of contract and the various tort claims.

As far as CFS-USA is concerned, the Complaint does not invoke an agency theory against it and the Receiver's attempt in his response memorandum to argue a principal-agent relationship between CFS-USA and CFS-Curacao is rejected.  With respect to The Citco Group, the Receiver alleges only that '[b]ecause [CFS-Curacao] served as the fund administrator for the Offshore Funds as an agent, division, and/or joint venturer of The Citco Group . . . the Receiver brings these claims against The Citco Group as well."  Compl. ¶ 7

Moving to the law of agency, a defendant could be sued under the theory of actual authority or apparent authority.  For actual authority to exist such that the principal is bound, there must be an agency relationship, which requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent.  *Font v. Stanley Steemer Int'l, Inc.*, 849 So.2d 1214, 1215 (Fla. Dist. Ct. App. 2003); *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003).  The Court finds the Complaint does not allege an actual agency relationship between The Citco Group and CFS-Curacao because the Receiver has not pled "acknowledgment" by The Citco Group, or "acceptance" by CFS-Curacao.

The Receiver claims to allege acknowledgment through his allegations relating to The Citco Group's marketing materials where it is allegedly stated that The Citco Group prices the portfolios and determines Net Asset Value ("NAV"), and by alleging that Keunen, the Director of Fund Services of The Citco Group, received and responded to e-mail inquiries and correspondence regarding the Offshore Funds. Compl. ¶ 91.  These claims do not allege any express understanding between The Citco Group and CFS-Curacao pursuant to which CFS-Curacao would act on behalf of The Citco Group as its agent.  Moreover, there is no allegation of acceptance on the part of CFS-Curacao.  Claims that CFS-Curacao "performed extensive fund management services for Offshore and Omnifund," and had "been retained by the Fund to perform administrative services for the Fund," do not show "acceptance" to act as The Citco Group's agent.  Compl. ¶¶ 21, 27.

Apparent authority exists when the principal creates the appearance of an agency relationship.  *Ja Dan, Inc. v. L-J Inc.*, 898 F.Supp. 894, 900 (S.D. Fla. 1995). Three elements are required to establish an apparent agency: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation.  *Roessler v. Novak,* 858 So.2d 1158, 1161-62 (Fla. Dist. Ct. App. 2003).  The Court stops its analysis at element (a) because the Receiver does not allege that The Citco Group made *any* representation that it was authorizing CFS-Curacao to act as its agent to provide administrative services for the Funds.  Therefore, the Receiver's Complaint

does not allege vicarious liability on the Citco Group through an apparent agency relationship theory.  Thus, the Receiver has not stated a claim against The Citco Group for CFS-Curacao's breach of contract.  Accordingly, the motion to dismiss Count II as to Movants will be granted, without prejudice.

**Gross Negligence**

Count III of the Complaint alleges that the Citco Defendants willfully, knowingly and recklessly failed to use reasonable skill and care in their duties as administrator and that such conduct was so egregious as to rise to the level of gross negligence.  Movants move to dismiss this count asserting that the Receiver has failed to allege the existence of a duty of care owing by The Citco Group or CFS-USA to the Offshore Funds or that these defendants engaged in any conduct that would constitute a breach of any purported duty.

To state a claim for negligence, the Receiver must plead that The Citco Group and CFS-USA owed a duty of care to the Offshore Funds; they breached this duty; and that the Offshore Funds were injured by this breach, resulting in damages.  *Miles v. Naval Aviation Museum Found, Inc.*, 289 F.3d 715, 722 (11th Cir. 2002).  Gross negligence is established by facts evincing a reckless, wanton, and willful disregard of these duties.  *See Ryan v. Bryant*, 417 So. 2d 658, 670 (Fla. 1982).

The Receiver cites to paragraphs throughout the Complaint in support of his claim that the Movants owed a duty to disclose their actual knowledge of Lauer's malfeasance and to speak accurately.  These cites include the paragraphs wherein

the Receiver asserts personal jurisdiction over each of the Movants (Compl. ¶¶ 47, 49,

50), to paragraphs where the Receiver alleges conduct on the part of the "Citco

Defendants" (¶¶ 8, 9, 10, 115, 116), and to the paragraphs 165, 169 and 172 where

the Receiver quotes from e-mails sent among The Citco Group officers and internal

auditor wherein "'Defendants' continued plotting for their own exit as fund

administrator" Compl. ¶ 172.  These allegations do not state a claim for gross

negligence.  For those paragraphs in which the collective "Citco Defendant" is

employed, this term is too vague and does not allege a duty on the part of either of

these Defendants.  As far as the e-mails are concerned, even if true, they  do not

show that The Citco Group had a duty to disclose.  The motion to dismiss Count III as

to Movants will be granted, with leave to amend.

**Breach of Fiduciary Duty**

Movants move to dismiss Count IV of the Complaint for failure to state a claim

for breach of fiduciary duty.  Movants argue the Receiver has not alleged any factual

allegations that would support a finding of a fiduciary relationship between either

The Citco Group or CFS-USA and the Offshore Funds, much less a breach of any such

duty.  The Receiver defends this claim asserting that he has alleged facts

demonstrating the dependency of the Offshore Funds on the Citco Defendants'

unified global service platform and the acquisition and abuse of the trust of the Funds

at the hands of Movants: "[t]he Complaint set [sic] forth the various representations,

solicitations, marketing materials, and other means by which the Citco Defendants

held themselves out as a unified global service platform comprising The Citco Group, Citco Fund Services, Citco N.V., and Citco USA."  DE 70 at 12 citing Compl. ¶¶ 27-29.

An *implied* fiduciary relationship may be found based on special circumstances surrounding the transaction and the relationship of the parties, *see Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994), and may be found when confidence is reposed by one party and a trust accepted by the other.  *Maxwell v. First United Bank*, 782 So.2d 931, 933-34 (Fla. Dist. Ct. App. 2001); *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D. Fla. 1991) (fiduciary relationship is recognized under Florida law when there is a showing of dependency by one party and some undertaking by the other party to advise, counsel and protect that party).
In *Capital Bank,* the Third District Court of Appeal held that "special circumstances" gave rise to a fiduciary duty where the defendant bank stepped out of its typical role as lender and had become an investment advisor to the plaintiff.  *Capital Bank*, 644 So.2d at 521.

Holding themselves out to the public, through marketing materials, as an integrated, worldwide company does not rise to the level of alleging that the Funds expressly "reposed their confidence" in The Citco Group or CFS-USA, or that they in turn "accepted" that trust.  *See Gracey v. Eaker*, 837 So.2d 348, 352 (Fla. 2002). Although the Receiver argues that Movants "were aware of the dependence of the Offshore Funds on its advertisements and representations," nowhere does the Complaint allege either reliance by the Funds, or actual knowledge of such reliance.

DE 70 at 13.  In fact, as the Receiver concedes, the marketing materials "were not directly targeted at the Offshore Funds."  DE 70 at 8.  Further, the cited statements do not contain anything suggesting that The Citco Group or CFS-USA would assume responsibility for the services that CFS-Curacao contracted to provide.  Accordingly, the motion to dismiss that part of Count IV that attempts to allege a breach of fiduciary duty as to Movants will be granted, with leave to amend.

**Aiding and Abetting a Breach of Fiduciary Duty**

The Receiver alleges that Movants aided and abetted a breach of fiduciary duty by the Director Defendants (Count VI) and also by Lauer (Count VII).  A claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla. 2002); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

Movants argue that the Receiver has not alleged that they substantially assisted or encouraged the alleged wrongdoing of either the Director Defendants or Lauer:  "The Receiver does not allege that The Citco Group or CFS-USA took any affirmative action to assist any breach of fiduciary duty.  Instead, the Receiver alleges only omissions by the 'Citco Defendants'. . ."  DE 50 at 16.  The Receiver asserts that he has alleged substantial assistance, but the few paragraphs cited refer

to the "Citco Defendants." Accordingly, for failing to allege adequately the element of substantial assistance, the Court finds that Plaintiffs have failed to state a claim for aiding and abetting breach of fiduciary duty and Movants' motion to dismiss this count will be granted, without prejudice.

## Employee Retirement Income Security Act

The Receiver next purports to bring two statutory claims against Movants under the Employee Retirement Income Security Act ("ERISA"), one for primary liability as a fiduciary under the statute (Count IX), and the other based on an alleged violation as a co-fiduciary (Count XI). Movants argue that both of these ERISA claims must be dismissed because the Receiver lacks standing to bring these claims on behalf of Offshore, and because the Receiver has not properly stated claims under ERISA.

## Standing to Assert ERISA Claims on Behalf of Lancer Offshore

Movants assert that the Receiver lacks standing to bring claims under ERISA because Lancer Offshore, for whom the Receiver has been appointed and in whose shoes the Receiver stands, could not have brought these claims itself. The Court finds the Receiver has adequately alleged facts to demonstrate his standing to bring ERISA claims.

The ERISA provisions conferring standing to sue for fiduciary breach do not expressly confer standing on the plan itself, but rather on "a participant, beneficiary or fiduciary." ERISA § 502(a)(2) and (3) (29 U.S.C. § 1132(a)(2) and (3)) (providing that an ERISA fiduciary may sue for fiduciary breach and equitable relief). *See Gulf*

*Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987).  Thus, the Receiver can only bring claims that the Funds could have brought.  A question then arises as to whether Offshore is a fiduciary with respect to an ERISA plan.

The Receiver argues that his standing to sue under ERISA hinges on whether the Receiver is an ERISA fiduciary.  The Receiver's fiduciary status is premised on his exercising control respecting ERISA "plan assets."

Section 3(21)(A) of ERISA (29 U.S.C. § 1002(21)(A)) provides in relevant part that a "person"[6] is a "fiduciary" with respect to an ERISA plan to the extent that the person exercises any discretionary authority or discretionary control with respect to the management or disposition of plan assets, or "renders investment advice for a fee or other compensation, direct or indirect, with respect to" any plan assets, or has the authority or responsibility to do so.  *Id.*

Thus the first question is whether the underlying assets of Offshore are deemed to be ERISA plan assets.  This determination is governed by the Department of Labor's "plan assets rule."  *See* 29 C.F.R. § 2510.3-101(a)(2) and (f).  The general rule is that when a plan invests in another legal entity - such as a hedge fund - "plan assets" include its investment, but do not, solely by reason of such investment, include the underlying assets of the entity.  *Id.*  If, however, an ERISA plan invests in

---

[6] ERISA defines the term "person" broadly to include individuals, corporations, partnerships, and virtually every other kind of business entity.  See ERISA § 3(9), 29 U.S.C. § 1002(9).

an entity, and if the total equity participation of "Benefit Plan Investors"[7] in the entity is at least 25%, then the entity's underlying assets are deemed to be ERISA plan assets for purposes of ERISA's fiduciary provisions.  *Id.*  If the 25% threshold is met, then the investing ERISA plan has "an undivided interest in each of the underlying assets of the entity."  *Id.*  In that case, each asset of the entity is subject to ERISA. The Receiver states that any person who exercised authority or control respecting the management or disposition of any of the entity's assets, or has authority to do so, is an ERISA fiduciary with respect to such assets, subject to ERISA's general fiduciary and self-dealing prohibited transaction rules.  *See id.*[8]

The Receiver has sufficiently alleged that the equity interests of Benefit Plan Investors in Offshore exceeds 25%, that those Benefit Plan Investors include certain ERISA plans, and that consequently an undivided interest in each of the underlying assets of Offshore is an ERISA plan asset.  Compl. ¶¶ 400-02.  If this allegation is

---

[7]  The term "Benefit Plan Investor" includes any employee benefit plan regardless of whether the plan is actually subject to ERISA.  *See* 29 C.F.R. § 2510.3-101(f)(2).  The definition of "Benefit Plan Investor" has recently been revised under the Pension Protection Act of 2006 ("PPA") to exclude non-ERISA employee benefit plans.  *See* PPA § 611(f).  This change is effective with respect to transactions entered into after August 17, 2006.  *See* PPA § 611(h).  All transactions relevant for purposes of the instant ERISA cause of action, including those giving rise to the ERISA status of Offshore's assets, occurred prior to August 17, 2006.  Consequently, the equity interests of Offshore's foreign employee benefit plan investors are taken into account for purposes of the 25% threshold under the plan assets rule.

[8]  *See also* ERISA § 3(21) (29 U.S.C. § 1002(21)) ("a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management . . . or disposition of its assets"), and ERISA §§ 404(a)(1), and 406(b)(29 U.S.C. §§ 1104(a)(1), and 1106(b)).

correct, then any person who "exercises any authority or control with respect to the management or disposition of [Offshore] assets," or "renders investment advice for a fee or other compensation, direct or indirect, with respect to any [Offshore] assets, or has the authority or responsibility to do so" is an ERISA fiduciary. *See* ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)). By alleging that the Receiver is an ERISA fiduciary with respect to the underlying assets of Offshore, the Receiver sufficiently pleads that he has standing to assert ERISA claims.

**Claim For Breach of ERISA Fiduciary Duty**

The Receiver alleges that the assets of Offshore constitute "plan assets" subject to ERISA, and that the Citco Defendants, as ERISA fiduciaries with respect to these plan assets, breached their fiduciary duties by, among other things, failing to independently calculate Offshore's NAV/share. Compl. ¶¶ 262, 289-293. Movants argue that this claim fails because they are not fiduciaries.

The Receiver, relying on the response he made to CFS-Curacao's motion to dismiss, claims that the Citco Defendants were fiduciaries by virtue of their control over the Director Defendants. Once again, the Receiver's use of the term "Citco Defendants" makes reviewing the Complaint for its sufficiency as to each individual "Citco Defendant" difficult. Regardless, the allegations of the Complaint are insufficient to support the conclusion that any of the Citco Defendants are fiduciaries under ERISA. As this Court has ruled with respect to Defendant CFS-Curacao, the mere fact that the Citco Defendants appointed the Director Defendants does not, in

and of itself, establish they exercised authority or control respecting the management or disposition of Offshore's ERISA plan assets. The Receiver would have to further allege that these defendants had actual authority or control over the decisions by the Director Defendants to either take or not take actions with respect to Offshore's ERISA plan assets.

Second, even assuming, without deciding, that vicarious liability for breach of fiduciary duties under ERISA exists, as previously discussed, the Receiver has failed to allege that the Director Defendants were acting within the scope of their duties as employees of these defendants (The Citco Group and CFS-USA) when they engaged in the allegedly wrongful conduct relative to Offshore Funds' ERISA plan assets.

Lastly, the Receiver has failed to allege sufficient facts demonstrating that these defendants rendered investment advice for a fee. Performance of the contractual obligation to compute and price the monthly NAV for Offshore is not, in and of itself, sufficient to meet the requirements of the applicable regulation. The regulation requires that, in addition to rendering advice as to the value of securities, the individual must also, either directly or indirectly, have discretionary authority or control with respect to purchasing or selling the securities or render advise to the plan on a regular basis. Such services must serve as a primary basis for investment decisions and the individual must render individualized investment advise to the plan based on the particular needs of the plan regarding, among other things, investment policies or strategy, overall portfolio composition or diversification of the plan

investments.  29 C.F.R. § 2510.3-21(c)(1).  At best, the Receiver only alleges that CFS-Curacao rendered advice regarding the value of securities.  While the Receiver may have alleged the Director Defendants performed the other requisites of a fiduciary, it has not alleged these defendants did so.  The mere fact CFS-Curacao appointed the Director Defendants is insufficient to impute the duties the Director Defendants were obligated to perform to these defendants.  The Receiver's argument in this case is even weaker because, as the Receiver acknowledges, the Offshore Funds were not in direct contractual privity with The Citco Group or CFS-USA (see, for instance, DE 70 at 8).  Thus, the alleged intricate contractual flow of liability through CFS-Curacao's employment of Director Defendants is inapplicable.

The motion to dismiss Count XI for breach of ERISA fiduciary duty and Count XI for breach by co-fiduciaries as to The Citco Group and CFS-USA is granted, with leave to amend.

## Forum Non Conveniens

In their motion, Movants argue that the Amended Complaint should be dismissed on *forum non conveniens* grounds.  According to Movants, the British Virgin Islands provides a much more appropriate forum.  The Receiver did not respond to this argument.

Dismissal on *forum non conveniens* grounds is appropriate only when the plaintiff's chosen forum imposes an undue burden on the defendant, and the private and public factors weigh heavily toward trial in the alternative forum.  *Piper Aircraft*

*Co. v. Teyno*, 454 U.S. 235, 249 (1981).  The Court has considered Movants' argument in support of the motion and finds they have not sufficiently established that private and public factors clearly outweigh the Receiver's choice of forum.  *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-07 (1947).  This case has been pending and proceeding in this Court for three years and Movants have not previously raised the issue of any undue burden imposed upon them by litigating in this forum.  Transferring this case now to a foreign forum would further delay the progress of this case, and increase the costs to the litigants.  Movants' motion to dismiss on *forum non conveniens* grounds is denied.

**Leave to Amend**

The Receiver has requested leave to amend the Complaint should this Court find it  deficient.  Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

**Conclusion**

For the foregoing reasons, The Citco Group Ltd. and Citco Fund Services (USA), Inc.'s Motion to Dismiss the Receiver's Amended Complaint **[DE 49] is GRANTED**, without prejudice, with leave to replead within twenty days of receipt of this Opinion

and Order in a manner consistent with this Opinion.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 31st day of March, 2008.

                                   KENNETH A. MARRA
                                   United States District Judge

copies to:

All counsel of record