UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-60080-Civ-MARRA/JOHNSON

COURT APPOINTED RECEIVER
of LANCER OFFSHORE, INC.
and OMNIFUND, LTD.

      Plaintiff

vs.

THE CITCO GROUP LTD., CITCO
FUND SERVICES (CURACAO) N.V.,
CITCO FUND SERVICES (USA) INC.,
INTER CARIBBEAN SERVICES, LTD.,
ANTHONY STOCKS, KIERAN CONROY,
and DECLAN QUILLIGAN

      Defendants.

_____/

## ORDER AND OPINION ON THE DIRECTOR DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Anthony Stocks, Kieran Conroy, Declan

Quilligan and Inter Caribbean Services, Ltd.'s Motion to Dismiss the Receiver's

Amended Complaint [DE 53]. The motion is fully briefed and ripe for review.

The 113-page, 319 paragraph Amended Complaint ("Complaint" or "Compl.")

contains eleven separate counts. The Receiver's claims concern two offshore hedge

funds: Lancer Offshore, Inc. ("Lancer Offshore") and the OmniFund, Ltd. (the

"OmniFund") (collectively, the "Offshore Funds" or "Funds"). Messrs. Stocks, Conroy

and Quilligan were directors of Lancer Offshore. Inter Caribbean was the director of

Lancer Offshore from 1995 until 1998 and the director of OmniFund and its

predecessor funds beginning in 1999. The Receiver brings this action on behalf of the

Offshore Funds and asserts claims for damages caused directly to the Offshore Funds by its former fund administrators and directors, as opposed to any damages the fund administrators and directors may have caused to the Offshore Funds' investors and creditors.  The Amended Complaint alleges a contract claim, five tort claims, and two ERISA claims against the Director Defendants.  The Director Defendants assert that all the claims against them fail to state a cause of action and must be dismissed.

Administrative Services Agreements ("ASAs")  provide that the law of the British Virgin Islands ("BVI") applies to the Receiver's contract claim.  The Director Defendants assert that under the significant relationships test applied by Florida courts, BVI law applies to the tort claims as well.  The Director Defendants opine, however, that it is not necessary for the Court to engage in a choice of law analysis because under both the law of the BVI and Florida, the Receiver's Amended Complaint fails to state causes of action in contract and tort.  The Receiver believes that under a conflicts of law analysis Florida law applies.  In any event, both the Receiver and the Director Defendants agree that Florida law can and should be applied to the claims asserted in this matter.  Since there appears to be no dispute among the parties on what law may be applied to resolve the issues raised in the instant motion, the Court will look to Florida law for the sufficiency of the common law tort claims.

The Director Defendants move to dismiss the claims of professional malpractice, gross negligence, breach of fiduciary duty, and aiding and abetting a

breach of fiduciary duty, for failure to state claims for relief.  The Director

Defendants further claim that the Receiver lacks standing to bring claims under the

Employee Retirement Income Security Act ("ERISA"), and fails to state a claim under

ERISA for breach of fiduciary duty or breach of co-fiduciary duty.  The Director

Defendants moves to dismiss Count I (professional malpractice), Count II (breach of

contract), Count III (gross negligence), Count IV (breach of fiduciary duty), Counts V

and VII (aiding and abetting a breach of fiduciary duty), Count VIII (ERISA), and Count

X (ERISA co-fiduciary) of the Receiver's Amended Complaint.

**Standard of Review**

        In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court must accept all factual allegations in a complaint as true and take

them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct.

2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil

Procedure 8, a complaint must contain a short and plain statement showing an

entitlement to relief, and the statement must "give the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346

(2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*

**Common Law Tort Claims**

**Professional Malpractice**

In Count I, the Receiver purports to state a claim for professional malpractice. Compl. ¶¶ 181-184.  The Director Defendants move to dismiss this Count for failure to state a claim.  The Court concurs with the Director Defendants that this claim cannot stand against them.  As this Court recently held in a related matter, a claim for professional malpractice under Florida law cannot be brought against a defendant where there is no requirement the defendant obtain a four-year college degree as a condition of licensure to perform his occupation.  *See Bruhl v. Pricewaterhouse-Coopers Int'l*, No. 03-23044, 2007 WL 983263, at *8 (S.D. Fla. Mar. 27, 2007) ("a profession . . . is 'any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida.'") (quoting *Garden v. Frier*, 602 So. 2d 1273, 1275 (Fla. 1992)).

Since the Complaint contains no allegations that a four-year degree is required to serve as a director of a corporation, the Receiver fails to sufficiently allege that the Director Defendants are professionals, and the claim for professional malpractice

fails as a matter of law.  *See e.g., Garden v. Frier*, 602 So.2d 1273, 1275 (Fla.1992);

*Warter v. Boston Securities*, No. 03-81026-civ- Ryskamp, 2004 U.S. Dist. LEXIS 5682,

at *13 (S.D. Fla. Mar. 22, 2004) ("a securities broker is not a 'professional' for

purposes of the economic loss rule because securities brokers are not required to

obtain a four-year degree for licensing in Florida"); *Moransais v. Heathman*, 744 So.

2d 973, 976 (Fla. 1999).

That the Receiver sets forth the certificates and advanced degrees held by

each of the Director Defendants is unavailing.  To determine whether the Receiver

has stated a claim for professional malpractice against the Director Defendants, the

relevant issue is not what degrees each individual Director Defendant may or may not

possess; instead, the issue is whether the job performed by the Director Defendants

requires a four-year degree for licensure.  The Receiver does not cite any authority to

show that acting as an outside director for a corporation or other business entity

requires a four-year degree for licensing, and thus the Receiver has not stated a claim

for professional malpractice and this claim must be dismissed.  Plaintiff will be given

one additional opportunity to state a valid malpractice claim.  Accordingly, the

motion to dismiss Count I as to the Director Defendants will be granted, with leave to

amend.

**Breach of Contract**

Count II alleges breach of contract against the Director Defendants.  The

Receiver alleges that the Director Defendants breached the ASAs by knowingly failing

to independently price the Offshore Funds and failing to independently verify the valuations stated by Lauer, among other alleged breaches.

The Director Defendants contend that the Receiver alleges no legal basis upon which to hold them liable for a breach of these agreements.  The ASAs were between CFS-Curacao on the one hand, and the relevant Offshore Fund, on the other.  Compl. ¶ 69, Exs. H, I, J.  The parties hold opposing opinions on whether the ASAs include any provisions regarding the responsibilities of the Director Defendants.

The Receiver asserts that the Director Defendants can be liable on a breach of contract theory because they signed the ASAs in their capacity as Offshore's Directors, and because the ASAs made provisions regarding the responsibilities of the Director Defendants.  "[B]ecause the contracts provided the Director Defendants to the Offshore Funds to serve on their boards and also required them to supervise Citco N.V., Director Defendants were individually responsible under the contracts to the Offshore Funds."  DE 68 at 17.  The Receiver devotes two short paragraphs in support of this count and does not point out where in the ASAs these obligations are articulated.

The Director Defendants assert that they were not parties to the subject contracts.  Compl. ¶¶ 186-191.  "Contrary to the Receiver's distortion of their terms, the ASAs did not include any provisions regarding the responsibilities of the Director Defendants.  To the contrary, the ASAs, which were contracts between only the Funds and CFS-Curacao, set forth the duties to be performed by CFS-Curacao."  DE 85 at 2.

The Court has reviewed the contracts at issue and sees no intention of the Director Defendants to bind themselves individually.  The ASAs clearly set forth the parties in the body of the contracts, and those parties do not include the Director Defendants in their individual capacities.  The ASAs clearly state that the parties to the contracts are the Funds and CFS-Curacao, and they clearly indicate that the Director Defendants signed the contracts on behalf of the Funds and not in their individual capacity.  The motion to dismiss Count II as to the Director Defendants is granted without prejudice.

**Gross Negligence**

Count III of the Complaint alleges that the Director Defendants willfully and recklessly failed to use reasonable skill and care in performing their duties and that such conduct was so egregious as to rise to the level of gross negligence.  The Director Defendants move to dismiss this count asserting that, as corporate directors, they are insulated from personal liability for any conduct in furtherance of their duties, except in limited circumstances which do not apply in this case.  *See* Fla. Stat. § 607.0831 ("Florida's business judgment rule");[1] *Cottle v. Storer*

---

[1]  Florida Statutes § 607.0831 provides in pertinent part:

607.0831. Liability of Directors

(1) A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:

*Communications, Inc.*, 849 F.2d 570, 574 (11th Cir.1988) ("[u]nder the business judgment rule, directors are presumed to have acted properly and in good faith, and are called to account for their actions only when they are shown to have engaged in fraud, bad faith, or an abuse of discretion").

Moreover, the Director Defendants assert that "[b]ecause Florida law imposes liability upon directors only for acts constituting something more than gross negligence, the Amended Complaint is insufficient as a matter of law to state a claim

---

(a) The director breached or failed to perform his or her duties as a director; and

(b) The director's breach of, or failure to perform, those duties constitutes:

1. A violation of the criminal law, unless the director had reasonable cause to believe his or her conduct was lawful or had no reasonable cause to believe his or her conduct was unlawful. A judgment or other final adjudication against a director in any criminal proceeding for a violation of the criminal law estops that director from contesting the fact that his or her breach, or failure to perform, constitutes a violation of the criminal law; but does not estop the director from establishing that he or she had reasonable cause to believe that his or her conduct was lawful or had no reasonable cause to believe that his or her conduct was unlawful;

2. A transaction from which the director derived an improper personal benefit, either directly or indirectly;

3. A circumstance under which the liability provisions of s. 607.0834 are applicable;

4. In a proceeding by or in the right of the corporation to procure a judgment in its favor or by or in the right of a shareholder, conscious disregard for the best interest of the corporation, or willful misconduct; or

5. In a proceeding by or in the right of someone other than the corporation or a shareholder, recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

for relief against the Director Defendants for gross negligence . . ."  DE 54 at 8.  *See*

*Federal Deposit Ins. Corp. v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1556 (S.D. Fla.

1993) ("the Florida statute insulates corporate directors and officers from conduct

amounting to gross negligence, and permits liability only for greater derelictions of

the duty of care").

The Receiver responds that Florida's "business judgment rule" does not apply

to the instant case for two reasons: First, because the decision of whether a

defendant's conduct is protected by the business judgment rule is a highly factual

inquiry, and thus inappropriate for a court to consider on a motion to dismiss; and

second, even if the Court determines to apply the business judgment rule at this

stage, the Receiver clearly pleads facts sufficient to survive a motion to dismiss.  The

Court agrees.

Courts that have considered this subject concur that it is "debatable" whether

a court should consider the protection of the business judgment rule on a motion to

dismiss.  *See, AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1376 (S.D. Fla. 1991);

*Gonzalez-Gorrondona*, 833 F.Supp. at 1561; *Talib v. Skyway Commc'n Holding Corp.*,

No. 805CV282T17TBM, 2005 WL 1610707, *6 (M.D. Fla. July 7, 2005).  However, even if

such an inquiry were proper at this stage, the allegations of willfully, knowingly,

consciously and recklessly failing to use reasonable skill and care to value the Net

Asset Values ("NAV") and independently price the Offshore Funds appears to

encompass conduct which would fall beyond the ambit of the protections of the

business judgment rule.  *Id.  See, e.g.,* Compl. ¶¶ 174, 194.  Based upon the

allegations of the Complaint, the motion to dismiss Count III as to the Director

Defendants is denied.

**Breach of Fiduciary Duty**

        The Director Defendants move to dismiss Count IV of the Complaint arguing

that the same Florida business judgment rule also insulates them from personal

liability for breach of fiduciary duty.  Fla. Stat. § 607.0831.  "For the same reasons

that the Receiver does not allege a claim for gross negligence under Florida law, he

similarly does not allege a claim for breach of fiduciary duty because the allegations

of a failure to perform certain acts do not rise to the level of 'willful misconduct'

sufficient to satisfy the statutory requirements."   DE 54 at 9.

        As discussed above, the Court considers it unwise to evaluate conduct and

determine whether or not it is protected by the business judgment rule at the motion

to dismiss stage.  *AmeriFirst Bank,* 757 F.Supp. at 1376; *Gonzalez-Gorrondona,* 833

F.Supp. at 1561; *Talib,* 2005 WL 1610707 at *6.  Moreover, the Receiver pleads facts

sufficient to survive a motion to dismiss.  Allegations of fraud-like behavior by

executives, for their own personal gain, remove the executives' management

decisions from the scope of the business judgment rule.  *See Talib*, 2005 WL 1610707

at *6; *AmeriFirst*, 757 F.Supp. at 1376; *Perlow v. Goldberg*, 700 So.2d 148, 150 (Fla.

Dist. Ct. App. 1997); *Sonny Boy, L.L.C. v. Asnani*, 879 So.2d 25, 29 (Fla. Dist. Ct. App.

2004).

Here, the Receiver makes numerous allegations that the applicable fee structure created an incentive for the Director Defendants to artificially inflate the NAV's for their personal gain and to the detriment of the Offshore Funds.  Compl. ¶¶ 57-64, 98, 117.  Where the interests of the Director Defendants are irreconcilably adverse to those of the Offshore Funds, as the Receiver alleges, the protection of the business judgment rule is unavailable.  *In re Toy King Distributors, Inc.,* 256 B.R. 1, 173-74 ( M.D. Fla. 2000) (the business judgment rule provides no protection to an officer or director who has engaged in self-dealing).  Accordingly, the motion to dismiss Count IV is denied.

**Aiding and Abetting a Breach of Fiduciary Duty**

The Receiver alleges that the Director Defendants aided and abetted a breach of fiduciary duty by the Citco Defendants (Count V) and also by Lauer (Count VII). The Director Defendants move to dismiss these claims arguing that the Complaint (1) fails to allege a fiduciary duty on the part of the alleged primary wrongdoer; (2) fails to allege a breach of that duty; and (3) fails to allege any facts to support the claim that the Director Defendants substantially assisted or encouraged the wrongdoing of either the Cicto Defendants or Lauer.

Under Florida law, a claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the

wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla. 2002); *see also AmeriFirst*, 757 F.Supp. at 1380.

<u>Aiding and Abetting CFS-Curacao's Breach of Fiduciary Duty</u>

As the Court concludes in its Order and Opinion on Citco Fund Services (Curacao) N.V.'s Motion to Dismiss entered in this case this same day, the Receiver has not set forth the "special circumstances" necessary to allege a fiduciary duty on the part of CFS-Curacao.   *See Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994); *Maxwell v. First United Bank*, 782 So.2d 931, 933-34 (Fla. Dist. Ct. App. 2001); *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991).  Having failed to adequately allege the first element of a claim for aiding and abetting a breach of fiduciary duty on the part of the "Citco Defendants," the Director Defendants' motion to dismiss Count V will be granted, without prejudice.

<u>Aiding and Abetting Lauer's Breach of Fiduciary Duty</u>

In Count VII, the Receiver alleges that the Director Defendants aided and abetted Lauer's breach of his fiduciary duty to the Offshore Funds.

Paragraph 248 in Count VII alleges, verbatim

The Citco Defendants and the Director Defendants provided substantial assistance to Lauer in carrying out his breaches of fiduciary duty, encouraged Lauer's wrongdoing and/or aided and abetted Lauer in breaching his fiduciary duty or duties to the Offshore Funds by willfully, knowingly, consciously, recklessly and/or with gross negligence: *failing* to value the NAV's in accordance with GAAP; *failing* to independently price the Offshore Funds; *failing* to independently verify the valuations stated by Lauer; *failing* to discover the incorrect valuations and NAV calculations reported by Lauer to the Independent Directors, investors or appropriate authorities; *failing* to be aware of, discover and/or investigate the "red flags" set forth above;

and/or *failing* to report the "red flags" set forth above to the Independent Directors, investors or appropriate authorities.

Compl. ¶ 248 (emphasis supplied).

The Director Defendants argue this Count must be dismissed because it does not adequately allege the element of substantial assistance.  The Director Defendants argue that the Receiver "does not include any allegations or argument that the conduct by the Director Defendants was other than ordinary conduct by outside directors of an offshore hedge fund." DE 85 at 5-6.  The Receiver claims to have satisfied the substantial assistance element first by alleging that the Director Defendants breached their own fiduciary duty to the Offshore Funds by not disclosing Lauer's wrongdoing.  The Receiver further argues that allegations that the Director Defendants acted with recklessness and ignored their duties to report red flags and independently value the portfolio adequately pleads the substantial assistance element.  DE 68 at 14.

The question of substantial assistance requires an analysis of the kind of assistance the Director Defendants allegedly offered to Lauer.  Underlying the "substantial assistance" prong is a single scienter requirement that varies on a sliding scale from "recklessness" to "conscious intent." *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993).  When no duty of disclosure is alleged, an alleged aider-abettor may be found liable only if scienter of the high "conscious intent" variety can be shown. *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir.

1975).  If it is alleged that a defendant has a duty to disclose, liability could be imposed if he acts with a lesser degree of scienter.  *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985).  When an allegation combines inaction with affirmative assistance, the degree of knowledge required depends upon how ordinary the assisting activity is in the involved businesses.  *Id*.  In the instant case, the Receiver claims that the allegations against the Director Defendants satisfy either the duty to disclose combined with recklessness test, or the high conscious intent test.

Duty to Disclose Plus Recklessness

The Receiver, while not specifically alleging that the Director Defendants owed a "duty of disclosure," maintain that a duty of disclosure is inherently included within the allegation that the Directors owed fiduciary duties to the Offshore Funds.  For this proposition, the Receiver relies upon *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 520 (Fla. Dist. Ct. App. 1994).  In *Capital Bank*, the Third District Court of Appeal held that "where a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer."  *CapitalBank*, 644 So.2d 520 (quoting *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923, 925 (Fla. 1986)).  An affirmative duty to disclose material information has been traditionally imposed

on corporate insiders, particularly officers and directors.  Courts have consistently

held that insiders must disclose material facts which are known to them by virtue of

their position but which are not known to persons with whom they deal and which, if

known, would affect their investment judgment. *Chiarella v. U. S.,* 445 U.S. 222, 227

(1980).  Accordingly, the Court finds a duty to disclose has been alleged against the

Director Defendants.

The Receiver has also satisfied the requirement that it be alleged that the

Director Defendants acted with recklessness.  Paragraph 194 alleges that they

willingly, knowingly, consciously, and recklessly failed to use reasonable skill and care

to be aware of, discover, investigate and report numerous glaring red flags which

would have put a reasonably prudent director on notice that Lauer was engaged in

conduct to the extreme detriment of the Offshore Funds.  *See also* Compl. ¶ 98.

Based on these allegations, the motion to dismiss Count VII is denied.[2]

**Employee Retirement Income Security Act**

The Receiver next purports to bring two statutory claims against the Director

Defendants under ERISA, one for primary liability as a fiduciary under the statute,

---

[2] In a related case, *Bruhl, et al. v. PricewaterhouseCoopers Int'l, et al.*, 03-23044-Civ-Marra, the Court determined that Plaintiffs had not stated a claim against the Director Defendants for aiding and abetting breach of fiduciary duty in the Second Amended Complaint.  In that case, the allegations and the arguments in support of the aiding and abetting claim were, unlike this case, inadequate.  In addition, the Court has concluded that Plaintiffs have adequately alleged such a claim in the Third Amended Complaint.

and the other based on an alleged violation as a co-fiduciary.  The Director

Defendants argue that both of these ERISA claims must be dismissed because the

Receiver lacks standing to bring these claims on behalf of Offshore, and because the

Receiver has not properly stated claims under ERISA.

**Standing to Assert ERISA Claims on Behalf of Lancer Offshore**

The Director Defendants assert that the Receiver lacks standing to bring claims

under ERISA because Lancer Offshore, for whom the Receiver has been appointed and

in whose shoes the Receiver stands, could not have brought these claims itself.  The

Court finds the Receiver has adequately alleged facts to demonstrate his standing to

bring ERISA claims.

The ERISA provisions conferring standing to sue for fiduciary breach do not

expressly confer standing on the plan itself, but rather on "a participant, beneficiary

or fiduciary."  ERISA § 502(a)(2) and (3) (29 U.S.C. § 1132(a)(2) and (3)) (providing

that an ERISA fiduciary may sue for fiduciary breach and equitable relief).  *See Gulf

Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987).  The Receiver can only

bring claims that the Funds could have brought.  A question then arises as to whether

Offshore is a fiduciary with respect to an ERISA plan.

The Receiver argues that his standing to sue under ERISA hinges on whether the

Receiver is an ERISA fiduciary.  The Receiver's fiduciary status is premised on his

exercising control respecting ERISA "plan assets."

Section 3(21)(A) of ERISA (29 U.S.C. § 1002(21)(A)) provides in relevant part that a "person"[3] is a "fiduciary" with respect to an ERISA plan to the extent that the person exercises any discretionary authority or discretionary control with respect to the management or disposition of plan assets, or "renders investment advice for a fee or other compensation, direct or indirect, with respect to" any plan assets, or has the authority or responsibility to do so.  *Id*.

Thus the first question is whether the underlying assets of Offshore are deemed to be ERISA plan assets.  This determination is governed by the Department of Labor's "plan assets rule."  *See* 29 C.F.R. § 2510.3-101(a)(2) and (f).  The general rule is that when a plan invests in another legal entity - such as a hedge fund - "plan assets" include its investment, but do not, solely by reason of such investment, include the underlying assets of the entity.  *Id*.  If, however, an ERISA plan invests in an entity, and if the total equity participation of "Benefit Plan Investors"[4] in the

---

[3]  ERISA defines the term "person" broadly to include individuals, corporations, partnerships, and virtually every other kind of business entity.  See ERISA § 3(9), 29 U.S.C. § 1002(9).

[4]  The term "Benefit Plan Investor" includes any employee benefit plan regardless of whether the plan is actually subject to ERISA.  *See* 29 C.F.R. § 2510.3-101(f)(2).  The definition of "Benefit Plan Investor" has recently been revised under the Pension Protection Act of 2006 ("PPA") to exclude non-ERISA employee benefit plans.  *See* PPA § 611(f).  This change is effective with respect to transactions entered into after August 17, 2006.  *See* PPA § 611(h).  All transactions relevant for purposes of the instant ERISA cause of action, including those giving rise to the ERISA status of Offshore's assets, occurred prior to August 17, 2006.  Consequently, the equity interests of Offshore's foreign employee benefit plan investors are taken into

entity is at least 25%, then the entity's underlying assets are deemed to be ERISA plan

assets for purposes of ERISA's fiduciary provisions.  *Id*.  If the 25% threshold is met,

then the investing ERISA plan has "an undivided interest in each of the underlying

assets of the entity."  *Id*.  In that case, each asset of the entity is subject to ERISA.

The Receiver states that any person who exercised authority or control respecting the

management or disposition of any of the entity's assets, or has authority to do so, is

an ERISA fiduciary with respect to such assets, subject to ERISA's general fiduciary

and self-dealing prohibited transaction rules.  *See id.*[5]

The Receiver has sufficiently alleged that the equity interests of Benefit Plan

Investors in Offshore exceeds 25%, that those Benefit Plan Investors include certain

ERISA plans, and that consequently an undivided interest in each of the underlying

assets of Offshore is an ERISA plan asset.  Compl. ¶¶ 400-02.  If this allegation is

correct, then any person who "exercises any authority or control with respect to the

management or disposition of [Offshore] assets," or "renders investment advice for a

fee or other compensation, direct or indirect, with respect to any [Offshore] assets,

or has the authority or responsibility to do so" is an ERISA fiduciary.  *See* ERISA §

3(21)(A) (29 U.S.C. § 1002(21)(A)).  By alleging that the Receiver is an ERISA fiduciary

---

account for purposes of the 25% threshold under the plan assets rule.

[5]  *See also* ERISA § 3(21) (29 U.S.C. § 1002(21)) ("a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management . . . or disposition of its assets"), and ERISA §§ 404(a)(1), and 406(b)(29 U.S.C. §§ 1104(a)(1), and 1106(b)).

with respect to the underlying assets of Offshore, the Receiver sufficiently pleads that he has standing to assert ERISA claims.

The Director Defendants also argue that the Receiver improperly seeks to act on behalf of the five investors that allegedly constitute plans under ERISA.  Compl. ¶ 261.  The Director Defendants assert that standing belongs only to those investors in Offshore that are subject to ERISA.  Such claims also belong, however, to any person[6] who is an ERISA fiduciary with respect to Offshore's assets.  *See* ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)) (providing that an ERISA fiduciary may sue for equitable relief with respect to any violation of Title I of ERISA).

In addition, the Receiver maintains that he is not asserting claims that belong only to other investors, but rather, he is asserting claims in his own capacity as an ERISA fiduciary, and in accordance with his ERISA fiduciary duty, with respect to the assets of the ERISA plans invested in Offshore.  *See* Compl. ¶¶ 404-06.  The Receiver adds that under the co-fiduciary provisions of ERISA, he has an obligation, "if he has knowledge of a breach by [another] fiduciary" to make "reasonable efforts under the circumstances to remedy the breach."  *See* ERISA § 405(a)(3) (29 U.S.C. § 1105(a)(3)).  Thus, contends the Receiver, he has a right and a duty to sue under ERISA

_____

[6] Section 3(21)(A) of ERISA (29 U.S.C. § 1002(21)(A)) provides in relevant part that a "person" is a "fiduciary" with respect to an ERISA plan to the extent that the person exercises any discretionary authority or discretionary control with respect to the management or disposition of plan assets.  *Id.*  ERISA defines the term "person" broadly to include individuals, corporations, partnerships, and virtually every other kind of business entity.  See ERISA § 3(9), 29 U.S.C. § 1002(9).

independent of the investors' right to sue.  The Director Defendants' contention that the Receiver lacks standing to sue under ERISA is rejected.

## Claim For Breach of ERISA Fiduciary Duty

Count VIII of the Receiver's Amended Complaint purports to state a claim against the Director Defendants for breach of fiduciary duty.  The Director Defendants make several arguments why this claim must fail: (1) that the Receiver cannot establish that they were fiduciaries under ERISA; (2) that even if they were fiduciaries, any fiduciary liability ended at the time of their resignation as directors of Offshore; and (3) the parties agreed that the Director Defendants would not become ERISA fiduciaries.

## Status as ERISA Fiduciaries

ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan...."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).  "The 'fiduciary' definition remains fact-intensive and broad, 'construed liberally, consistent with ERISA's policies and objectives[.]'"  *Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987).  Unless the facts are not in question, a party's status as a fiduciary under ERISA is a mixed question of law and fact.  *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) citing *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997); *Kramer v. Smith Barney*, 80 F.3d 1080, 1083 n.2 (5th Cir. 1996) ("[t]he existence of a fiduciary relationship under ERISA, on the merits, is a mixed question of law and fact") (other

citation omitted).

Paragraphs 269-277 of the Complaint allege that the Director Defendants' positions as Directors of the Offshore Fund necessarily gave them authority or control over the ERISA assets invested in the fund, that they were responsible for appointing and monitoring Lancer as Offshore's investment manager, and that their various other responsibilities with respect to Offshore gave the Director Defendants the requisite authority or control for purposes of ERISA fiduciary status. In paragraphs 275-277 it is alleged that the Director Defendants were fiduciaries by having directly or indirectly rendered investment advice for a fee or other compensation with respect to Offshore assets through their authority and responsibility to determine the proper valuation of Offshore, through their regular approval of Offshore's NAV, and through their responsibility to provide values for any securities in Offshore's portfolio for which the open market did not provide an accurate valuation. *See* Compl. ¶¶ 269-277; C.F.R. §§ 2510.3-21(c)(1)(i) and 2510.3-101(a)(2). These allegations, in light of the fact intensive nature of proving a claim for breach of fiduciary duty under ERISA, adequately alleges the fiduciary status of the Director Defendants.

As far as the agreement between the parties that they intended that the Director Defendants would not become ERISA fiduciaries, this argument is unpersuasive. Whether a person is an ERISA fiduciary is governed by the functional definition of fiduciary under ERISA § 3(21), and not by private agreement.

Finally, the Director Defendants' argument that even if they were fiduciaries,

any fiduciary liability ended at the time of their resignation as Directors of Offshore, misses the mark.  It is generally true that a fiduciary is not liable for a breach committed before he became a fiduciary or after he ceases to be a fiduciary, but a person will continue to be liable for any breaches he committed while he was a fiduciary, even after he has resigned.  29 U.S.C. § 1109(b).  In addition, in the context of co-fiduciary liability, merely resigning will not relieve a fiduciary of liability for a breach by a co-fiduciary, if the resigning fiduciary had knowledge of the breach and failed to take reasonable measures to remedy the breach.  *See* ERISA § 405(a)(3); 29 U.S.C. § 1105(a)(3), and 29 C.F.R. § 2509.75-5, FR-10.

According to the conclusions reached above, the motion to dismiss Count VIII is denied.

**Claim for Liability under ERISA for Breach by Co-Fiduciaries**

In Count X, the Receiver sets forth a claim for "Liability under ERISA for Breach by Co-Fiduciaries" against the Director Defendants under 29 U.S.C. § 1105.  A co-fiduciary may be liable for another's breach of fiduciary duty if he: (1) fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; and (2) has knowledge of the breach committed by another fiduciary and takes no reasonable efforts to remedy the breach.  29 U.S.C. § 1105(a)(2)-(3).

The Director Defendants argue in relevant part that this claim must be dismissed because it fails to put each of the Director Defendants on notice of precisely what he or it is alleged to have done wrong.  Instead, the Receiver lumps all

of the Director Defendants (who were all directors of Lancer Offshore at different times) together and fails to specify which Defendant committed which alleged breach, when each alleged breach was committed, and what specific damages flow from any specific alleged breach.  "As such, it is almost impossible for any director to identify precisely what he or it is alleged to have done wrong."  DE 54 at 13.

The Court agrees.  While the Receiver has adequately alleged ERISA breach of fiduciary duty on the part of all of the Director Defendants, he has not alleged enablement or knowledge by any one particular director defendant of the breach by another fiduciary.  Accordingly, the motion to dismiss Count X will be granted, with leave to amend.  If the Receiver elects to amend this claim, he shall identify the breaches of fiduciary duty, the specific defendants with knowledge of the breaches, and identify more specifically how each defendant failed to take reasonable efforts to remedy the breach.  *In re McKesson HBOC, Inc. ERISA Litigation*, 2002 WL 31431588, *17 (N.D. Cal. 2002); *In re Sears, Roebuck & Co. ERISA Litigation*, 2004 WL 407007, *8 (N.D. Ill. 2004).

**Leave to Amend**

The Receiver has requested leave to amend the Complaint should this Court find it  deficient.  Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

**Conclusion**[7]

For the foregoing reasons, Anthony Stocks, Kieran Conroy, Declan Quilligan and Inter Caribbean Services, Ltd.'s Motion to Dismiss the Receiver's Amended Complaint [DE 53] is **GRANTED IN PART AND DENIED IN PART**, without prejudice, with leave to replead within twenty days of receipt of this Opinion and Order in a manner consistent with this Opinion.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of March, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record

_____

[7] Movants raise the issue of *forum non conveniens* for the first time in their reply memorandum. The Court need not address this issue because it was raised for the first time in a reply memorandum. *See Martinez v. Weyerhaeuser Mortg. Co.*, 959 F.Supp. 1511, 1515 (S.D. Fla. 1996) ("the Court finds that the movant may not raise new arguments in a reply brief"). The Court has considered this issue in this case, however, and directs movants to this Court's Order and Opinion on The Citco Group and Citco USA's Motion to Dismiss.