UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60080 CIV-MARRA/JOHNSON

(Proceeding Ancillary to Case No. 03-80612-CIV-MARRA/JOHNSON)

COURT APPOINTED RECEIVER of LANCER
OFFSHORE, INC. and THE OMNIFUND, LTD.,

        Plaintiff,

vs.

THE CITCO GROUP LTD., CITCO FUND
SERVICES (CURACAO) N.V., CITCO FUND
SERVICES (USA) INC., INTER CARIBBEAN
SERVICES, LTD., ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

        Defendants.

_____/

**MEMORANDUM OF LAW OF CITCO FUND SERVICES (CURACAO), N.V.,
INTER CARIBBEAN SERVICES, LTD., ANTHONY STOCKS, KIERAN
CONROY AND DECLAN QUILLIGAN IN SUPPORT OF THEIR MOTION
<u>TO DISMISS THE RECEIVER'S SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    WHILE BVI LAW GOVERNS THE RECEIVER'S CLAIMS, THIS COURT
      MAY APPLY FLORIDA LAW WHERE THERE IS NO TRUE CONFLICT
      BETWEEN BVI AND FLORIDA LAW .................................................................. 2

II.   THE RECEIVER'S CONTRACT-BASED CLAIMS MUST BE DISMISSED
      AS TO CFS-CURACAO ........................................................................................... 4

      A.    Breach of Contract Claim ............................................................................. 4

      B.    Claim for Breach of Implied Duty of Good Faith and Fair Dealing................ 5

III.  THE RECEIVER'S TORT CLAIMS MUST BE DISMISSED AS TO CFS-
      CURACAO ................................................................................................................ 8

      A.    Professional Malpractice............................................................................... 8

      B.    Gross Negligence ........................................................................................ 10

      C.    Breach of Fiduciary Duty............................................................................ 11

            1.    The Receiver has Failed to Allege a Fiduciary Duty Owed by
                  CFS- Curacao to the Offshore Funds.................................................. 11

            2.    The Receiver has Failed to Allege that CFS-Curacao is Liable for
                  the  Alleged Breach of Fiduciary Duty by the Director Defendants
                  under  the Theory of *Respondeat Superior* ........................................ 13

            3.    The Economic Loss Rule bars the Receiver's Claim for Breach of
                  Fiduciary Duty against CFS-Curacao ................................................ 15

      D.    Aiding and Abetting Breach of Fiduciary Duty Claims ................................ 15

IV.   THE RECEIVER'S TORT CLAIMS MUST BE DISMISSED AS TO THE
      DIRECTOR DEFENDANTS ................................................................................... 17

      A.    Professional Malpractice............................................................................. 18

      B.    Aiding and Abetting CFS-Curacao's Breach of Fiduciary Duty ................... 19

V.      THE RECEIVER'S ERISA-BASED CLAIMS MUST BE DISMISSED ................. 19

     A.      The Receiver's Claim for Breach of ERISA Fiduciary Duty Must be
Dismissed as to CFS-Curacao ......................................................................... 19

     B.      The Receiver's Claims for Liability Under ERISA for Breach by Co-
Fiduciaries Must be Dismissed ...................................................................... 24

CONCLUSION................................................................................................................ 25

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                      **Page(s)**

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*,
   957 F. Supp. 1308 (S.D.N.Y. 1997)........................................................................................ 3

*Am. Express Travel Related Svcs., Co.  v. Symbiont Software Group, Inc.*,
   837 So. 2d 434 (Fla. 3d DCA 2002) ..................................................................................... 10

*Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the*
   *U.S.*, 841 F.2d 658 (5th Cir. 1988)...................................................................................... 22

*Am. Honda Motor Co., v.  Motorcycle Info. Network, Inc.*,
   390 F. Supp. 2d 1170 (M.D. Fla. 2005).................................................................................. 12

*AmeriFirst Bank v. Bomar*,
   757 F. Supp. 1365 (S.D. Fla. 1991) ...................................................................................... 16

*Bavaria Int'l Aircraft Leasing GMBH v. Clayton Dubilier & Rice, Inc.*,
   No. 03 Civ. 0377 (NRB), 2003 WL 21767739 (S.D.N.Y. July 30, 2003)............................... 14

*Bishop v. Fla. Specialty Paint Co.*,
   389 So. 2d 999 (Fla. 1980)....................................................................................................... 3

*Bruhl v. PricewaterhouseCoopers Int'l*,
   No. 03-23044, 2007 WL 983263 (S.D. Fla. Mar. 27, 2007)..................................................... 8

*Bruhl v. PricewaterhouseCoopers Int'l*,
   No. 03-23044-Civ, 2008 WL 899250 (S.D. Fla. Mar. 31, 2008) ....................................... 12, 13

*Burger King Corp. v. C.R. Weaver*,
   169 F.3d 1310 (11th Cir. 1999) ............................................................................................... 5

*Capital Bank v. MVB, Inc.*,
   644 So. 2d 515 (Fla. 3d DCA 1994) ..................................................................................... 12

*Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*,
   673 F.2d 1234 (11th Cir. 1982) ............................................................................................... 2

*Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*,
   No. 05-60080-Civ, 2008 WL 926509 (S.D. Fla. Mar. 31, 2008) ................................. 17, 19, 24

*Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*,
   No. 05-60080-Civ, 2008 WL 926513 (S.D. Fla. Mar. 31, 2008)
   ................................................................................1,3, 8-11, 13, 14, 16, 20, 23, 24

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

*Enola Contracting Servs., Inc. v. URS Group, Inc.*,
    No. 5:08cv2-RS-EMT, 2008 WL 1844612 (N.D. Fla. Apr. 23, 2008).......................................6

*Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*,
    208 F. Supp. 2d 1310 (S.D. Fla. 2002) ................................................................................15

*Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the
    U.S.*, 841 F.2d 658 (5th Cir. 1988)......................................................................................22

*Garden v. Frier*,
    602 So. 2d 1273 (Fla. 1992)..................................................................................................8

*Geller v. County Line Auto Sales, Inc.*,
    86 F.3d 18 (2d Cir. 1996) ....................................................................................................22

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ............................................................................................5

*Hamilton v. Carell*,
    243 F.3d 992 (6th Cir. 2001) ................................................................................21, 22, 23

*Henry v. Champlain Enters., Inc.*,
    288 F. Supp. 2d 202 (N.D.N.Y. 2003)..................................................................................24

*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*,
    783 So. 2d 353 (Fla. 3d DCA 2001) ....................................................................................13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005)..............20

*In re Caribbean K Line, Ltd.*,
    288 B.R. 908 (S.D. Fla. 2002) .......................................................................................16, 19

*In re Flagship Healthcare, Inc.*,
    269 B.R. 721 (S.D. Fla. 2001) ..............................................................................................8

*In re Global Crossing, Ltd., Sec. Litig.*,
    No. 02 Civ. 910(GEL), 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005)....................................14

*In re McKesson HBOC, Inc. ERISA Litig.*,
    No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) .................................25

*In re Mut. Funds Inv. Litig.*,
    No. 1:04:md-15864-CCB, 2005 WL 3692756 (D. Md. Dec. 6, 2005)....................................22

*In re Sears, Roebuck & Co. ERISA Litig.*,
No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) ..................................................... 25

*Indulgence Yacht Charters Ltd. v. Ardell Inc.*,
No. 08-60739, 2008 WL 4346749 (S.D. Fla. Sept. 16, 2008) ................................................... 5

*Interstate Sec. Corp. v. Hayes Corp.*,
920 F.2d 769 (11th Cir. 1991) .............................................................................................. 10

*Kyle Ry., Inc. v. Pacific Admin. Servs. Inc.*,
990 F.2d 513 (9th Cir. 1993) ................................................................................................ 22

*Lanz v. Resolution Trust Corp.*,
764 F. Supp 176 (S.D. Fla. 1991) ......................................................................................... 12

*Maxwell v. First United Bank*,
782 So. 2d 931 (Fla. 4th DCA 2001) ..................................................................................... 12

*Medalie v. FSC Sec. Corp.*,
87 F. Supp. 2d 1295 (S.D. Fla. 2000) .................................................................................... 10

*Milofsky v. Am. Airlines, Inc.*,
404 F.3d 338 (5th Cir. 2005) ................................................................................................ 22

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)................................................................................................... 17

*Pegram v. Herdrich*,
530 U.S. 211 (2000).............................................................................................................. 23

*Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
No. 07-60003-CIV-MORENO, 2007 WL 1424596 (S.D. Fla. May 14, 2007) .......................... 6

*Rollins v. Heller*,
454 So. 2d 580 (Fla. 3d DCA 1984) ...................................................................................... 11

*Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*,
184 Fed. Appx. 894 (11th Cir. 2006)...................................................................................... 15

*Shibata v. Lim*,
133 F. Supp. 2d 1311 (M.D. Fla. 2000)........................................................................... 5, 6, 8

*Skilstaf, Inc. v. Adminitron, Inc.*,
66 F. Supp. 2d 1210 (M.D. Ala. 1999) .................................................................................. 22

*Spink v. Lockheed Corp.*,
    125 F.3d 1257 (9th Cir. 1997) ........................................................................... 24

*Tool v. Nat'l Employee Benefit Servs., Inc.*,
    957 F. Supp. 1114 (N.D. Cal. 1996) ................................................................... 21

*Toomey v. Jones*,
    855 F. Supp. 19 (D. Mass. 1994) ....................................................................... 23

*Trowell v. S. Fin. Group, Inc.*,
    No. 08-11242, 2008 WL 4787142 (11th Cir. Nov. 4, 2008) .................................... 4

*Tune v. Philip Morris Inc.*,
    766 So. 2d 350 (Fla. 2d DCA 2000) ..................................................................... 3

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .......................................................................................... 14

*Woods v. Southern Co.*,
    396 F. Supp. 2d 1351 (N.D. Ga. 2005) ............................................................... 21

*Wydler v. Bank of Am., N.A.*,
    360 F. Supp. 2d 1302 (S.D. Fla. 2005) ............................................................... 24

## Other Authorities          Page(s)

29 C.F.R. § 2510.3-1001(a)(2) ................................................................................. 22

29 C.F.R. § 2509.75-8 ............................................................................................ 22

29 C.F.R. § 2510.3-21(c) ........................................................................................ 23

Restatement (Second) of Conflict of Laws § 145 ........................................................ 3

## INTRODUCTION

On March 31, 2008, this Court entered its Order and Opinion (the "Order") dismissing all counts of the Receiver's Amended Complaint against Defendant, Citco Fund Services (Curacao), N.V. ("CFS-Curacao"), other than one claim for breach of contract which CFS-Curacao did not move to dismiss. *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080-Civ, 2008 WL 926513 (S.D. Fla. Mar. 31, 2008).[1] In its Order, this Court identified specific substantive defects in the 113-page, 319-paragraph Amended Complaint, and gave the Receiver one opportunity to amend each claim to cure these deficiencies. The Receiver has now come back with a 194-page, 532-paragraph Second Amended Complaint ("SAC"), apparently in the belief that bigger is better. However, notwithstanding that the SAC is now even more prolix than its predecessor, the Receiver's addition of boilerplate buzz-words and phrases fails to cure the ***substantive*** defects recognized by this Court in its Order.[2]

Further, CFS-Curacao did not previously move to dismiss the breach of contract claim, recognizing that this claim was the only one that the Receiver was entitled to bring and that his efforts to create claims in tort and under ERISA were improper. However, in his enthusiasm to expand the dragnet of his claims, the Receiver has included additional allegations in this count that render it unsustainable. In addition, the Receiver has now included a claim for breach of implied duty of good faith and fair dealing, which is also subject to dismissal.

---

[1]   The underlying facts as well as the appropriate standard of review on a motion to dismiss are set forth in that Order. *Court Appointed Receiver*, 2008 WL 926513, at *1-2.

[2]   Much of the length of the SAC is attributable to the fact that the Receiver has added the phrase "knowingly, willfully, recklessly, and/or with gross negligence," or some close variation thereof, nearly 100 times to the allegations of the SAC. (*See, e.g.,* SAC ¶¶ 1, 3, 4, 11, 13, 17, 19, 127, 128, 134, 141, 142, 206, 207, 208, 322, 323, 324, 325, 327, 328, 331, 333, 435, 436, 438, 439, 503, 517). This incessant use of the same boilerplate phrase merely underscores the conclusory nature of the Receiver's allegations.

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

For the reasons set forth herein, this Court should enter an Order dismissing with prejudice all claims for relief against CFS-Curacao, including: Breach of Contract; Breach of Implied Duty of Good Faith and Fair Dealing; Gross Negligence; Breach of Fiduciary Duty; two counts of Aiding and Abetting a Breach of Fiduciary Duty; Professional Malpractice; Breach of ERISA Fiduciary Duty; and Liability under ERISA for Breach by Co-Fiduciaries.

In addition, in a separate Order, this Court dismissed claims against the Director Defendants[3] for Professional Malpractice, Aiding and Abetting CFS-Curacao's Breach of Fiduciary Duty, and Liability under ERISA for Breach by Co-Fiduciaries.  The SAC likewise fails to add any allegations to cure the deficiencies the Court recognized in those counts, and these claims should be dismissed with prejudice.

## **ARGUMENT**

### **I.**     **WHILE BVI LAW GOVERNS THE RECEIVER'S CLAIMS, THIS COURT MAY APPLY FLORIDA LAW WHERE THERE IS NO TRUE CONFLICT BETWEEN BVI AND FLORIDA LAW**

The agreements between CFS-Curacao and Lancer Offshore, Inc. and The OmniFund, Ltd. (the "Offshore Funds"), upon which the Receiver bases his breach of contract claim, provide that the agreements "shall be governed by and construed in accordance with the laws of the British Virgin Islands." (SAC, Exs. J, K, L).  Such choice-of-law provisions are routinely upheld by Florida courts.  *See  Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*, 673 F.2d 1234, 1238 (11th Cir. 1982).  BVI law also applies to the Receiver's tort claims

---

[3]     The "Director Defendants" are Defendants Inter Caribbean Services Ltd., Anthony Stocks, Kieran Conroy and Declan Quilligan.

under the "significant relationship test" of the Restatement (Second) of Conflict of Laws § 145. *Bishop v. Fla. Specialty Paint Co.,* 389 So. 2d 999 (Fla. 1980).[4]

The Receiver has filed contract and tort claims against CFS-Curacao and the Director Defendants relying on Florida law.  While under the pertinent choice of law analysis, BVI law governs the substantive contract and tort claims brought by the Receiver, as this Court has previously recognized in its Order, where there is no "true conflict" between BVI law and Florida law as to the specific common law claims which CFS-Curacao and the Director Defendants move to dismiss, for the purposes of this motion to dismiss, this Court may apply Florida law to the Receiver's claims.[5]  *Court Appointed Receiver*, 2008 WL 926513, at *1.  As shown below, while the relevant law of the BVI differs, in certain respects, from that of Florida, the claims that are the subject of this motion would nonetheless be subject to dismissal under both BVI law and Florida law.[6]  Because the application of either law would produce the same

---

[4]   The Offshore Funds were incorporated in the BVI, and have their registered offices and registered agent there. (SAC ¶¶ 69, 74). Applying the Section 145(2) factors, any economic loss would have been sustained by the Offshore Funds in the BVI, their place of incorporation and business is in the BVI, and the relationship between the parties is centered in the BVI.  The BVI also has a stronger interest in having its law applied to this case than does Florida, which has no interest in adjudicating claims by offshore hedge funds against mostly foreign defendants. *See ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308 (S.D.N.Y. 1997).

[5]   A "true conflict" exists in cases where "two states have conflicting interests." *Tune v. Philip Morris Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000).  On the other hand, a "false conflict" exists "when the laws of different states are (1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Id.*

[6]   To establish the law of the BVI, the Defendants previously submitted the Declaration of Stephen Smith, Q.C. on Relevant Principles of the Law of the British Virgin Islands, as Appendix A to their memoranda of Law in support of their motions to dismiss the Receiver's Amended Complaint ("Smith Decl."). To address additional issues and causes of action at issue in the motions to dismiss the SAC, the Defendants submit the Supplemental Declaration of Stephen Smith, Q.C., submitted as Appendix A to their memoranda. ("Suppl. Smith Decl.").

outcome at the motion to dismiss stage, no true conflict exists and this Court may apply the law of the forum.

## II.   THE RECEIVER'S CONTRACT-BASED CLAIMS MUST BE DISMISSED AS TO CFS-CURACAO

### A.   Breach of Contract Claim

CFS-Curacao did not move to dismiss the breach of contract count in the Amended Complaint, instead arguing that the contractual agreements between the parties were the sole source of any duty owed by CFS-Curacao to the Offshore Funds. However, in the SAC, the Receiver has expanded his previous allegations to allege breaches of duties that are not imposed by the contracts at issue, thus the SAC no longer states a claim for breach of contract.

In order to state a breach of contract claim, a party must allege:  (1) a valid contract; (2) a material breach; and (3) damages. *Trowell v. S. Fin. Group, Inc.*, No. 08-11242, 2008 WL 4787142, at *2 (11th Cir. Nov. 4, 2008).   In the SAC, the Receiver improperly alleges two breaches of obligations that are not created by the contractual agreements between the parties. First, the Receiver alleges that CFS-Curacao breached the Citco Agreements by "failing to appoint Independent Directors to the Funds' boards." (SAC ¶ 428). However, the Citco Agreements attached as Exhibits J, K and L to the SAC make it clear that CFS-Curacao was not obligated to appoint *independent* directors.  Rather, CFS-Curacao was contractually bound only to "provid[e]…directors" to the Funds. (SAC, Exs. J, K, L). There is simply no obligation imposed on CFS-Curacao by any of the written agreements to provide "independent directors."

Further, the Receiver alleges that CFS-Curacao breached the Citco Agreements by "failing to independently verify the valuations stated by Lauer and Stenton Leigh [Capital Corp.]. . . ."  (SAC ¶ 428).  Stenton Leigh Capital Corp. was a purported security valuation expert retained by the Offshore Funds and Lauer to prepare and provide valuation reports for

certain of the companies whose securities were owned by the Offshore Funds.  (SAC ¶ 246).

The Citco Agreements do not impose any obligation on CFS-Curacao to independently verify

valuations stated either by Lauer or by a third party.[7]

Where the Citco Agreements attached as exhibits to the SAC do not impose the

obligations upon which the Receiver relies to establish his breach of contract claim, this claim

contained in the SAC is subject to dismissal.[8]  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189,

1205-06 (11th Cir. 2007) (where an exhibit to a complaint contradicts the complaint in a breach

of contract action, the claim may be dismissed); *Indulgence Yacht Charters Ltd. v. Ardell Inc.*,

No. 08-60739, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008).

### B.    Claim for Breach of Implied Duty of Good Faith and Fair Dealing

The Receiver's purported cause of action for breach of implied duty of good faith and fair

dealing must be dismissed because first, it is duplicative of the claim for breach of contract, and

second, to the extent the Receiver attempts to allege additional duties, they are contradicted by or

inconsistent with the express terms of the contract.   Although the implied covenant of good faith

and fair dealing is recognized under Florida law, "the rights conferred by the implied covenant of

good faith and fair dealing are limited." *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1316

(11th Cir. 1999).  The doctrine applies only when the propriety of the conduct is not resolved by

the terms of the contract.  *Shibata  v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000).

---

[7]    The Administrative Services Agreements between CFS-Curacao and the Offshore Funds
limit CFS-Curacao's responsibilities with respect to pricing to "independently ***pricing the fund
by reference to data supplied by Interactive Data Services International and other independent
pricing sources***…"  (*See, e.g.,* SAC, Ex. J, § 1.1(h)) (emphasis added).

[8]    This same result would apply under BVI law, as BVI law also holds that an action for breach
of contract will not lie where the contract does not impose the obligations which form the basis
for the action.  (Suppl. Smith Decl., ¶ 15).

A claim for breach of the implied duty of good faith and fair dealing is subject to dismissal as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract. *Id.* at 1319. "Thus, a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Id.; see also Enola Contracting Servs., Inc. v. URS Group, Inc.*, No. 5:08cv2-RS-EMT, 2008 WL 1844612, at *4 (N.D. Fla. Apr. 23, 2008) (dismissing claim for breach of implied duty of good faith and fair dealing where allegations underlying this claim were "impermissibly duplicative of the companion cause of action alleging breach of contract"); *Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 07-60003-CIV-MORENO, 2007 WL 1424596, at *4 (S.D. Fla. May 14, 2007).

The Receiver's allegations in his claim for breach of implied duty of good faith and fair dealing are virtually identical to his allegations in the breach of contract count. Specifically, in Count VI for Breach of Implied Duty of Good Faith and Fair Dealing, the Receiver alleges:

> The Citco Defendants knowingly, willfully, recklessly, and/or with gross negligence breached the Citco Agreements by failing to perform the services articulated therein. Those breaches, include, but are not limited to: failing to independently price the Offshore Funds; failing to independently verify the valuations stated by Lauer and Stenton Leigh, who were both conflicted; failing to exercise even minimal due diligence; and failing to compute the Funds' monthly NAV in accordance with GAAP.

(SAC ¶ 436). A nearly identical allegation in paragraph 428 of the SAC forms the basis for Count V for Breach of Contract:

> The Citco Defendants knowingly, willfully, recklessly, and/or with gross negligence breached the Citco Agreements by failing to perform the services articulated therein. Those breaches, include, but are not limited to: failing to independently price the Offshore Funds; failing to independently verify the valuations stated by Lauer and Stenton Leigh, who were both conflicted; failing to

appoint independent directors to the Funds' boards, and failing to
compute the Funds' monthly NAV in accordance with GAAP.

Further, because the implied covenant of good faith and fair dealing is "a gap-filling rule," case law permits this claim only where one of two situations arise: (1) the contract is ambiguous about the permissibility of the conduct, or (2) the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated. *Shibata*, 133 F. Supp. 2d at 1318. Implicitly recognizing that the contractual agreements do not impose on CFS-Curacao an obligation to conduct a qualitative analysis of the holdings in the portfolio, the Receiver attempts to allege an implied duty that CFS-Curacao was obligated to exercise its "discretion" to verify the value of the Funds' portfolios. (SAC ¶ 434, "the Citco Defendants had the obligation to use [their] discretion in good faith to independently verify and confirm the value of [the] Funds' portfolio and to compute the monthly NAV in accordance with GAAP"). However, the Citco Agreements which are attached to the SAC show that CFS-Curacao had no such obligations. (SAC, Exs. J, K, L).

The Citco Agreements clearly set forth the non-discretionary duties thereunder, including "independently pricing the fund by reference to data supplied by Interactive Data Services International and other independent pricing sources, or as agreed by the Board of Directors pursuant to the Explanatory Memorandum" (SAC, Ex. J, § 1.1(h)), and "computing the monthly Net Asset Value of the Funds' shares … in accordance with the Explanatory Memorandum and the Articles of Association of the Company." (SAC, Ex. J, § 1.1 (g)). The Funds' Placement Memorandum and Articles of Association set forth in great detail the precise means by which CFS-Curacao was to compute the Offshore Funds' NAVs. (SAC, Exs. H, M). Since the express terms of the Citco Agreements govern CFS-Curacao's conduct in performing its contractual obligations, no cause of action exists for the alleged breach of an implied covenant of good faith

and fair dealing. *See Shibata*, 133 F. Supp. 2d at 1318 (when express terms of contract determine permissibility of the conduct, no gap-filler is needed and covenant does not apply).[9]

## III.   THE RECEIVER'S TORT CLAIMS MUST BE DISMISSED AS TO CFS-CURACAO

### A.   Professional Malpractice

In its Order, this Court dismissed the professional malpractice claim brought by the Receiver against CFS-Curacao, finding that the claim failed "where there are no allegations that fund administrators are required to obtain a four-year degree for licensing in Florida." *Court Appointed Receiver,* 2008 WL 926513, at *2. The Court held that because the Receiver's Amended Complaint contained no allegations that would bring CFS-Curacao, as "an administrator," within the definition of a "professional," the professional malpractice claim "fails as a matter of law." *Id.*

In so finding, this Court recognized that it had reached the same holding in the related case of *Bruhl v. PricewaterhouseCoopers Int'l*, No. 03-23044, 2007 WL 983263, at *8 (S.D. Fla. Mar. 27, 2007). In that case, on the same allegations, this Court dismissed a claim for professional malpractice in the absence of allegations that CFS-Curacao meets the definition of a professional under Florida law. *Id.* The Court also found that the fact that CFS-Curacao may promote itself as a *professional* hedge fund administrator is irrelevant. Instead, Florida law is clear that a "profession" is any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida.  *See Garden v. Frier*, 602 So. 2d 1273, 1275 (Fla. 1992); *In re Flagship Healthcare, Inc.*, 269 B.R. 721, 730-31 (S.D. Fla. 2001) (it is insufficient to allege

---

[9]   This same rationale governs the result applying BVI law, where BVI law does not recognize a general implied contractual duty of good faith.  (Suppl. Smith Decl. ¶¶ 16-17).  Further, BVI law will similarly refuse to imply an additional term into a contract where the contract is effective without the additional term, or where the additional term is contrary to the express terms of the contract.  (Suppl. Smith Decl. ¶ 20).

that defendants owed a duty to exercise due professional care; in the absence of an allegation that the defendants are "professionals," a claim for professional malpractice must be dismissed).[10]

Despite the fact that this Court has twice ruled on the same issue, the Receiver has again attempted to assert a professional malpractice claim against CFS-Curacao, based on nearly identical allegations. In what appears to be a blatant disregard of this Court's Order, the only two changes made from the Amended Complaint are allegations that the Citco Defendants "knowingly, willfully, recklessly, and/or with gross negligence" breached alleged duties to the Offshore Funds, and allegations regarding additional alleged duties that CFS-Curacao breached.[11] (SAC ¶ 531). These changes have no bearing on the essential issue of whether CFS-Curacao, as a fund administrator, is a professional. This Court held that the Receiver will be given "one additional opportunity to state a valid malpractice claim." *Court Appointed Receiver*, 2008 WL 926513, at *3. Where the Receiver has again failed to allege, as he cannot, that CFS-Curacao as a fund administrator meets the definition of a professional under Florida law, the claim must be dismissed with prejudice.

---

[10]   As set forth in the Smith Declaration, a claim for professional malpractice is not recognized under BVI law. (Smith Decl. ¶¶ 101-102). Instead, claims of this nature - alleging a failure to exercise reasonable care in the performance of professional services - are properly brought under BVI law as claims for negligence and/or for breach of contract. (*Id.* ¶¶ 103-104). Where the Receiver has brought claims for breach of contract and for gross negligence, there is no basis under BVI law for a separate claim alleging professional malpractice.

[11]   The SAC contains the additional allegations that the Citco Defendants breached the standard of care required of fund administrators by "failing to exercise even a minimal amount of due diligence; failing to compute the Funds' NAV in accordance with GAAP; failing to fulfill their duties under the Articles of Association, the PPM, the Investment Management Agreement, the Sound Practices Manual, and Citco's own risk management controls and valuation policies and procedures." (*See* SAC ¶ 531). None of these allegations include the allegation that CFS-Curacao, as a fund administrator, meets the definition of a professional under Florida law.

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

**B.     Gross Negligence**

In its previous Order, this Court also dismissed the gross negligence count against CFS-Curacao, finding that the claim was barred by Florida's economic loss rule. *Court Appointed Receiver*, 2008 WL 926513, at *3. Under the economic loss rule, a party to a contract is precluded from pursing a claim in tort for solely economic losses unless the breaching party has committed a tort which is distinguishable from or independent of the breach of contract. *Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769, 775-76 (11th Cir. 1991); *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1300 (S.D. Fla. 2000). Absent conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach that would justify a tort claim solely for economic losses. *Am. Express Travel Related Svcs., Co. v. Symbiont Software Group, Inc.*, 837 So. 2d 434, 435 (Fla. 3d DCA 2002).

In dismissing the Receiver's previous claim for gross negligence, this Court found that the Receiver failed to allege any tortious act committed by CFS-Curacao that was considered to be distinguishable from or independent of its contractual duties. *Court Appointed Receiver*, 2008 WL 926513, at *3. The same defect that plagued the Receiver's previous claim for gross negligence appears in its present incarnation. That is, the Receiver has failed to allege any fact that demonstrates that CFS-Curacao assumed and breached independent duties outside of the Administrative Services Agreement. In fact, the Receiver acknowledges that the alleged duties which comprise the gross negligence claim fall within CFS-Curacao's contractual responsibilities. Specifically, the Receiver alleges: "The Citco Defendants and Director Defendants owed a duty to use reasonable skill and care **in performing their fund**

*administration services* for the Offshore Funds," and then proceeds to identify a laundry list of such duties.  (SAC ¶ 441) (emphasis added).[12]

Here, the Receiver is seeking damages as a result of the Offshore Funds' mere disappointed expectation.  There is no allegation that the Offshore Funds have sustained any personal injury or damage to property.  Consequently, the Receiver is barred from pursuing his tort-based claims. As this Court previously held that the Receiver would be given only one additional chance to state a claim for gross negligence, *Court Appointed Receiver*, 2008 WL 926513, at *3, this claim must be dismissed, with prejudice.

## C.  Breach of Fiduciary Duty

### 1.  The Receiver has Failed to Allege a Fiduciary Duty Owed by CFS-Curacao to the Offshore Funds

In its Order, this Court also dismissed the breach of fiduciary duty claim against CFS-Curacao, finding first that CFS-Curacao did not owe a fiduciary duty to the Offshore Funds, as opposed to a contractual duty under the ASAs.  *Court Appointed Receiver*, 2008 WL 926513, at *4.  Specifically, this Court held "that the actions complained of do not indicate that CFS-Curacao stepped out of its contractual role as administrator for the Funds or that CFS-Curacao made representations or assurances that developed a dependency by the Funds."  *Id.*

This Court also dismissed with prejudice a similar claim for breach of fiduciary duty in the *Bruhl* case.  The plaintiffs in *Bruhl* attempted to assert a breach of fiduciary duty claim

---

[12]  Here, any claim of gross negligence would be completely duplicative of the breach of contract claim.  The alleged tortious conduct in this claim is the same as the conduct that forms the basis of the contract claim.  (*Compare* SAC ¶ 428 *with* ¶ 442).  Moreover, the applicable standards of care would be identical as a result of the limitation of liability provision in the Administrative Services Agreements, in that the agreements provide that CFS-Curacao can be held liable only for a breach that results from "gross negligence, willful misconduct or reckless disregard of its duties hereunder." (SAC, Exs. J, K, L, § 2.6). This limitation of liability provision is enforceable under both BVI and Florida law.  (Smith Decl. ¶¶ 113-114); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 583 (Fla. 3d DCA 1984).

against CFS-Curacao, contending that CFS-Curacao owed a fiduciary duty to the plaintiff investors.  In dismissing that claim, this Court similarly held that "the actions complained of do not indicate that CFS-Curacao stepped out of its contractual role as administrator for the Funds or developed a special relationship and undertook a duty beyond those duties already assumed under the [contracts], to advise, counsel, protect, or benefit the Plaintiffs." *Bruhl v. PricewaterhouseCoopers Int'l,* No. 03-23044-Civ, 2008 WL 899250, at *4 (S.D. Fla. Mar. 31, 2008).  This Court found that "'[c]onclusory allegations that a confidential or fiduciary relationship existed, without any supporting factual assertions, are insufficient' to state a claim for breach of an implied fiduciary duty."  *Id.* at *6 (quoting *Am. Honda Motor Co., v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005)).

In its prior Order, this Court also rejected the Receiver's argument that he alleged "special circumstances" sufficient to satisfy the stringent standard under *Capital Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. 3d DCA 1994).  Nor did the Receiver allege facts to support a fiduciary relationship based on confidence reposed by one party and a trust accepted by the other.  *See Maxwell v. First United Bank*, 782 So. 2d 931, 933-934 (Fla. 4th DCA 2001); *Lanz v. Resolution Trust Corp.*, 764 F. Supp 176, 179 (S.D. Fla. 1991); *see also* Smith Decl., ¶¶ 151-152 (the relationship alleged between CFS-Curacao and the Offshore Funds is a commercial relationship at arm's length, and the position of fund administrator does not in and of itself give rise to a fiduciary relationship under BVI law).

In the SAC, the Receiver attempts to cure the defects noted by this Court by alleging that the Citco Defendants established a special relationship with the Offshore Funds because "they undertook to counsel and advise the Funds and went above and beyond a ministerial administrative role" (SAC ¶ 461), and because they became involved in "investment and

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

management decisions."   (SAC ¶ 462).   However, there are no *facts* alleged in the SAC to support these conclusory allegations.   Indeed, the cited paragraphs contain precisely the type of conclusory statements that this Court found in *Bruhl* were insufficient to state a cause of action for breach of fiduciary duty.   *Bruhl,* 2008 WL 899250, at *6.   This Court's Order states that "the Receiver will be given one more opportunity to attempt to allege *facts* to support a claim that CFS-Curacao owed anything more than a contractual duty to the Offshore Funds."   *Court Appointed Receiver,* 2008 WL 926513, at *4.   Where the Receiver has failed to comply with this Court's strict directive, the claim for breach of fiduciary duty must be dismissed with prejudice.

> **2.     The Receiver has Failed to Allege that CFS-Curacao is Liable for the Alleged Breach of Fiduciary Duty by the Director Defendants under the Theory of *Respondeat Superior***

The Receiver alleges in the alternative that CFS-Curacao, as the employer of the Director Defendants, is liable for their alleged breach of fiduciary duties under the theory of *respondeat superior*.   (SAC ¶ 468).   However, this Court previously held that the Receiver's Amended Complaint failed to properly plead such a claim, because: "[N]owhere does the Complaint allege that the Director Defendants were acting in their capacity as employees of CFS-Curacao while committing the purported breaches of duty."   *Id.* at *5.   For the same reasons, the Receiver's SAC fails to state a claim for breach of fiduciary duty under the doctrine of *respondeat superior.*

Under the doctrine of *respondeat superior*, "an employer cannot be held liable for the tortious criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer."   *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356 (Fla. 3d DCA 2001).   The Receiver alleges that "[a]s directors of the Offshore Funds," the Director Defendants

13

owed the Offshore Funds fiduciary duties.  (SAC ¶¶ 454, 463).  Such allegations negate the imposition of liability on CFS-Curacao under the theory of *respondeat superior.*

Both the United States and BVI courts recognize the separate role of directors acting in their capacity as directors, rather than as employees of the corporation that appointed them.  *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."). *See also In re Global Crossing, Ltd., Sec. Litig.*, No. 02 Civ. 910(GEL), 2005 WL 2990646, at *5 (S.D.N.Y. Nov. 7, 2005) (finding that a corporation could not be liable under *respondeat superior* for the actions of its employees in their capacities as directors of a different corporation);  *Bavaria Int'l Aircraft Leasing GMBH v. Clayton Dubilier & Rice, Inc.*, No. 03 Civ. 0377 (NRB), 2003 WL 21767739, at *3 (S.D.N.Y. July 30, 2003); Smith Decl. ¶¶ 160-164.

This Court aptly points out in its Order that just because CFS-Curacao provided its employees to serve as directors of the Offshore Funds, this "does not necessarily mean that the Director Defendants were acting within the scope of their duties as employees of CFS-Curacao." *Court Appointed Receiver,* 2008 WL 926513, at *5.  The Receiver attempts to overcome this hurdle by summarily alleging that at all times, the Director Defendants were "employed by and acting for" CFS-Curacao, and that they were "dominated and controlled" by CFS-Curacao. (SAC ¶¶ 457, 458).  This Court has held that such conclusory allegations are insufficient to sustain the Receiver's claim. *Court Appointed Receiver,* 2008 WL 926513, at *5. ("The Receiver's assertion, that because CFS-Curacao provided the Director Defendants to the Offshore Funds it is liable under the doctrine of respondeat superior, is a mere legal conclusion"). Where the Receiver still has not alleged any ***facts*** to hold CFS-Curacao liable under the theory of

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

*respondeat superior* for any alleged breaches of fiduciary duty by the Director Defendants, his claim for breach of fiduciary duty must be dismissed.

> **3.     The Economic Loss Rule bars the Receiver's Claim for Breach of Fiduciary Duty against CFS-Curacao**

As set forth in Section III.B. above, all of the Receiver's tort-based claims, including his claim for breach of fiduciary duty, are barred by Florida's economic loss rule because he has failed to establish any tort independent from the breach of contract, *i.e.*, the alleged breach of the Administrative Services Agreement by CFS-Curacao. *See Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 Fed. Appx. 894, 902 (11th Cir. 2006) (claims for negligence and breach of fiduciary duty were barred by the economic loss rule where the parties' "obligations to each other arose from the … contracts"); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F. Supp. 2d 1310, 1318 (S.D. Fla. 2002) (economic loss rule barred plaintiff's claim for breach of fiduciary duty where plaintiff failed to allege facts or duties on the part of the defendant which were independent of facts underlying the breach of contract claim). Notwithstanding the Receiver's assertion to the contrary, each of the alleged fiduciary duties owed by CFS-Curacao to the Offshore Funds relates to the performance of its contract to provide administrative services to the Funds. (SAC ¶ 463). Therefore, the Receiver's tort-based breach of fiduciary duty claim is barred by the economic loss rule.

> **D.     Aiding and Abetting Breach of Fiduciary Duty Claims**

In the SAC, the Receiver alleges that CFS-Curacao aided and abetted a breach of fiduciary duty by the Director Defendants, and in a separate count, alleges that CFS-Curacao aided and abetted a breach of fiduciary duty by Lauer. Both of these aiding and abetting claims should be dismissed.

In its previous Order, this Court dismissed both aiding and abetting claims, recognizing that a claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.  *See In re Caribbean K Line, Ltd.*, 288 B.R. 908, 919 (S.D. Fla. 2002); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).[13]

With respect to the Amended Complaint, this Court dismissed the Receiver's aiding and abetting claims because the element of "substantial assistance" was found to be lacking. Specifically, this Court found that in the absence of an allegation of a duty to disclose, liability can be imposed only upon a finding of a "high conscious intent" and a "conscious and specific motivation" to aid the fraud.  *Court Appointed Receiver,* 2008 WL 926513, at *5-6.  Only if a duty to disclose is alleged, would a defendant be subject to liability based upon a finding of recklessness. *Id.*  In its Order, this Court found that the Receiver did not allege that CFS-Curacao had a duty to disclose any alleged misconduct of a third party to the Offshore Funds, and further found that the Amended Complaint failed to contain allegations that set forth the requisite degree of scienter. *Id.*  Thus, the Court dismissed the aiding and abetting claims.

In the SAC, the Receiver attempts to allege a duty to disclose by reincorporating in bulk all of the allegations of his breach of fiduciary duty claim.  (SAC ¶¶ 500, 515) (reincorporating ¶¶ 453-475), and by adding one additional paragraph also alleging that CFS-Curacao owed fiduciary duties to the Offshore Funds. (SAC ¶ 501).  However, as set forth in Section III.C.

---

[13]   Under BVI law, there is no basis for the aiding and abetting breach of fiduciary duty claims, where BVI law provides that a person who has not himself committed a breach of fiduciary duty may not incur liability in respect of a breach of fiduciary duty by another.  (Smith Decl. ¶¶ 172-175). The SAC contains no allegations that CFS-Curacao procured any alleged breach of fiduciary duty by Lauer or the Director Defendants and thus fails to state a claim under BVI law.

above, the breach of fiduciary duty claim fails because of (1) the failure to allege a fiduciary relationship between CFS-Curacao and the Offshore Funds; (2) the failure to allege a fiduciary duty based on *respondeat superior*; and (3) Florida's economic loss rule.  Thus, where there is no basis for finding a fiduciary relationship, or the breach of a fiduciary duty, on the part of CFS-Curacao, these additional allegations do not give rise to a duty to disclose.

Further, the SAC does not even attempt to include any additional allegations sufficient to establish that CFS-Curacao acted with scienter or "high conscious intent."  Because the SAC fails to allege that CFS-Curacao substantially assisted in either the Director Defendants' or Lauer's alleged breach of fiduciary duty the aiding and abetting counts must be dismissed.[14]

## IV.   THE RECEIVER'S TORT CLAIMS MUST BE DISMISSED AS TO THE DIRECTOR DEFENDANTS

On March 31, 2008, this Court entered a separate Order and Opinion on the Director Defendants' Motion to Dismiss. *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080-Civ, 2008 WL 926509 (S.D. Fla. Mar. 31, 2008) (the "Director Defendants' Order").  In the Director Defendants' Order, this Court dismissed several counts of the Receiver's Amended Complaint, including the claims for professional malpractice, aiding and abetting CFS-Curacao's breach of fiduciary duty, and liability under ERISA for breach by

---

[14]   Finally, as to all of the common law claims raised by the Receiver, even if some liability were to be established against CFS-Curacao, such liability would not extend to those losses allegedly incurred by the Offshore Funds because of their continued operations.  (SAC ¶¶ 431(d), 439(d), 452(d), 476(d), 499(d), 514(d), 528(d), and 532(d)). The viability of such a theory is a question of state law, s*ee Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 351 (3d Cir. 2001), and no Florida state court has ruled that a claim for damages based on deepening insolvency may be sustained. Further, under BVI law, these alleged losses do not fall within the scope of the duty allegedly owed by CFS-Curacao, which would likely be responsible for the consequences of the information it provided being wrong, but would not be liable for all of the consequences of decisions made in reliance on that information. (Smith Decl., ¶¶ 90-100).

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

co-fiduciaries.  Because the SAC similarly fails to cure the deficiencies recognized by the Court in the Director Defendants' Order, these counts must be dismissed from the SAC.

### A.      Professional Malpractice

In the Director Defendants' Order, this Court relied on the same case law and reasoning with respect to the professional malpractice claim as it did in its Order directed to the same claim against CFS-Curacao.  Specifically, this Court found that: "Since the Complaint contains no allegations that a four-year degree is required to serve as a director of a corporation, the Receiver fails to sufficiently allege that the Director Defendants are professionals, and the claim for professional malpractice fails as a matter of law."  *Id.* at *2.  The Court found the fact that the Receiver set forth the certificates and advanced degrees held by each of the Director Defendants to be unavailing, stating that "the relevant issue is not what degrees each individual Director Defendant may or may not possess; instead, the issue is whether the job performed by the Director Defendants requires a four-year degree for licensure."  *Id.* at *3.  The Court also relied on the case law cited in Section III.A. above, and that discussion is incorporated herein.

In his SAC, the Receiver has failed to add any additional allegations to show that the Director Defendants are "professionals" under Florida law.  In this count of the SAC, the Receiver has merely repeated his boilerplate mantra that the Citco Defendants and the Director Defendants acted "knowingly, willfully, recklessly and/or with gross negligence," and has added one clause purporting to add additional breaches of duty.  (SAC ¶ 531). Neither of these two minor changes to the professional malpractice claim cure the substantive defect recognized by this Court.  Where this Court held that the Receiver would be given only one additional opportunity to state a valid malpractice claim, and the Receiver has not done so, this claim must be dismissed with prejudice from the SAC.

18

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

**B.      Aiding and Abetting CFS-Curacao's Breach of Fiduciary Duty**

As this Court found in the Director Defendants' Order, the Receiver failed to state a claim against the Director Defendants for aiding and abetting CFS-Curacao's breach of fiduciary duty, where the Receiver failed to set forth the "special circumstances" necessary to allege a fiduciary duty on the part of CFS-Curacao. *Court Appointed Receiver,* 2008 WL 926509, at *5.[15] In Count IX of the SAC, the Receiver attempts to bring this same claim, by adding additional allegations purportedly to support that CFS-Curacao owed a fiduciary duty to the Funds.  For the reasons set forth in Section III.C.1 above, the Receiver's SAC still fails to allege any "special circumstances" to support that CFS-Curacao owed such a fiduciary duty. Accordingly, where CFS-Curacao owed no fiduciary duty to the Offshore Funds, the Director Defendants cannot be liable for allegedly aiding and abetting CFS-Curacao's breach of fiduciary duty.[16]

**V.      THE RECEIVER'S ERISA-BASED CLAIMS MUST BE DISMISSED**

**A.      The Receiver's Claim for Breach of ERISA Fiduciary Duty Must be Dismissed as to CFS-Curacao**

In its Order, this Court previously dismissed the Receiver's claim for breach of ERISA fiduciary duty as to CFS-Curacao, holding, *inter alia*, that "the fact that CFS-Curacao appointed the Director Defendants does not, in and of itself, establish CFS-Curacao exercised authority or control respecting the management or disposition of Offshore's ERISA plan assets.  The

---

[15]   The Court did find that the Receiver stated a claim for aiding and abetting Lauer's breach of fiduciary duty, *Court Appointed Receiver,* 2008 WL 926509, at *5, and the Director Defendants do not move to dismiss that claim in the SAC.

[16]   Moreover, the Receiver fails to allege any facts to establish the element of "substantial assistance or encouragement" of the alleged breach of fiduciary duty by CFS-Curacao, where the allegations in the SAC improperly equate "acquiescence" with alleged affirmative assistance. (SAC ¶¶ 480, 483, 488).  *See In re Caribbean K Line* 288 B.R. at 919 (aidor and abettor's substantial assistance or encouragement of wrongdoing required for liability).  There are no allegations that the Director Defendants substantially assisted or encouraged any alleged breach of fiduciary duty by CFS-Curacao.

Receiver would have to further allege that CFS-Curacao had actual authority or control over the *decisions* by the Director Defendants to either take or not take actions with respect to Offshore's ERISA plan assets." *Court Appointed Receiver*, 2008 WL 926513, at *8. While the Receiver's amended claim for Breach of ERISA Fiduciary Duty against CFS-Curacao (Count II of the SAC) is replete with additional allegations of purported breaches by the Director Defendants, the Receiver once again fails to sufficiently link those alleged breaches to CFS-Curacao, and this claim should be dismissed with prejudice.

The Receiver makes the conclusory allegation that "the Citco Defendants had, and exercised, the ultimate authority or control with respect to the management or disposition of Offshore's ERISA plan assets through their authority or control over the Director Defendants" (SAC ¶ 379), but wholly fails to even attempt to allege which decisions made by which of the Director Defendants were controlled by which of the Citco Defendants.[17]   Moreover, this conclusory statement is contrary to his more specific allegation that it was Lancer Management, in its capacity as investments advisor that "was responsible for identifying and purchasing all investment positions held by the Offshore Funds."  (SAC ¶ 72).  As such, the Receiver has again failed to state a claim for breach of ERISA fiduciary duty against CFS-Curacao.  *Court Appointed Receiver*, 2008 WL 926513, at *8.

Similarly, the Receiver cannot rely on the theory of *respondeat superior* to argue that CFS-Curacao should be liable under ERISA.  First, it is unclear whether *respondeat superior* is

---

[17]   In fact, the Receiver contradicts any notion that the Director Defendants, acting as directors of the Offshore Funds, were controlled by CFS-Curacao, when he cites to the Administrative Services Agreements between CFS-Curacao and the Offshore Funds (*see, e.g.,* SAC ¶ 354), which provided that CFS-Curacao was to be subject to the control of the Director Defendants. (*See* SAC, Exs. J, K, L, § 1.1) (CFS-Curacao "under the supervision of the Company's Board of Directors … shall be responsible for performing the following administrative duties and functions for the Company").

even applicable to ERISA cases.[18]  *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005) (finding *respondeat superior* inapplicable in an ERISA context in light of the Supreme Court's "unwillingness to infer causes of action in the ERISA context, since the statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly'"); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1370 n.10 (N.D. Ga. 2005) (expressing "some reservation about imposing *respondeat superior* liability under ERISA, given the absence of any express contemplation of such a theory within the text or legislative history of the statute"); *Tool v. Nat'l Employee Benefit Servs., Inc.*, 957 F. Supp. 1114, 1120-21 (N.D. Cal. 1996).

Further, even if this Court were to find that *respondeat superior* applies in an ERISA context, the claim against CFS-Curacao must nevertheless be dismissed.  Those courts that apply *respondeat superior* clearly hold that in order for the doctrine to apply, "the agent must have breached his or her fiduciary duties while acting in the course and scope of employment." *Hamilton v. Carell*, 243 F.3d 992, 1002 (6th Cir. 2001).  While the Receiver makes the conclusory allegation that the Director Defendants were employees and/or agents of CFS-Curacao, such an allegation is insufficient, where it is clear that the Director Defendants were not acting as employees and/or agents of CFS-Curacao when they were performing their duties as directors of the Offshore Funds.  As one court has explained:

> In line with the "two hats" theory, however, an employee who performs services on behalf of her employer's benefit plan may serve two masters: the company (as an employee), and the plan (as a fiduciary or agent thereof).  When an employee takes actions regarding the plan, he is not "acting within the scope of his

---

[18]   Neither the Eleventh Circuit, nor any District Court in Florida has addressed the issue of the viability of *respondeat superior* liability in the ERISA context.

authority" granted by the employer, but rather that granted by the plan or plan fiduciary…. ***Accordingly, respondeat superior cannot create fiduciary status on behalf of the employer, but could only give rise to liability where the employer is otherwise a plan fiduciary as to the functions performed by its agents***.

*In re Mut. Funds Inv. Litig.*, No. 1:04:md-15864-CCB, 2005 WL 3692756, at *9 n.15 (D. Md. Dec. 6, 2005). *See also Hamilton*, 243 F.3d at 1003; *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988).

Moreover, the Receiver's additions to the ERISA count do not establish that CFS-Curacao itself functioned as an ERISA fiduciary. One key inquiry in determining whether a defendant is an ERISA fiduciary is whether that defendant had "authority or control with respect to the management or disposition of the assets" of the ERISA plan. *See* 29 C.F.R. § 2510.3-101(a)(2). The factual allegations of the SAC and the exhibits attached thereto establish that, rather than exercising authority or control over the management or disposition of the assets of the Offshore Funds, CFS-Curacao was contractually obligated to perform certain clerical or ministerial functions, such as preparing and maintaining accounting records, distributing annual reports to shareholders, and computing the monthly NAV in accordance with the Explanatory Memorandum and Articles of Association. (SAC, Exs. J, K, L). Duties such as these do not give rise to any fiduciary duty under ERISA. *See* 29 C.F.R. § 2509.75-8(D-2) ("a person who performs purely ministerial functions, such as "preparation of employee communications material, … maintenance of participants' service and employee records, … calculation of benefits, … and processing of claims" is not a fiduciary). *See also Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 342 (5th Cir. 2005); *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996); *Kyle Ry., Inc. v. Pacific Admin. Servs. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993); *Skilstaf, Inc. v. Adminitron, Inc.*, 66 F. Supp. 2d 1210, 1215-16 (M.D. Ala. 1999).

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

Where the Receiver cannot make the threshold showing that CFS-Curacao was an ERISA fiduciary, the Receiver's litany of alleged breaches (*see, e.g.* SAC ¶¶ 383-390, 394-400) are irrelevant.  *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

Finally, the Receiver' allegations that CFS-Curacao is a fiduciary because it provided investment advise to the Offshore Funds for a fee again fail, where it is clear that CFS-Curacao did not provide any investment advice to the Funds.  In its Order, the Court held that "[p]erformance of the contractual obligation to compute and price the monthly NAV for Offshore is not, in and of itself, sufficient to meet the requirements" for fiduciary status under ERISA."  *Court Appointed Receiver*, 2008 WL 926513, at *9.  As in the Amended Complaint, the SAC merely alleges that CFS-Curacao was an ERISA fiduciary because it rendered "advice to the [benefit plan investors] as to the value of securities." (SAC ¶ 380).  As the Court held in its Order, this conclusory and unsupported allegation is insufficient.  *Court Appointed Receiver,* 2008 WL 926513, at * 9.  ("The regulation requires that, in addition to rendering advice as to the value of securities, the individual must also, either directly or indirectly, have discretionary authority or control with respect to purchasing or selling the securities or render advise to the plan on a regular basis.").  Where the SAC contains no allegation that CFS-Curacao itself had any authority to buy or sell securities or regularly rendered advice to the Offshore Funds, the Receiver has not established that CFS-Curacao was an ERISA fiduciary.  *See* 29 C.F.R. 2510-3-21(c); *Hamilton*, 243 F.3d at 1000; *Toomey v. Jones*, 855 F. Supp. 19, 24-25 (D. Mass. 1994).

Moreover, as set forth in detail above, CFS-Curacao cannot be deemed a fiduciary as a result of its relationship to the Director Defendants, where the Receiver has failed to establish the requisite link between those defendants, acting as directors, and CFS-Curacao, and where CFS-Curacao cannot be held liable under the doctrine of *respondeat superior*.[19]

### B. The Receiver's Claims for Liability Under ERISA for Breach by Co-Fiduciaries Must be Dismissed

In its prior Orders, this Court dismissed the Receiver's claims for co-fiduciary liability as to both CFS-Curacao and the Director Defendants. In Counts III and IV of the SAC, the Receiver once again attempts to state claims against the "Director Defendants" and the "Citco Defendants" for "Liability Under ERISA for Breach by Co-Fiduciaries." These two claims should be dismissed, with prejudice.

First, as to CFS-Curacao, as set forth above, the Receiver once again fails to set forth facts to establish that it was an ERISA fiduciary. As such, the Receiver cannot state a claim for co-fiduciary liability. *Court Appointed Receiver*, 2008 WL 926513, at *9. *See also Spink v. Lockheed Corp.*, 125 F.3d 1257, 1261 (9th Cir. 1997); *Henry v. Champlain Enters., Inc.*, 288 F. Supp. 2d 202, 223 (N.D.N.Y. 2003).

Additionally, both Counts III and IV must be dismissed, where the Receiver has failed to follow this Court's directive in the Director Defendants' Order that he "identify the breaches of fiduciary duty, the specific defendants with knowledge of the breaches, and identify more specifically how each defendant failed to take reasonable efforts to remedy the breach." *Court*

---

[19] The Receiver makes the baseless allegation that "the Director Defendants also had authority and control with respect to Offshore's purchasing and selling of securities." This allegation is contradicted by the clear terms of the Placement Memorandum for Lancer Offshore, which provided that the Investment Manager had the **sole authority** to control the selection of investments for that fund. (SAC, Ex. M, p. 1). *See Wydler v. Bank of Am., N.A.,* 360 F. Supp. 2d 1302, 1309 (S.D. Fla. 2005) (where the documents appended to a complaint conflict with the allegations, the documents control).

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

*Appointed Receiver*, 2008 WL 926509, at *10. While the Receiver has lengthened considerably his allegations of purported breaches, the Receiver has once again done nothing to distinguish the specific conduct of each defendant.  Instead, the Receiver merely lumps together the alleged breaches purportedly committed by four separate corporate entities and three separate individuals.  For example, in paragraph 408 of the SAC, the Receiver alleges that: "The ***Director Defendants*** … breached their respective fiduciary duties … by actively participating in, acquiescing, and/or ignoring each other's breaches and the breaches of ***the Citco Defendants***." This is far from the specificity required to state a claim for co-fiduciary liability.  *Id.  See also In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *8 (N.D. Ill. Mar. 3, 2004) (dismissing claim for co-fiduciary liability where plaintiffs "impermissibly lumped" all defendants together); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030RMW, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002).  Both of the Receiver's counts for co-fiduciary liability are replete with generalized allegations that wholly fail to put each individual defendant on notice of what that defendant is alleged to have done wrong, and thus, these counts should be dismissed, with prejudice.[20]

## CONCLUSION

For the reasons set forth above, this Court should dismiss the SAC in its entirety as to CFS-Curacao, with prejudice.  Further, as to the Director Defendants, this Court should dismiss with prejudice the claims for professional malpractice, aiding and abetting CFS-Curacao's purported breach of fiduciary duty, and liability under ERISA for breach of co-fiduciaries.

---

[20]    *See also, e.g.,* SAC ¶ 405 ("the ***Director Defendants*** … breached their fiduciary duties…"); ¶ 409 ("The ***Director Defendants*** are liable for the breach of duty by their co-fiduciaries…"); ¶ 410 ("The ***Director Defendants'*** failure to detect…"); ¶ 416 ("***Citco N.V., and The Citco Group and Citco USA*** … breached their fiduciary duties…") ¶ 419 ("The ***Citco Defendants*** are liable for the breach of duty…"); ¶ 423 ("Accordingly, the ***Citco Defendants*** should not be permitted to escape liability . . .").

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **March 9, 2009**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

GILBRIDE, HELLER & BROWN, P.A.

By: /s/ Dyanne E. Feinberg
Lewis N. Brown
Fla. Bar No. 270008
lbrown@ghblaw.com
Dyanne E. Feinberg
Fla. Bar No. 371548
dfeinberg@ghblaw.com
Terence M. Mullen
Fla. Bar No. 0191957
tmullen@ghblaw.com
Elizabeth Izquierdo
Fla. Bar No. 594466
eizquierdo@ghblaw.com
One Biscayne Tower, Suite 1570
2 South Biscayne Blvd.
Miami, Florida  33131
Phone: (305) 358-3580
Fax: (305) 374-1756

CASE NO. 05-60080 CIV-MARRA/ JOHNSON

COURT APPOINTED RECEIVER etc., v. THE CITCO GROUP LTD, etc.
CASE NO. 05-60080 CIV-MARRA-JOHNSON

Andrew Zaron, Esq.
Juan Enjamio, Esq.
Courtney Caprio, Esq.
HUNTON & WILLIAMS, LLP
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131-1802