UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.  05-60080-CIV-MARRA/JOHNSON

(Proceeding Ancillary to Case No. 03-80612-CIV-MARRA/JOHNSON)


COURT APPOINTED RECEIVER of
LANCER OFFSHORE, INC. and THE
OMNIFUND, LTD.,

        Plaintiff,

vs.

THE CITCO GROUP LTD., et al.,

        Defendants.

_____ /


**RECEIVER'S MEMORANDUM OF LAW IN OPPOSITION
TO CITCO FUND SERVICES (CURACAO) N.V. AND INTER CARIBBEAN
SERVICES, LTD., ANTHONY STOCKS, KIERAN CONROY, AND DECLAN
QUILLIGAN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**


Andrew D. Zaron (FBN 965790)
Barry R. Davidson (FBN 107678)
Juan C. Enjamio (FBN 571910)
Courtney Caprio (FBN 933961)
**HUNTON & WILLIAMS LLP**
*Attorneys for Receiver*
1111 Brickell Avenue - Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL ARGUMENT...........................................................................................2

    A.    The Receiver States A Breach of Contract Claim Against Citco N.V....................2

    B.    The Receiver States a Claim for Breach Of The Implied Duty Of Good Faith .......................................................................................................................3

    C.    The Receiver States A Breach Of Fiduciary Duty Claim Against Citco N.V..........................................................................................................................6

    D.    The Receiver States a Claim for Aiding and Abetting  Breach Of Fiduciary Duty Against Citco N.V............................................................................12

    E.    The Receiver States a Claim for Gross Negligence Against Citco N.V...............13

    F.    The Receiver States A Claim for Professional Malpractice .................................16

    G.    The Receiver Alleges Respondeat Superior Liability for Citco N.V....................18

    H.    The Receiver Sufficiently Alleges ERISA Violations...........................................22

III.    CONCLUSION....................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*Estate of Halas*,
    94 T.C. 570 (U.S. Tax Ct. 1990)............................................................................8, 9

### CASES

*AmeriFirst Bank v. Bomar*,
    757 F. Supp. 1365 (S.D. Fla. 1991) ...........................................................................12

*American Color Graphics, Inc. v. Brooks Pharmacy, Inc.*,
    2006 WL 539543 (M.D. Fla. 2006) ........................................................................5, 6

*Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, Inc.*,
    581 So. 2d 1301 (Fla. 1991)........................................................................................18

*Bavaria Int'l Aircraft Leasing GMBH v. Clayton Dubilier & Rice, Inc.*,
    2003 WL 21767739 (S.D.N.Y. July 30, 2003) .........................................................21

*Behran v. Allstate Life Ins. Co.*,
    388 F. Supp. 2d 1346 (S.D. Fla. 2005) .......................................................................6

*In re Bicoastal*,
    169 B.R. 445 (Bankr. M.D. Fla. 1994) ......................................................................22

*Branch Banking & Trust Co. v. U.S. Bank N.A.*,
    2008 WL 4186982 (S.D. Fla. Sept. 8, 2008) ...........................................................6, 7

*Bray & Gillespie Management LLC v. Lexington Ins. Co.*,
    527 F. Supp. 2d 1355 (M.D. Fla. 2007)........................................................................2

*Bruhl v. Price Waterhousecoopers Int'l*,
    2007 U.S. Dist. LEXIS 21955 (S.D. Fla. Mar. 27, 2007) .........................................17

*Burger King Corp. v. Weaver*,
    169 F.3d 1310 (11th Cir. 1999)....................................................................................6

*Capital Bank v. MVB, Inc.*,
    644 So. 2d 515 (Fla. 3d DCA 1994) .........................................................................6, 7

*In re Cardinal Health, Inc. ERISA Litigation*,
    424 F. Supp. 2d 1002 (S.D. Ohio 2006) ....................................................................25

*Carson v. Lynch Multimedia Corp.*,
   123 F. Supp. 2d 1254 (D. Kan. 2000) ........................................................9, 10, 14

*Cotton v. Mass. Mutual Life Insurance Co.*,
   402 F.3d 1267 (11th Cir. 2005) ........................................................................22

*Cox v. CSX Intermodal, Inc.*,
   732 So. 2d 1092 (Fla. 1st DCA 1999) ............................................................3, 4

*Doe v. Evans*,
   814 So. 2d 370 (Fla. 2002) ..................................................................................7

*Enola Contracting Svcs, Inc. v. URS Group*,
   2008 WL 1844612 (N.D. Fla. Apr. 23, 2008) ....................................................6

*Enslava v. Gulf Telephone Company, Inc.*,
   2007 U.S. Dist. LEXIS 44165 (S.D. Ala. June 18, 2007) ................................27

*First Fla. Bank, N.A. v. Max Mitchell & Co.*,
   558 So. 2d 9 (Fla. 1990) ....................................................................................18

*Garden v. Frier*,
   602 So. 2d 1273 (Fla. 1992) ..............................................................................17

*In re Global Crossing Ltd. Secs, Litig.*,
   2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005) ....................................................21

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ..........................................................................3

*Guildhall Insur. Co. Ltd. v. O'Boyle*,
   688 F. Supp. 910 (S.D.N.Y. 1988) ......................................................................8

*Hamilton v. Carell*,
   243 F.3d 992 (6th Cir. 2001) ............................................................................24

*Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000) ..............................................................................26, 28, 29

*Hilliard v. Black*,
   125 F. Supp. 2d 1071 (N.D. Fla. 2000) ............................................................11

*Howell v. Motorola, Inc.*,
   337 F. Supp. 2d 1079 (N.D. Ill. 2004) ..............................................................25

*Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
  891 So. 2d 532 (Fla. 2004) ................................................................11, 15

*Indulgence Yacht Charters Ltd. v. Ardell Inc.*,
  2008 WL 4346749 (S.D. Fla. Sept. 16, 2008) ........................................3

*Invo. Fla., Inc. v. Somerset Venturer, Inc.*,
  751 So. 2d 1263 (Fla. 3d DCA 2000) .....................................................10

*J.B. v. Sacred Heart Hospital of Pensacola*,
  996 F.2d 276 (11th Cir. 1993)..................................................................18

*Jordan (Bermuda) Inv. Co. v. Hunter Green Invs Ltd.*,
  2003 WL 21263544 (S.D.N.Y. June 2, 2003)...........................................9

*Kling v. Fidelity Management Trust Co.*,
  323 F. Supp. 2d 132 (D. Mass. 2004) ......................................................25

*Laborers' Pension Fund v. Arnold*,
  2001 U.S. Dist. LEXIS 2026 (N.D. Ill February 27, 2001) .....................27

*Long v. Great West Life & Annuity Ins. Co.*,
  957 P.2d 823 (Wyo. 1998)..............................................................6, 7, 8

*Maliner v. Wachovia Bank, NA*,
  2005 WL 670293 (S.D. Fla. Mar. 1, 2005) .............................................17

*Martin v. Walton*,
  773 F. Supp. 1524 (S.D. Fla. 1991) ........................................................22

*Miles v. Naval Aviation Museum Found, Inc.*,
  289 F.3d 715 (11th Cir. 2002).........................................................14, 15

*Moransias v. Heathman*,
  744 So. 2d 973 (Fla. 1999)......................................................................17

*National Security Systems, Inc. v. Iola*,
  2007 U.S. Dist. LEXIS 71470 (D.N.J. Sept. 26, 2007) .........................27

*PNC Bank v. Colonial Bank, N.A.*,
  2008 WL 4790122 (M.D. Fla. Nov. 3, 2008) ..........................................11

*Peat v. Lane*,
  565 So. 2d 1323 (Fla. 1990)....................................................................18

*Pierce v. AALL Ins. Co.*,
   531 So. 2d 84 (Fla. 1988)................................................................................17

*Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
   2007 WL 1424596 (S.D. Fla. May 14, 2007) ........................................4, 5

*Rudolph v. Arthur Andersen & Co.*,
   800 F.2d 1040 (11th Circ. 1986)...........................................................14, 15

*Ryan v. Bryant*,
   417 So. 2d 658 (Fla. 1982).......................................................................14

*Shibata v. Lim*,
   133 F. Supp. 2d 1311 (M.D. Fla. 2000) ....................................................6

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*,
   2009 WL 901500 (S.D. Fla. Mar. 30, 2009)............................................16

*Smith v. First Union Nat'l Bank*,
   2002 WL 31056104 (S.D. Fla. Aug. 23, 2002).........................................13

*Stateline Power Corp. v. Kremer*,
   404 F. Supp. 2d 1373 (S.D. Fla. 2000) ...................................................10

*Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*,
   842 So. 2d 204 (Fla. 3d DCA 2003) ...................................................7, 11

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...................................................................................21

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009).................................................19, 20, 21

*Woods v. Barnett Bank of Ft. Lauderdale*,
   765 F.2d 1004 (11th Cir. 1985)...............................................................12

*Woods v. Southern Company*,
   396 F. Supp. 2d 1351 (N.D. Ga. 2005) ..............................................29, 30

*In re Xerox Corp. ERISA Litigation*,
   483 F. Supp. 2d 206 (D. Conn. 2007) ................................................27, 28

# STATUTES

29 C.F.R. § 2510.3-21(c)(1)....................................................................................22

29 C.F.R. § 2510.3-21(c)(1)....................................................................................23

29 C.F.R. § 2510.3-21(c)(1)....................................................................................23

29 C.F.R. § 2510.3-21(c)(1)(i)................................................................................23

29 C.F.R. § 2510.3-21(e).........................................................................................22

29 C.F.R. § 2510.3-21(e)(1)....................................................................................23

29 C.F.R. § 2510.3-21(e)(2)....................................................................................23

29 U.S.C. § 1002(14)(A),, (H)...............................................................................26

29 U.S.C. § 1002(14)(B),þ(G), (Hþ, (I).................................................................29

29 U.S.C. § 1002(21)(A).........................................................................................22

29 U.S.C. § 1002(21)(A)(ii)....................................................................................23

29 U.S.C. § 1104(a).................................................................................................24

29 U.S.C. § 1104(a)(1)(B).......................................................................................25

29 U.S.C. § 1105.....................................................................................................29

29 U.S.C. § 1106(a).................................................................................................27

29 U.S.C. § 1106(a)(1)(D).......................................................................................29

Fla. Stat. §95.11(3)(a) & (4)(a)...............................................................................17

Fla. Stat. § 95.11.....................................................................................................18

Fla. Stat. § 95.11.....................................................................................................18

Fla. Stat. § 95.11.....................................................................................................18

## I.    <u>INTRODUCTION</u>[1]

Citco N.V., the administrator of the Funds, was an active participant in Michael Lauer's fraud that depleted the Funds.  It was aware of Lauer's inflated valuations.  Like Lauer, Citco N.V. had a financial incentive to perpetuate the scheme: both were paid a percentage of the Funds' Net Asset Value ("NAV") at the end of each quarter.  The higher the Funds' NAV, the higher Citco N.V.'s fees.  Citco N.V. thus disseminated grossly exaggerated valuations without disclosing the conflict created by its control of the Funds' Directors.  By allowing Lauer to perpetuate his wrongdoing, Citco N.V. too earned millions of dollars in excessive fees.

Citco N.V. had the contractual right to appoint directors to the Funds' boards, which it exercised by appointing The Citco Group's and its own conflicted high-level employees.  But it did more than appoint directors to control the boards. Citco N.V. controlled the Director Defendants' actions and votes, ensuring that they would not question Lauer's valuations, seek independent advice, or disclose the ongoing misconduct.  Through the control of the Directors, Citco N.V. participated in the management of the Funds and ensured that Lauer's misconduct would go unchallenged, Lancer Management's exorbitant fees would be unquestioned, and Citco N.V. would continue receiving excessive fees.  Even after the auditors started challenging the valuations and long after Lauer's scheme was obvious, Citco N.V. remained as administrator of the Funds to collect inflated fees.  Even when Citco N.V. finally resigned as administrator of the Funds, instead of disclosing the misconduct, it actively concealed Lauer's, its own and the other Defendants' wrongdoing by entering into a Transition Agreement. This contract contained a non-disparagement clause that was deceitfully intended to allay investors' concerns and avoid triggering an investigation about Citco N.V.'s resignation.

Because of Lauer's scheme, perpetrated with Citco N.V.'s and the Director Defendants' willful acquiescence and direct participation, the Funds were depleted, investors were damaged, and the wrongdoing went undetected.  The Receiver brings this action to recover millions of dollars lost by the Funds because of Defendants' misconduct.  Citco N.V. and the Director Defendants' arguments in support of their Motion to Dismiss ignore the new allegations raised in the Complaint, twist this Court's prior rulings, and ignore the relevant authorities.

---

[1] All capitalized terms used in this Memorandum shall have the same definition as set forth in the Second Amended Complaint ("Complaint").

## II.   <u>LEGAL ARGUMENT</u>[2]

### A.   <u>The Receiver States A Breach of Contract Claim Against Citco N.V.</u>

To allege a breach of contract claim under Florida law,[3] the Receiver must plead the existence of a contract, a breach of such contract, and damages resulting from the breach. *See Bray & Gillespie Management LLC v. Lexington Ins. Co.,* 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007).  The Receiver pleads sufficient facts to establish these elements.[4]  First, the Receiver alleges that Citco N.V. had Administrative Agreements with the Funds from 1996 through 2002 (the "Citco Agreements," or "Agreements"), which were "valid and enforceable contracts." Compl. ¶¶ 96, 426.  Second, he alleges that Citco N.V. "knowingly, willfully, recklessly, and/or with gross negligence" breached the Agreements by, among other actions, failing to independently value the Funds and failing to compute the Funds' monthly NAV in accordance with GAAP, as required under the contracts. *Id.* ¶ 428.  Third, the Receiver pleads that those breaches directly and proximately caused damages to the Funds. *Id.* ¶¶ 430-431.  These allegations suffice to state a claim for breach of contract under Florida law. *See, e.g., Bray,* 527 F. Supp. 2d at 1365 (denying motion to dismiss breach of contract claim when these three elements have been pled).

Although Citco N.V. did not challenge this claim previously, it asserts that the Receiver now fails to state a claim for breach of contract because the Complaint purportedly adds "breaches of duties that are not imposed by the contracts at issue."  The fact that the Receiver pleads separate duties outside of the Agreements does not mean that Citco N.V. did not breach duties that are required under the contracts, and Citco N.V. does not cite any case that would

---

[2] The Receiver adopts the Legal Standard in the Receiver's Memorandum of Law in Opposition to The Citco Group and Citco USA's Motion to Dismiss the Complaint.

[3] Citco N.V. and the Director Defendants concede that "no true conflict exists" between the application of the law of the British Virgin Islands and Florida law.  [DE 133 at 3-4.]  The Receiver believes that under a conflicts of law analysis, Florida law applies.  In its Order, this Court previously applied Florida law because both the Receiver and the Citco Defendants agreed that Florida law could be applied to the Receiver's claims.  [DE 98 at 3.]  Similarly, Florida law applies to the Complaint because the parties agree that the Court may apply Florida law.

[4] The Receiver also pleads that Citco USA and The Citco Group are vicariously liable for all claims asserted against Citco N.V.  The Receiver addresses these vicarious liability claims in a separate memorandum.

support its new arguments.[5]  The Receiver states a claim for breach of contract because he alleges the existence of a contract, Citco N.V.'s breach of these specific contractual duties, and damages to the Funds as a result of the breach.  Compl. ¶¶ 96, 426-431.

   **B.      The Receiver States a Claim for Breach Of The Implied Duty Of Good Faith**

The Complaint alleges that Citco N.V. is liable for breaching the implied duty of good faith and fair dealing that Florida law imposes on every contract.  *See Cox v. CSX Intermodal, Inc.,* 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999).  When a contract's terms "afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party."  *Id.*  The duties implied by the Agreements, especially the obligations to appoint directors and to compute the NAVs of the Funds, afford Citco N.V. "substantial discretion" —discretion that it was required to exercise in good faith.

A claim for the breach of the duty of good faith arises when one party abuses its contractual discretion to the other party's detriment.  *See id.*  In *Cox,* the plaintiffs, two truck drivers, contracted with CSX to carry freight.  The contract expressly disclaimed any obligation of CSX "to provide any specific quantity of freight or number of loads to [plaintiffs]."  *Id.* at 1097.  The plaintiffs sued for breach of the implied covenant because CSX consistently assigned them low paying loads.  The Florida court noted that the contracts "are silent with regard to the methodology or standards to be used by CSX in exercising its discretion to assign loads for transport."  *Id.* at 1098.  The court nonetheless concluded that, "while the [plaintiffs] have no rights under the contracts to any particular method of assignment, issues of fact exist as to

_____

[5] The case law relied on by Citco N.V. does not support its argument for dismissal.  Indeed, in *Indulgence Yacht Charters Ltd. v. Ardell Inc.,* 2008 WL 4346749, *4 (S.D. Fla. Sept. 16, 2008), Judge Altonaga denied a motion to dismiss a contract claim when the Complaint did not "directly contradict the Agreement." *Id.* Similarly, the breaches of non-contractual duties of care that Citco N.V. argues are extraneous do not contradict the Receiver's allegations that Citco N.V. breached specific provisions of the Agreements.  Compl. ¶¶ 96, 426-31.  Further, *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007) merely stands for the proposition that when exhibits "contradict the general and conclusory allegations of the pleading and foreclose recovery as a matter of law, dismissal is appropriate."  Here, both the Agreements and Complaint demonstrate that the Receiver has alleged that Citco N.V. breached specific provisions of the Agreements, which damaged the Funds. Exs. J, K, L; Compl.  ¶¶ 96, 426-31. Citco N.V.'s case law simply does not apply.

whether the manner by which CSX exercised its discretion in assigning freight to the [plaintiffs] violated the implied duty of good faith, fair dealing and commercial reasonableness." *Id.*

Similarly, the Agreements here establish duties, including the obligation to appoint directors to the Funds' boards, without specifying particular performance criteria or whether or not the directors should be independent. Ex. J, K, L; Compl. ¶¶ 83, 427. The Receiver alleges that Citco N.V. abused this discretion by, among other acts and omissions, appointing conflicted directors to the Funds and directing them to act in ways to benefit Citco to the detriment of the Funds. *Id.* ¶¶ 8-14, 432, 436. These directors chose not to act independently, but to follow Citco N.V., Citco USA, and The Citco Group's direction and control. While Citco N.V. had the express duty to appoint directors, it had to exercise that duty in good faith by appointing directors who it knew would make independent decisions not tainted by conflicts. Indeed, independent directors had a fiduciary duty to ensure that value of the Funds were appropriate, Lauer was not manipulating the NAVs to increase his fees, and the investors would be adequately informed about the true value. Here, the Director Defendants appointed by Citco N.V., Citco USA, and The Citco Group were not independent and had every incentive to both participate in and fail to object to the manipulation of the valuations since their employer's fees were directly enhanced by the inflated calculations. Since the Agreements are silent about the methodology for selection of the directors,[6] Citco N.V.'s appointment of The Citco Group and its own conflicted high-level employees to the Funds' boards for the purpose of increasing the administrative fees received by Citco N.V. raises "issues of fact as to whether the manner by which [Citco N.V.] exercised its discretion [to appoint the Funds' directors] violated the implied duty of good faith, fair dealing and commercial reasonableness." *Id.*

A defendant may also breach a duty of good faith where an express contractual provision requires "gap-filling" to give effect to its terms. In *Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 WL 1424596, *5 (S.D. Fla. May 14, 2007), the court noted that "a balance must be struck between the requirement of alleging that a specific provision has been breached and the requirement that the contract does not expressly dictate the conduct in question." The Court then held that "[plaintiff] sufficiently alleges [defendant] has breached an express coverage provision

---

[6] Citco N.V. even concedes that the contract does not create a duty to appoint "independent" directors. [DE 133 at 4-5.] Thus, Citco N.V.'s discretion in appointing directors had to be exercised in good faith.

of its policy, which requires gap-filling in regard to a reasonable time frame for payment" of insurance claims.  *Id.*

Here, the Receiver alleges that Citco N.V. was required to reasonably "fill in the gap" regarding the criteria for the appointment of directors.  Citco N.V. failed to act reasonably thereby breaching the duty of good faith and fair dealing.  In addition to providing directors, the Agreements also have provisions requiring Citco N.V. "to compute the NAV" in accordance with GAAP and  "independently price" the Funds by reference to other data.  Exs. J, K, L.  But these provisions are silent as to how this is to be done or about Citco N.V.'s obligation to report and disclose Lauer's misconduct in inflating the NAV to the Funds, the Independent Directors, the investors, and the authorities.  *Id.*   Such a duty would be implied to protect the Funds' "reasonable contractual expectations" that Citco N.V. properly valued the Funds and not rubberstamp valuations from Lauer and Stenton Leigh,[7] who were conflicted entities.  This silence requires "gap-filling," which the trier of fact is empowered to do when considering a claim for breach of the implied duty of good faith and fair dealing.

Under Florida law, "[t]here are two limitations on the covenant of good faith and fair dealing: 1) a claim for the breach of the covenant must be accompanied by a claim that the term of the contract itself has been breached, and 2) the covenants cannot be used to alter the express terms of the contract."  *American Color Graphics, Inc. v. Brooks Pharmacy, Inc.*, 2006 WL 539543 at *4 (M.D. Fla. 2006).  The Receiver pleads that the terms of the Agreements were breached by Citco N.V.  Compl. at ¶ 428.  And the Receiver does not seek to alter any terms of these agreements; he does not seek in this claim to create new duties or impose obligations beyond the expectation and bargain of the parties.

Citco N.V. contracted for a fee, paid not to the directors but to Citco, to appoint directors and to compute and independently value the Funds' NAVs.  Exs. J, K, L.  It may argue that its duties were just to parrot the calculations made by Lauer, no matter how absurd.  But the expectation of the parties could never have been for Citco N.V. to appoint its own high-level conflicted employees as directors, to control their every action, and to knowingly disseminate evidently baseless calculations without disclosing their inaccuracy.   Indeed, why would the

---

[7] Citco N.V. even admits that these provisions are silent as to whether Citco N.V. must "verify" the valuations stated by Lauer and Stenton Leigh.  Citco N.V. Mem. at 4-5.

Funds pay Citco N.V. a fee <u>both</u> for the appointment of Directors to the Funds <u>and</u> for contractual services regarding the valuation of the Funds, unless those services implied that the directors would be independent and that Citco N.V. would independently value the funds and disclose problematic valuations?  Such actions "disappoint[] the reasonable expectations" of the Funds, "thereby depriving [them] of the benefits of the agreement."  *American Color Graphics,* 2006 WL 539543 at *4.  These discretionary duties neither duplicate the breach of contract allegations nor vary the express terms of the Agreements.  The Receiver pleads all of the elements of a claim for breach of an implied covenant of good faith and fair dealing, and the claim should be allowed to proceed.[8]

       **C.**     <u>**The Receiver States A Breach Of Fiduciary Duty Claim Against Citco N.V.**</u>[9]

The Receiver states a claim for breach of fiduciary duties against Citco N.V.  The Receiver alleges that an implied fiduciary duty exists because the Funds reposed confidence in Citco N.V., which accepted this special trust.  *See Branch Banking & Trust Co. v. U.S. Bank N.A.*, 2008 WL 4186982, *4 (S.D. Fla. Sept. 8, 2008).  Citco N.V.'s obligations to the Funds encompass a duty to disclose and  a duty of loyalty.  *Behran v. Allstate Life Ins. Co.,* 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005).  There are also special circumstances present, such as Citco N.V.'s undertaking of special services for the Funds, its receipt of greater economic benefits, and its exercise of extensive control over the Funds' management and board of directors, which demonstrate that Citco N.V. stepped outside its contractual role with the Funds and willingly entered into a relationship that created fiduciary obligations for Citco N.V.  *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994).  Moreover, duties flowing from Citco N.V.'s contract with the Funds also create a fiduciary duty.  *See Long v. Great West Life & Annuity Ins. Co.*, 957 P.2d 823, 828-29 (Wyo. 1998).

---

[8] The cases cited by Citco N.V. are wholly distinguishable  *Cf. Shibata v. Lim,*133 F. Supp. 2d 1311 (M.D. Fla. 2000) (standards expressly delineated so no gap-filler required);  *Burger King Corp. v. Weaver,* 169 F.3d 1310 (11th Cir. 1999) (creation of new contractual rights and duties does not support implied covenant claim); *Enola Contracting Svcs, Inc. v. URS Group,* 2008 WL 1844612 (N.D. Fla. Apr. 23, 2008) (duplicative claims for breach of contract do not establish breach of the implied covenant).

[9] This Court has held that the Receiver states a claim for breach of fiduciary duty against the Director Defendants, and they do not challenge this claim as pled in the Complaint.  [DE 100 at 9-10.]

Under Florida law, "[i]f a relation of trust and confidence exists between the parties…that is sufficient as a predicate for relief" for breach of fiduciary duty. *See Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). A "relation of trust and confidence" exists "where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired or abused." *See id.*; *Branch Banking & Trust*, 2008 WL 4186982, *4. A fiduciary relationship need not be explicitly provided for in an agreement; rather, such a relationship may be implied in law as a result of "the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank*, 644 So. 2d at 518 (Fla. 3d DCA 1994). Conversely, the existence of an agreement between the alleged fiduciary and the injured party that does not provide for an express fiduciary duty does not foreclose the existence of a further, implied fiduciary duty. *See Branch Banking & Trust*, 2008 WL 4186982 at *4. So long as the allegations of a complaint sufficiently allege a separate breach of fiduciary duty not relating to the performance of the contract in addition to a breach of contractual duties, both causes of action may be pursued. *Id.* "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *Id*.

Determining whether a defendant owes a plaintiff an implied fiduciary duty is a fact-specific inquiry that generally should not be undertaken in the context of a motion to dismiss. *See Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. 3d DCA 2003) (the factually intensive nature of determining whether an implied fiduciary duty exists precludes consideration on a motion to dismiss). Generally, an implied fiduciary duty is evidenced by the existence of "special circumstances" such as (i) a defendant's undertaking of extra services for a plaintiff; (ii) a defendant's receipt of greater economic benefit than is typical for the relationship at issue; and (iii) a defendant's exercise of extensive control over the affairs of a plaintiff. *See Capital Bank*, 644 So. 2d at 519.

The Receiver alleges with specificity all of these elements. Consequently, a jury could find that the contract itself created a fiduciary relationship. *See Long,* 957 P.2d at 828-29. In *Long*, like here, the defendant claimed that it was not a fiduciary because it had a contractual obligation to administer a plan that merely required it to perform "ministerial" duties. *Long*, 957 P.2d at 824, 829. The court disagreed, reversed a grant of summary judgment in the defendant's favor and held that under state law, several theories existed that could create a fiduciary duty, including the possibility that the contract itself created an express fiduciary duty.

*Id.* at 829.  Similarly here, the Agreements themselves could create a fiduciary duty and state law provides a basis for imposing fiduciary duties on Citco N.V.  Alternatively, or in addition, the jury could find that Citco N.V.'s acts created a fiduciary relationship.  At the motion to dismiss stage it is too early to foreclose the jury's options.

The allegations of the Complaint, which must  be taken as true, establish that Citco N.V. owed a fiduciary duty to the Funds under the standard discussed above.  The Receiver specifically alleges the following "special circumstances" evidencing the existence of an implied fiduciary duty between the Funds and Citco N.V.: (i) Citco N.V. volunteered to assist Lauer in restructuring the Funds' holdings; (ii) Citco N.V. controlled its employees who served as directors of the Funds, and thus directly influenced the Funds' management, activities, and direction; and (iii) Citco N.V. received greater economic benefit than is typical for similar arms-length relationships, namely direct payment tied to the inflated NAV of the Funds.  Compl. ¶¶ 125-137, 140-146, 453-75.  These factors, many of which were not pled in the prior Complaint, meet all of the criteria specified in *Capital Bank*.

Both the Funds and the investors reposed special trust in Citco N.V. to serve both of their interests honestly and forthrightly.[10]  Citco N.V. had contractual obligations to value the Funds' NAVs and provide specific administrative functions.  Exs. J, K, L.  But Citco N.V.'s actual immersion in the management and direction of the Funds went well beyond these specific contractual duties.  As the Receiver pleads, Citco N.V. not only appointed directors to the Funds' boards, but then controlled the votes and decisions of these directors and received payment directly for their service.  Compl. ¶¶ 83, 91, 177.  Citco N.V. also provided direct advice and suggestions to Lauer about the allocation of the Funds' assets.  *Id*. at ¶ 136.  None of these

---

[10] The Receiver cannot overstate the crucial role of Citco N.V. in valuing the Funds' NAVs and distributing those valuations to investors.  Citco N.V.'s role was analogous to that of an appraiser of property who, although contracted to perform a service for one party to a transaction, is the repository of special trust and confidence by all parties to the proposed transaction who have agreed to be bound by the appraiser's valuation.  *See Guildhall Insur. Co. Ltd. v. O'Boyle*, 688 F.Supp. 910, 914-15 (S.D.N.Y. 1988).  An appraiser retained by one party to provide a valuation that it knows will be relied upon by third parties owes a fiduciary duty to those who will rely on the valuation as well as the general public.  *See id.*; *see also Estate of Halas*, 94 T.C. 570, 578 (U.S. Tax Ct. 1990).  Citco N.V.'s position is similar to that of an appraiser.  Citco N.V. did more than serve as a mere administrative service provider to the Funds.  It supervised and controlled the entire valuation process for the Funds, from the board of directors down, and provided the resulting valuations to the Funds' investors, who Citco N.V. knew would rely on such valuations.

functions were set forth in the Agreements.  They were all duties that, as the Receiver alleges,
went beyond the functions of a typical hedge fund administrator.  *Id.* at ¶¶ 125-136, 140-46, 453-
475.  As in *Capital Bank*, these duties established a "special relationship" sufficient to impose
fiduciary duties on Citco N.V.[11]

Citco N.V. conducted itself in such a way as to acknowledge this special trust.  It not only
provided administrative services to the Funds, but also took an active role in evaluating the
Funds' valuation techniques by suggesting ways to restructure the Funds' holdings and
exercising control over the Funds through its appointed conflicted directors.  *Id.*  As
compensation for this special role of trust, Citco N.V. received extraordinary compensation
calculated as a percentage of the Funds' stated NAV, rather than mere fees.  These facts as
alleged by the Receiver adequately state the existence of an implied fiduciary duty between the
Funds and Citco N.V.  *See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs Ltd.*, 2003 WL
21263544, *4 (S.D.N.Y. June 2, 2003) (finding that fund administrator owed fiduciary duty
where it had performed services "beyond ministerial functions"); *Carson v. Lynch Multimedia
Corp.*, 123 F. Supp. 2d 1254, 1259 (D. Kan. 2000) (fiduciary duty imputed to an individual who
influenced or controlled majority of board of managers of a company).

*Carson* is particularly instructive in this regard.  In *Carson*, plaintiffs brought a derivative
suit against the defendants, which included three managers who served on a five member Board
of Managers that managed the company that was allegedly injured (CLR); the company that had
a contractual right to appoint the three managers (Lynch Multimedia); the parent company of
Lynch Multimedia, which also employed the three managers (Lynch Interactive); and the
Chairman of the Board and CEO of Lynch Interactive (Mr. Gabelli).  *Carson*, 123 F. Supp. 2d at
1257, 1262.  The court denied each defendants' motion to dismiss plaintiffs' claim for breach of
fiduciary duty, and with respect to Mr. Gabelli pointed to plaintiffs' allegations that Mr. Gabelli
"held a 'position of influence' over the three directors appointed by Lynch Multimedia"; the
directors "acted 'at the behest of Mr. Gabelli' and Mr. Gabelli occupied a 'position of influence
over the Managers'"; and "all three directors are employees of Lynch Interactive and that Mr.

---

[11] These allegations are also more specific than those in the prior Complaint and cure the defects found by
this Court in the prior Order.

Gabelli is Chairman of the Board and Chief Executive Officer of Lynch Interactive." *Id.* at 1257-58. The court then held:

> If, as the complaint alleges, Mr. Gabelli influenced or controlled
> the majority of the board of managers then Mr. Gabelli may well
> have exercised influence over or control of CLR. For this reason,
> the trust and confidence placed in the managers and the duty of the
> managers to act solely for the benefit of CLR might be imputed to
> Mr. Gabelli. If the majority of the board was simply the alter ego
> of Mr. Gabelli, Mr. Gabelli should not be able to hide behind the
> board managers and claim that the managers alone, and not Mr.
> Gabelli, owed the fiduciary duty.

*Id.* at 1259.

Here, the Receiver has alleged facts sufficient to claim that Citco N.V. influenced and controlled the Funds' Directors and that the Directors' fiduciary duty should be imputed to Citco N.V. As in *Carson,* Citco N.V. had the contractual right to appoint the Funds' directors in exchange for a fee, and the Receiver alleges that the Director Defendants always acted at the behest of Citco N.V., which controlled all of their actions taken on the Funds' boards. Compl. ¶¶ 83, 91, 177. Indeed, the Receiver's position against Citco N.V. is even more conservative than the position taken by the plaintiffs against the CEO of the parent company that owned the company that appointed the directors in *Carson*.[12]

Finally, the economic loss rule does not apply because in addition to claims arising under the contracts between the Funds and Citco N.V., the Receiver alleges fiduciary duties that are outside the scope of the Agreements. Indeed, "[t]he economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying contract." *Invo. Fla., Inc. v. Somerset Venturer, Inc.,* 751 So. 2d 1263, 1267 (Fla. 3d DCA 2000) (reversing summary judgment that was granted based on economic loss rule); *Stateline Power Corp. v. Kremer,* 404 F. Supp. 2d 1373, 1377 (S.D. Fla. 2000) (denying motion to dismiss breach of fiduciary duty

---

[12] Under the Sarbanes-Oxley Act, attorneys who advise public firms or who assist in preparing publicly filed statements are required to "report up the ladder" when they discover material violations of law. This reporting includes notifying executives and, if no appropriate response is taken, independent board members. *See* Attorney Conduct Rule, 17 C.F.R. pt. 205. The fiduciary duty of disclosure that Citco owed to the Funds applies the same principles – Citco was required to notify the investors, the independent directors and/or authorities of the serious wrongdoing that it and others committed; instead, it chose to hide this information and avoid an immediate investigation.

claim based on economic loss rule because fiduciary duties arose from employment status and were not all specifically delineated in the contract); *Hilliard v. Black,* 125 F. Supp. 2d 1071, 1079-80 (N.D. Fla. 2000) (denying motion to dismiss breach of fiduciary duty claim based on economic loss rule because of allegations defendants acted intentionally and independent from contractual breach).

The Receiver pleads that Citco N.V. had a special relationship to the Funds based on its participation in activities not required under the Agreements.  The Receiver alleges that representatives of all of the Citco entities actively communicated with the Funds' investment manager regarding the proper allocation of assets and investments.  For example, Edward Heidema, a Citco N.V. employee, suggested restructuring the Funds' portfolio, and Citco N.V. representatives even advised Lauer to disinvest from specific assets.  Compl. at ¶¶ 135-36. These acts were not contemplated under the Agreements and create the "special relationship" that gives rise to independent duties.

Similarly, the Receiver pleads that Citco N.V. exercised control over the actions and inactions of the Director Defendants, thereby influencing and controlling the management of the Funds.  *Id.* at ¶¶ 9, 12, 91, 140.  While the Agreements allowed Citco N.V. to appoint directors, acts beyond the actual appointment—for example, the exercise of control over them and, by extension, over the management of the Funds—create the type of "special relationship" that raises independent duties outside of the contract.  As with the undertaking of advice, these are acts not contemplated under the Agreements and for which, therefore, the parties had never allocated a cost or delineated through their bargain, the damages for a breach.

The economic loss rule bars tort claims for economic losses arising from the performance or non-performance of the Agreements.  The rule, however, does not bar the Receiver's tort claims (breach of fiduciary duties and gross negligence) for Citco N.V.'s acts that are "independent from the acts that breached the contract."  *Indemnity Insurance*, 891 So. 2d at 536. This is what the Receiver pleads, and his counts for Citco N.V.'s breach of fiduciary duties and gross negligence are, thus, not barred by the economic loss rule at the pleading stage.[13]

---

[13] Whether the economic loss rule applies is typically an issue of fact not subject to determination at this stage.  *See, e.g., PNC Bank v. Colonial Bank, N.A.,* 2008 WL 4790122, *4 (M.D. Fla. Nov. 3, 2008) (bank's short and plain statement of breach of fiduciary duty claim against another bank relating to construction loan survived economic loss rule on motion to dismiss because to the "extent that contractual

### D.    The Receiver States a Claim for Aiding and Abetting Breach Of Fiduciary Duty Against Citco N.V.[14]

A claim for aiding and abetting a breach of fiduciary duty requires (1) a fiduciary duty on the part of the wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abetter; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoer.  *See AmeriFirst Bank v. Bomar,* 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). The Receiver pleads all of these elements.

First, as the Court has held, the Director Defendants owed common law fiduciary  duties to the Funds,[15] which include the duty of care, duty of loyalty, duty of disclosure, duty to act in good faith, duty to act with the care of an ordinarily prudent person under similar circumstances, and duty to act in the best interests of the Funds.

Citco N.V. asserts that the Receiver's claims against it for aiding and abetting breach of fiduciary duty should be dismissed because the Receiver fails to allege that Citco N.V. provided "substantial assistance" to either the Director Defendants or Lauer in committing their breaches of fiduciary duty.  Specifically, Citco N.V. asserts that the Receiver fails to allege conscious "substantial assistance" by Citco N.V. and/or a specific duty to disclose on behalf of Citco N.V. that might expose it to liability for recklessly failing to discover and disclose the Director Defendants' and Lauer's breaches of fiduciary duty.

To satisfy the substantial assistance element, the plaintiff must allege (1) recklessness and a duty to disclose and/or (2) conscious intent.  *Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1010 (11th Cir. 1985).  The Receiver pleads both.  As discussed in detail below,[16] the

---

provisions might stand as a defense to these claims, those defenses are preserved for litigation and or resolution on summary judgment"); *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.,* 842 So. 2d 204, 208 (3d DCA 2003) (denying motion to dismiss breach of fiduciary duty claim based on economic loss rule because factually intensive nature of implied fiduciary relationship was distinct and independent from contractual duties).

[14] The Court had held that the Receiver has stated claims for aiding and abetting breach of fiduciary duty against the Director Defendants, and they do not challenge that claim as pled in the Complaint.  [DE 100 at 12-15.]

[15] [DE 100 at 9-10.]

[16] *See, infra,* at 14-16.

- 12 -

Receiver has alleged sufficient facts to establish that Citco N.V. owed the Funds a duty to disclose the inflated NAVs.  The Receiver further alleges that Citco N.V. was reckless (at a bare minimum) by knowingly disseminating these baseless statements.  Compl. ¶¶ 207, 257, 260. Accordingly, Citco N.V. provided "substantial assistance" to the Director Defendants and Lauer by recklessly breaching its affirmative duty to disclose valuation issues to the Funds and their investors.  *See, e.g., id.* ¶ 210.

The Receiver also pleads Citco N.V.'s conscious intent to aid in Lauer and the Director Defendants' wrongdoing.  Conscious intent can be inferred if a transaction is atypical or lacks business justification.  Here, the Receiver pleads that Citco N.V. selected their own high level employees (Conroy and Quilligan) and The Citco Group's employee (Stocks) and alter ego (ICS) to serve as the Funds' directors for a fee; controlled their decisions; disseminated falsely inflated NAVs provided by Lauer as approved by their hand-picked Director Defendants; had a profit motive to disseminate grossly inflated NAVs, but never disclosed the conflict; devised an exit strategy for all Defendants without disclosing the excessive valuations to the investors, Independent Directors, or appropriate authorities; and knowingly collected inflated administrative fees based on their misconduct in collaboration with Lauer, The Citco Group, and Citco USA.  *Id.* ¶¶ 83, 91, 125-136, 453-475.  Further, Citco N.V. ignored the eight highly specific red flags, all of which show the transactions engaged in by Lauer were atypical and lacked business justification.  *Id.* ¶¶ 189-198; *Smith v. First Union Nat'l Bank,* 2002 WL 31056104, *3-4 (S.D. Fla. Aug. 23, 2002) (knowledge of atypical activities creates issue of fact relating to substantial assistance element).  Because the Receiver pleads facts showing an atypical transaction sufficient to establish "conscious intent," he has sufficiently alleged that Citco N.V. provided "substantial assistance" for Lauer and the Director Defendants' fiduciary breaches.   Therefore, the Complaint states a claim against Citco N.V. for aiding and abetting the Director Defendants' and Lauer's breaches of fiduciary duty.

> **E.**     **The Receiver States a Claim for Gross Negligence Against Citco N.V.**[17]

The Receiver pleads sufficient facts to establish a plausibility that Citco N.V. owed duties of care to the Funds separate and distinct from its contractual obligations; they breached these

---

[17] This Court has held that the Receiver states a claim for gross negligence against the Director Defendants, and they do not challenge this claim as pled in the Complaint.  [DE 100 at 9-10.]

duties; and the Funds were injured by Citco N.V.'s reckless, wanton, and willful breaches, resulting in damages. *Miles v. Naval Aviation Museum Found, Inc.,* 289 F.3d 715, 722 (11th Cir. 2002) (stating elements of gross negligence claim); *see Ryan v. Bryant,* 417 So. 2d 658, 670 (Fla. 1982). The Receiver pleads specific duties that are outside the Agreements. First, he alleges that Citco N.V. owed a duty of care because it directed and influenced the management and operations of the Funds by controlling the Directors. Second, he alleges that Citco N.V. owed a duty to disclose because it voluntarily disseminated false valuations. These specific allegations cure any prior pleading deficiency and suffice to state a claim for gross negligence.

### 1.      Duty of Care

Citco N.V. had a contractual right to appoint directors. It did not, however, have a contractual right or obligation to manage and control the actions of these Directors –or to instruct the directors to control the Funds. Yet Citco N.V. appointed conflicted employees who would protect its interests, and then controlled the decisions and actions of these Directors and even suggested changes in the Funds' valuation techniques. Compl. ¶¶ 147, 151, 300, 345, 387. The economic loss rule does not apply because the Agreements are silent about these duties. Nothing in the contracts even addresses, much less allows, the control Citco N.V. exercised over the Directors or its role in the management or investment decisions. Once Citco N.V. immersed itself directly in the management of the Funds through its control of the Directors, it owed a duty of care to ensure that its actions did not harm the Funds. *See Carson*, 123 F. Supp. 2d at 1259 (duty could be imputed to an individual who influenced or controlled the majority of the board of managers of a company). In other words, Citco N.V. stepped into the shoes of the directors it controlled and thereby assumed a direct duty of care to the Funds. *Id*. As the Receiver pleads, Citco N.V. breached this duty recklessly and wantonly by ensuring that the Directors signed off on false valuations, did not question Lauer, and protected Citco N.V.'s excessive fees. *See, e.g.,* Compl. at ¶¶ 178, 284. These allegations suffice to state a claim for gross negligence separate and distinct from the contractual obligations.

### 2.      Duty To Disclose

In addition, Citco N.V. owed the Funds an independent duty to disclose, which it recklessly and wantonly breached. As the Eleventh Circuit explained in *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1043 (11th Circ. 1986), a duty to disclose may "be created by a defendant's previous decision to speak voluntarily. Where a defendant's failure to speak would

- 14 -

render its *own* prior speech misleading or deceptive, a duty to disclose arises." Here, a duty to disclose exists because Citco N.V. elected to "speak voluntarily" by issuing thousands of NAV statements to Lancer personnel, the Funds' management, and the investors.[18] *See, e.g.,* Compl. ¶ 31. This duty is independent from its contractual duties to price and compute the value of the Funds because the Agreements did not require Citco N.V. to disseminate the NAVs.[19] Exs. J, K, L. Because Citco N.V. was aware of the Funds' inflated valuations, its failure to speak accurately rendered its own prior speech concerning the Funds' values misleading and deceptive. *Id.* ¶¶ 119-20. As the Receiver pleads, Citco N.V. thus owed the Funds a duty to disclose the inflated valuations to the Independent Directors, the appropriate authorities, and the investors. Compl., ¶¶ 119, 441. Citco N.V. breached this independent duty, causing damage to the Funds. *Id.* at ¶¶ 18, 137, 142, 452, 467, 476. Combine this duty with the underlying financial incentive to increase their own fees, and it is readily apparent that the Receiver has pled all of the elements of a claim for gross negligence. *See Miles,* 289 F.3d at 722.

The economic loss rule does not apply to the duty to disclose because this duty is not specifically delineated in the Agreements. The economic loss rule bars tort claims arising under a contract when parties are in privity. *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The main purpose of the rule "is to protect the integrity of the contract…and thereby to prevent contract law and warranty law from drowning in the sea of tort." *Id.* at 544 (J. Cantero concurring) (internal citation omitted). Essentially, the rule enforces the bargain between contracting parties by ensuring that the aggrieved party does not recover damages beyond those for which it bargained. 891 So. 2d at 536. The economic loss rule, however, does not limit damages—and does not apply—where the offending party acts outside the scope of the contract. Indeed, in *Indemnity Insurance*, the Florida Supreme Court "expressly limited" the economic loss rule and recognized exceptions to the rule, including finding that "where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *Id.* at 536. Such acts outside of the

---

[18] Citco N.V. also chose to speak voluntarily through the improper control and influence over its employees who were appointed to the Funds' Boards and who had a fiduciary duty, which can be imputed to Citco N.V., to disclose malfeasance to protect the Funds.

[19] None of the Agreements require Citco N.V. to disseminate NAVs to the Funds and the investors, as explained below at 16.

contract create new duties and obligations not contemplated under the contract for which the parties have not allocated an economic price.

The Agreements here require Citco N.V. to maintain the Funds' banking and corporate records, serve as the Funds' transfer agent and registrar, convene shareholder and board meetings, distribute annual reports to shareholders, respond to inquiries "from time to time," prepare the Funds' books and records, compute the monthly NAV, independently price the Funds, maintain corporate records, communicate with the general public, and provide directors. Exs. J, K, L, § 1.1(a)-(m).  There is no contractual obligation with the Funds to disseminate the NAVs.  Once Citco N.V. undertook this additional obligation by promulgating the NAVs, it had an obligation to speak accurately—to correct what it knew to be inflated and false NAVs. Compl. ¶ 31.  Once it started disseminating the grossly inflated NAVs, Citco N.V. also had a duty to disclose its conflict of interest created by appointing and controlling the Director Defendants who had the incentive to ignore the inflated valuations, thereby increasing the fees paid to Citco N.V.  The economic loss rule does not apply because the Agreements do not impose a duty to disclose on Citco N.V., which acted outside the scope of the contract when it disseminated the false NAVs.[20]  The Receiver has sufficiently pled a negligence claim and is entitled to conduct discovery on Citco N.V.'s extra-contractual duty to disclose, as its existence "is ultimately a question of fact." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2009 WL 901500, *16 (S.D. Fla. Mar. 30, 2009).

F.   <u>The Receiver States A Claim for Professional Malpractice</u>

This Court previously dismissed the Receiver's professional malpractice claim against all Defendants, holding that a "claim for professional malpractice cannot be brought against [Defendants] where there are no allegations that fund administrators are required to obtain a four-year degree for licensing in Florida."  [DE 98 at 5].  The Receiver, however, respectfully submits that this ruling, along with Citco N.V. and the Director Defendants' similar argument, is based on an unnecessarily broad misreading of Florida law.  The Florida Supreme Court has

---

[20] Citco N.V. ignores the allegations of the Complaint and instead cites the contractual duties included in the gross negligence count, which apply only to Citco USA and The Citco Group, as clarified by paragraph 121 of the Complaint.  The economic loss rule does not apply to these entities pursuant to a direct liability theory since they were not in privity with the Funds.

made clear that the requirement of a four-year degree relates *only* to the application of the two-year statute of limitations for professional malpractice, not to any other purpose:

> It is not our intent that this definition be applied to any other reference to "professionals" or "professions" elsewhere in the Florida statutes, regulations, or rules, or in court cases that deal with issues *other than the statute of limitations* at issue here.  We recognize that there may be occasions when courts, legislators, rulemaking authorities, and others may use the terms "profession" and "professional" more broadly or more narrowly than we do here today.

*Garden v. Frier*, 602 So. 2d 1273, 1277 (Fla. 1992) (emphasis added).  In fact, Florida cases that discuss the four-year degree requirement limit their analysis to the statute of limitations, and do not discuss the application to the actual claim.  *See also Moransias v. Heathman*, 744 So. 2d 973, 976 (Fla. 1999) (stating that a profession, *within the meaning of section 95.11*, is 'any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida.'") (emphasis added); *Pierce v. AALL Ins. Co.*, 531 So. 2d 84, 87 (Fla. 1988) (dealing solely with the affirmative defense of statute of limitations).[21]

Florida Statutes § 95.11 provides a  two-year limit to bring claims for professional malpractice, as opposed to the usual four year limitation for other torts.[22]  "Profession," for purposes of providing this limited protection, was narrowly defined by the Florida Supreme Court to mean "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." See *Garden*, 602 So. at 1275.  This limitation  does not mean that people in other professions, ones for which a license may not be required, are not subject to professional standards.[23]  Indeed, at no point has the Florida Supreme Court discussed whether other

---

[21] This Court has previously held that a four-year degree is required to maintain a malpractice claim.  *See Bruhl v. Price Waterhousecoopers Int'l*, 2007 U.S. Dist. LEXIS 21955 (S.D. Fla. Mar. 27, 2007); *see also Maliner v. Wachovia Bank, NA,* 2005 WL 670293, *9 (S.D. Fla. Mar. 1, 2005) (noting that a professional malpractice claim requires a four-year degree).  As explained above, the Receiver maintains that these holdings are unnecessarily broad.

[22] Fla. Stat. §95.11(3)(a) & (4)(a).

[23] The Florida Supreme Court has noted that the Florida "legislature with express knowledge of its membership had neglected to define the term 'professional' for purposes of the professional malpractice statute. Indeed, one legislator told other members that the question was being left for the judiciary to decide because a precise definition might hurt some people's feelings."  *Garden v. Frier*, 602 So. 2d 1273, 1275 (Fla. 1992).  Therefore, while creating a judicial interpretation of "professional" for purposes of this

individuals or firms, whose work does not require a four-year degree, may be defined as "professionals" and maintain claims for malpractice subject to the standard tort statute of limitations.

Administering a fund requires a great deal of professional experience and training. The Complaint specifically alleges that Citco N.V. and the Director Defendants assumed the duty of performing the accounting and management services necessary for the administration of the Funds. Compl. ¶¶ 134, 464. Accounting has been found to be a profession under Florida law. *Peat v. Lane*, 565 So. 2d 1323, 1325 (Fla. 1990) (stating that "[a]ccounting is a profession"). Since the Defendants were required to perform tasks above and beyond accounting, the Receiver has alleged enough facts to show on a motion to dismiss that the Citco Defendants were professionals, and as such should be held to higher professional standards.[24] Indeed, the Defendants have not stated that key persons assigned to the Lancer accounts as well as the Directors did <u>not</u> have four year degrees. That remains for discovery, as does Citco N.V.'s criteria for its employees assigned to administer Funds like the Offshore Funds.

### G. The Receiver Alleges Respondeat Superior Liability for Citco N.V.

The Receiver alleges that Citco N.V. is liable for its employees and agents' (including Directors Conroy and Quilligan) tortious acts (their breach of fiduciary duties, aiding and abetting breach of fiduciary duty, gross negligence, and professional malpractice)[25] under the

---

specific statute, the court has been reticent to expand its definition beyond the statute of limitations. *Id.* at 1277.

[24] Citco Group and Citco USA argue that the "Receiver fails to allege the contractual relationship or level of privity required for a professional malpractice claim." Citco Group/USA Mem. at 7-8. Yet Defendants cite no authority for their contention that privity is a required element at the pleading stage of litigation. The only authority for such a contention is the same statute that Florida courts have held only to apply to the limited context of the statute of limitations on professional malpractice claims. Fla. Stat. § 95.11, *See also J.B. v. Sacred Heart Hospital of Pensacola*, 996 F.2d 276, 278 (11th Cir. 1993) (discussing the privity requirement in the specific context of Fla. Stat. § 95.11, the statute of limitations for professional malpractice claims). The Florida Supreme Court has held that privity is not required for a professional malpractice claim and that "privity" as employed in Fla. Stat. § 95.11 does not foreclose claims for professional malpractice where the parties are not in privity. *See Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, Inc.*, 581 So. 2d 1301, 1303 (Fla. 1991) (citing *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990)).

[25] Citco N.V. incorrectly asserts that the Receiver solely attempts to impose respondeat superior liability for the breach of fiduciary duty claim. Rather, the Receiver is asserting this theory as a basis for liability for all misconduct committed by Conroy and Quilligan, both as directors of the Funds' boards and (often

- 18 -

doctrine of respondeat superior.  An employer may be liable for the tortious acts of its employees if  "the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer."  *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1271 (11th Cir. 2009) (citations omitted).  "Under Florida law, an action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment."  *Id.*  The Receiver has sufficiently pled each of these elements in his Complaint.

The Receiver alleges that Directors Conroy and Quilligan were acting within the scope of their employment with Citco N.V. when they served on the boards of the Funds.  Compl.¶ 172. They were Managing Directors of Citco N.V. at the same time that they sat on the Funds' boards (*id. ¶¶* 24, 25) and Citco N.V. directed and controlled their votes on board resolutions and their approval of Lauer's inflated valuations.  *Id.* at ¶ 173.  Significantly, the fees for their services as board members were paid to the employer (Citco N.V.), not to Conroy and Quilligan themselves. *Id*. at ¶ 175.  Unlike typical directors, whose service on a board is independent of their employment, Directors Conroy and Quilligan were always acting under the direction of Citco N.V., performing acts and making decisions suggested by Citco N.V., and serving "the employment" with Citco N.V.  *Id*. at ¶¶ 172-75.  Consequently, their tortious conduct while on the Funds' Boards was undertaken within the scope of their employment.  Indeed, Keunan, the Director of Fund Services for The Citco Group and an officer of Citco USA, referred to the Director Defendants as "[o]ur personal directors."  *Id*. at ¶ 268.

---

simultaneously) as Citco N.V.'s agents.  *See, e.g.,* Compl. ¶¶ 132, 134, 136, 170, 172-75, 266-283, 291-334, 403-31, 440-99, 529-32.  Those acts included continuing to disseminate false NAV statements, actively concealing the Funds' inflated valuations from the investors, mismanaging the Funds, failing to perform reasonable due diligence, failing to disclose Lauer's wrongdoing, not resigning from the Funds' boards until Citco N.V.'s liability had become clear, failing to reject or forbid Lauer's valuation policy, actively mismanaging the Funds' business and affairs, not disclosing their conflict of interest in the inflated NAVs, increasing their employers' fees, and failing to replace Lauer as investment manager.  *See, e.g.,* Compl. ¶¶ 206, 213, 442, 467, 490, 505, 519, 531.  The breach of fiduciary duties, aiding and abetting breach of fiduciary duty, gross negligence, and professional malpractice of Defendants Conroy and Quilligan were undertaken while they acted within the scope and course of their employment with Citco N.V. and served Citco N.V.'s interest to maximize its administrative fees.  *See, e.g.,* Compl. ¶¶ 132, 134, 136, 170, 172-75, 266-283, 291-334, 403-31, 440-99, 529-32.

Additionally, the Receiver alleges that the tortious acts of Directors Conroy and Quilligan—their failure to challenge Lauer's fraudulent valuations, their acquiescence in the fraud, their misrepresentations, their failure to disclose—furthered the purposes and interests of Citco N.V. As the Receiver pleads, Citco N.V. stood to gain excess fees if the NAVs were inflated. *Id.* ¶¶ 8, 10, 132, 172. Citco N.V. therefore ensured that its employees acquiesced in and/or approved of Lauer's bogus overstated valuations. *Id.* ¶¶ 8-12, 14, 173. This is not a case where a company simply appoints its employees to sit on a board of directors. Instead, as the Receiver pleads, Citco N.V. appointed its employees to the Funds' boards so they could "control the Funds' management and ensure that Citco's administrative fees would be maximized." *Id.* at ¶ 132. That active control furthered Citco N.V.'s financial interests. *Id.* at ¶¶ 8, 19.

*United Technologies* is instructive. In that case, which was decided after *Twombly*, the Eleventh Circuit held that the complaint sufficiently alleged respondeat superior liability by linking the allegations against the corporation to the actions of its president. 556 F.3d at 1271-72. The Court relied on allegations that the individual was acting as the president of the company and within the scope of his employment when he committed the tortious acts at issue, and that at all times he was president and a substantial owner of the company and entirely responsible for its daily operations. *Id.* at 1272. Finally, the complaint alleged that the president gave instructions to other corporate employees relating to making copies of the allegedly stolen blueprints and shipping and storing the blueprints. The appellate court even excused the plaintiff's failure to allege the three elements required for finding that the president's actions were completed within the scope of employment because the allegations "generate[d] an inference of these elements sufficient for notice pleading and to withstand a Rule 12(b)(6) motion to dismiss." *Id.* The Receiver's allegations against Citco N.V.—for example, its active and continuous control over Conroy and Quilligan's votes, its acquiescence or approval of the valuation decisions through its control of its employees' decisions, and its continuous promulgation of false NAVs to inflate its own fees secured in large part through the action and inaction, as well as the concealment by their employees on the boards—far exceed those found sufficient by the Eleventh Circuit.

Accordingly, the Receiver has pled extensive facts that "when read together, at least arguably allege:" (1) that Conroy and Quilligan's participation in and recognition of Lauer's absurd valuations so their employer could benefit and their concocting an exit strategy for Citco

N.V., among other things, "could reasonably have been the kind of task for which [they were] employed;" (2) that Conroy and Quilligan acted within the time and space constraints of their employment –that they acted while on duty at Citco N.V.; and (3) that Conroy and Quilligan "could reasonably have been acting to serve and benefit [Citco N.V.'s] business." *United Technologies*, 556 F.3d at 1272.   After all, these directors of the fund were acting at all times as employees of Citco when they served on the Funds. Under *United Technologies*, the Receiver's allegations are "enough to raise a right to relief above the speculative level" at the pleading stage to state a claim for respondeat superior liability against Citco N.V. for the breaches of legal, professional, and fiduciary duties committed by its employees, Conroy and Quilligan.[26]

This Court dismissed the First Amended Complaint because "nowhere [did] the Complaint allege that the Director Defendants were acting in their capacity as employees of [Citco N.V.] while committing the purported breaches of duty." [DE 100  at 10.]  The Court also observed that "[t]he Receiver's assertion, that because (Citco N.V.) provided the Director Defendants to the Funds it is liable under the doctrine of respondeat superior, is a mere legal conclusion." *Id.*  The Receiver, however, has cured any such pleading defect.  Rather than rely on the bare conclusion that Citco N.V. appointed Directors Conroy and Quilligan to the Funds' Boards, he has pled extensively how Citco N.V. was paid directly by the Funds for the services of these Directors; how it controlled all its employees' actions, inactions and votes while these Citco N.V. agents served as directors of the Funds; how these employees voted and made decisions to further the interests of Citco N.V.; and how they approved and acquiesced in Lauer's inflated values as well as participated in every aspect of the Funds' administration, all at the benefit and at the behest of their employer Citco N.V., who as a result received inflated fees. *See, e.g.*, Compl. ¶¶ 8-13, 132, 134, 136, 170, 172-75, 266-283, 291-334, 403-31, 440-99, 529-32.  These and the many other allegations of control cure any pleading defect and suffice to state a claim against Citco N.V. under the doctrine of respondeat superior.[27]

---

[26] Whether Conroy and Quilligan in fact acted in the scope of their employment is an issue of fact, which is "why we have discovery," as explained by the Eleventh Circuit.  *Id.*  As analyzed above, the Receiver has pled facts that demonstrate a plausibility that Citco N.V. "could reasonably be answerable for its employees' illegal or tortious conduct in carrying out" its task to independently value the Funds' holdings.  *Id.*

[27] The cases cited by Citco N.V. are distinguishable and support allowing the Receiver to plead a respondeat superior claim.  Unlike the plaintiffs in *In re Global Crossing Ltd. Secs, Litig.,* 2005 WL 1881514

## H.    The Receiver Sufficiently Alleges ERISA Violations[28]

The Complaint satisfies the *Twombly* plausibility test to plead facts that Citco N.V. and the Director Defendants[29] are ERISA fiduciaries because they exercised authority and control over ERISA plan assets and received compensation for investment advice rendered to Offshore. Compl. ¶¶ 31, 206, 210-211, 277-278, 293-294.  A person is an ERISA fiduciary to the extent that such person (i) exercises discretionary authority or discretionary control regarding management of a plan or exercises authority or control regarding the management or disposition of plan assets, (ii) renders investment advice for a fee or other compensation or has authority or responsibility to render investment advice, or (iii) has discretionary authority or responsibility for plan administration.  29 U.S.C. § 1002(21)(A).  With respect to this definition, the Department of Labor Regulations deem a person as rendering investment advice if: (i) such person renders advice as to the value of securities or makes recommendations regarding particular investments, and (ii) such person, either solely or with an affiliate,[30] has discretionary authority or control regarding investments, or regularly renders individualized advice pursuant to a mutual agreement.  29 C.F.R. § 2510.3-21(c)(1).  ERISA fiduciary status, therefore, turns on an analysis of the particular activity at issue.  *Cotton v. Mass. Mutual Life Insurance Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).[31]

---

(S.D.N.Y. Aug. 5, 2005), the Receiver alleges not only that Citco N.V. appointed directors to the Funds' Boards, but also pleads "concrete facts" showing "how control was actually exercised," as set forth above. Also *United States v. Bestfoods,* 524 U.S. 51, 69 (1998) did not analyze respondeat superior liability and involved directors who sat on the board of a fully-owned subsidiary, not on a client's board. *Bavaria Int'l Aircraft Leasing GMBH v. Clayton Dubilier & Rice, Inc.,* 2003 WL 21767739, *3 (S.D.N.Y. July 30, 2003) does not apply because it did not involve employees serving on the boards of a client, and the subject complaint also failed to provide any factual predicate that the employee was acting as the parent's agent, whereas the Receiver alleges Conroy and Quiligan acted on behalf of Citco N.V. when they breached their duties of care to the Funds.

[28] This Court has held that the Receiver pleads that Offshore is subject to ERISA [DE 100 at 16.]

[29] The court has previously held that the Receiver alleged sufficient facts to plead that the Director Defendants were ERISA fiduciaries and the Director Defendants breached their ERISA fiduciary duties with respect to Offshore's ERISA plan assets.  [DE 100 at 21-22.]

[30] "Affiliate" includes commonly controlled entities and any officers, directors, or employees of such entities.  29 C.F.R. § 2510.3-21(e).

[31] An ERISA fiduciary has the same common-law duties of a fiduciary, for example, the common law duty of loyalty, but the standard for ERISA fiduciaries is even stricter in certain respects than a common

1.      **Citco N.V. Is An ERISA Fiduciary**

Citco N.V. is an ERISA fiduciary because it (a) rendered investment advice with respect to Offshore's ERISA plan assets for a fee and (b) was an affiliate, as defined below, of Director Defendants ICS, Conroy and Quilligan who had discretionary authority and control with respect to purchasing or selling Offshore's ERISA plan assets.  29 U.S.C. § 1002(21)(A)(ii) and 29 C.F.R. § 2510.3-21(c)(1)(i).  Department of Labor Regulations deem a person as rendering investment advice, for purposes of establishing such person's fiduciary status, if the person (i) renders advice to an ERISA plan as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property, and (ii) directly or indirectly through an affiliate has discretionary authority or control, whether or not pursuant to agreement, arrangement, or understanding, with respect to purchasing or selling securities or other property for the ERISA plan.  29 C.F.R. § 2510.3-21(c)(1).

Citco N.V. had a contractual obligation to compute the monthly NAV for which it received a substantial annual fee from Offshore.  Compl. ¶¶ 96-99, 352, 360, 380.  This establishes that Citco N.V. "render[ed] advice to an ERISA plan as to the value of securities" to satisfy the first element of the fiduciary analysis.  29 C.F.R. § 2510.3-21(c)(1).

The Receiver also pleads that Directors Conroy and Quilligan were "affiliates" under ERISA.  The Department of Labor Regulations define an "affiliate" of a person as "(i) any person directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with such person; (ii) any officer, director, partner, employee or relative (as defined is section 3(15) of [ERISA]) of such person; and (iii) any corporation or partnership of which such person is an officer, director or partner."  29 C.F.R. § 2510.3-21(e)(1).  For purposes of this section, the regulations further provide that "the term 'control' means the power to exercise a controlling influence over the management or policies of a person other than an individual." 29 C.F.R. § 2510.3-21(e)(2).  Director Defendants Conroy and Quilligan were employees and managing directors of Citco N.V. and therefore they were affiliates of Citco N.V.

---

law fiduciary.  *See, e.g., In re Bicoastal*, 169 B.R. 445, 449 (Bankr. M.D. Fla. 1994) ("ERISA principles hold fiduciaries to a more exacting standard than common law of trusts standards."); *Martin v. Walton*, 773 F. Supp. 1524, 1527 (S.D. Fla. 1991) ("In enacting ERISA, Congress federalized the common law of trusts and made even more exacting the principles there developed as they relate to employee benefit plans.").  The Receiver has alleged both common law fiduciary duties and liability under ERISA.

Compl. ¶ 300.  Director Defendant ICS was under common control with Citco N.V. (both are subsidiaries of The Citco Group) and was therefore also an affiliate of Citco N.V.  *Id*. ¶¶ 41-42, 49, 293-294, 300-301, 338-340 (describing Director Defendants' functions with respect to Citco N.V. and the other entities within its controlled group).  Inasmuch as Citco N.V. rendered investment advice to Offshore's ERISA plan investors with respect to the value of Offshore's ERISA plan assets and, through its affiliates, the Director Defendants, had discretionary authority and control with respect to investing and purchasing or selling Offshore's ERISA plan assets,[32] Citco N.V. is a fiduciary within the meaning of the aforementioned Department of Labor Regulation.

Like the Director Defendants, ERISA also holds Citco N.V. to a prudent standard of care because the Receiver pleads it is an ERISA fiduciary.  Section 404 of ERISA requires fiduciaries to discharge their duties solely in the interest of ERISA plan participants and (i) for the exclusive purpose of providing benefits to participants and defraying reasonable plan administrative expenses, (ii) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of a similar enterprise, (iii) diversifying plan investments, and (iv) in accordance with the documents governing the plans.  29 U.S.C. § 1104(a).  Citco N.V. breached its fiduciary duties with respect to Offshore's ERISA investors because it accepted Lauer's valuation of certain portfolio companies within Offshore when calculating the NAV and failed to independently calculate the value of Offshore's holdings, which its affiliates, the Director Defendants, published, and based on which it received inflated fees from Offshore for its services.  Compl. ¶¶ 313, 322.

### 2.    Citco N.V. Is Also Liable Under Respondeat Superior

The Receiver also pleads that Citco N.V. is vicariously liable under respondeat superior for the acts and omissions of the Director Defendants Conroy and Quilligan because both directors breached their fiduciary duties with respect to Offshore's ERISA plan assets while acting in the course and scope of their employment.  Respondeat superior liability "does not require a principal's active and knowing participation in the breach of fiduciary duties." *Hamilton v. Carell*, 243 F.3d 992, 1002 (6th Cir. 2001).  The Receiver has pled facts to establish respondeat superior liability and sufficiently alleges "that the Director Defendants breached their

---

[32] *See* Compl. ¶ 206-211, 277-279, 313, 322, 358-360, 367-378.

duty to Plaintiffs while acting in the course and scope of their employment," as analyzed in detail above.[33] *In re Cardinal Health, Inc. ERISA Litigation*, 424 F. Supp. 2d 1002, 1049 (S.D. Ohio 2006) (denying a motion to dismiss the allegations of respondeat superior liability in an ERISA case with respect to actions of director defendants); *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1095 (N.D. Ill. 2004) (same); *Kling v. Fidelity Management Trust Co.*, 323 F. Supp. 2d 132, 146-47 (D. Mass. 2004) (denying motion to dismiss and holding that the plaintiff need only allege state law elements of vicarious liability to establish respondeat liability under ERISA).

Here, the Receiver alleges a respondeat superior theory to hold Citco N.V. liable for the Director Defendants' breaches of their duties under ERISA. Citco N.V. employed as managing directors individual Director Defendants Quilligan and Conroy, and Citco N.V. received annual fees for providing its employees to serve as directors of Offshore. Compl. ¶ 134. Offshore's accounting records provide no evidence of payments to Director Defendants with respect to their service as directors. With sufficient factual allegations that: (i) Citco N.V. was paid an annual fee by Offshore for the services of Director Defendants Conroy and Quilligan as directors; (ii) Director Defendants Quilligan and Conroy were current employees of Citco N.V. during the period of their service as directors; and (iii) no evidence that Director Defendants Quilligan and Conroy received separate payment for their service as directors from Offshore; it seems clear, but at a minimum certainly plausible, that service as directors of Offshore was within the scope of Director Defendants Quilligan and Conroy's duties as employees and managing directors of Citco N.V.

Director Defendants Quilligan and Conroy assumed express control over and managed Offshore's business affairs, were responsible for monitoring and/or replacing the investment managers for Offshore, and conducted annual meetings to review and assess Offshore's investment policy and performance. Compl. ¶¶ 346-347, 350, 352-353. ERISA requires that the Director Defendants discharge their duties solely in the interest of ERISA plan participants and "… with the care, skill, prudence and diligence under the circumstance that a prudent man acting in a like capacity *and familiar with such matters* would use in the conduct of an enterprise of a like character and with like aims …." 29 U.S.C. § 1104(a)(1)(B) (emphasis added). Director Defendants Quilligan and Conroy breached their fiduciary duty when they failed to adequately

---

[33] *See, supra,* at 18-21.

monitor Lancer Management, published faulty NAVs that they knew or should have known were based on faulty valuations provided by Lauer, failed to terminate Lancer Management's investment services upon discovering the fraudulent nature of the valuation reports, and failed to disclose Lauer's misdeeds as well as their own conflict by virtue of participating in and relying on the inflated NAVs to increase their employer's fees.  Compl. ¶¶ 365-368, 371.  Director Defendants Quilligan and Conroy recklessly rubberstamped the valuations that in turn significantly but fraudulently inflated Offshore's assets thereby drastically increasing the fees Offshore paid to Citco N.V.  *Id.* ¶¶ 373-375.  The Receiver pleads sufficient facts to establish that Director Defendants Quilligan and Conroy committed these actions while in the course and scope of their employment with Citco N.V., and Citco N.V. therefore is liable under respondeat superior and ERISA for the actions of its agents.  *Id.* ¶¶ 301-302, 345-354, 377, 400.

### 3.    Parties In Interest Under ERISA

Alternatively, Citco N.V. and Director Defendants are liable as parties in interest under ERISA because they provided investment services with respect to Offshore's ERISA plan assets and, together with Lancer Management, defrauded Offshore's ERISA plan investors by overstating the value of Offshore's ERISA plan assets.  A "party in interest" includes: (i) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; (ii) any entity that provides services to a benefit plan; (iii) a 50% owner of such entity; or (iv) an employee, officer, *director*, partner, or joint venturer of such entity.  29 U.S.C. § 1002(14)(A), (B), (G), (H), (I) (emphasis added).  Citco N.V. qualifies as a party in interest under prong (ii) through its contract with Offshore to provide investment services to Offshore's ERISA plan investors. Director Defendants ICS and Stocks qualify as fiduciary parties in interest under prong (i).  Director Defendants Quilligan and Conroy qualify as fiduciary parties in interest under prong (i), as well as employees of Citco N.V. under prong (iv).  *See, e.g.,* Compl. ¶¶ 31, 49, 293, 300, 338, 345-346, 375, 400.

Citco N.V. and Director Defendants, as parties in interest, are liable for knowingly participating in the fiduciary breaches of Lancer Management, who was also an ERISA fiduciary because it served as Offshore's investment manager.  Compl. ¶ 302.  Parties in interest who knowingly participate in a fiduciary breach are liable to the same extent as the fiduciaries.  *See Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 249-50 (2000) (holding that ERISA authorizes suits against nonfiduciary parties in interest who engage in

prohibited transactions); *In re Xerox Corp. ERISA Litigation*, 483 F. Supp. 2d 206, 216 (D. Conn. 2007) ("while the underlying breach of fiduciary duty in *Harris* was engaging in a prohibited transaction, the holding in *Harris* is not limited to such situations"); *National Security Systems, Inc. v. Iola*, 2007 U.S. Dist. LEXIS 71470, at *7 (D.N.J. Sept. 26, 2007) ("liability of a nonfiduciary under *Harris* does not depend upon whether the nonfiduciary can be classified as a party in interest or upon whether the nonfiduciary participated in a prohibited transaction").

Here, Citco N.V. and the Director Defendants are also liable as parties in interest because they were hopelessly conflicted and engaged in self-dealing transactions with respect to Offshore's ERISA plan assets.  ERISA provides express prohibitions against a fiduciary causing a plan to enter into conflict of interest transactions with a party in interest.  29 U.S.C. § 1106(a). As one district court observed, ERISA essentially "forbids plan fiduciaries from entering into 'sweetheart deals' with parties in interest to an ERISA plan." *Laborers' Pension Fund v. Arnold*, 2001 U.S. Dist. LEXIS 2026, at *22 (N.D. Ill February 27, 2001).  Accordingly, if a party in interest receives excessive compensation derived from any ERISA plan assets for services rendered, as the Receiver alleges here, the party in interest will be liable under ERISA if both the party in interest and the fiduciary knew or should have known that the payment was unreasonable. *Laborers' Pension Fund*, 2001 U.S. Dist. LEXIS 2026, at *23; *see also Enslava v. Gulf Telephone Company, Inc.*, 2007 U.S. Dist. LEXIS 44165, at *27-28 (S.D. Ala. June 18, 2007).

The Complaint sufficiently alleges that Citco N.V. received excessive compensation as a result of Lancer Management's improper management of Offshore's ERISA plan assets by grossly inflating the valuation of certain portfolio companies, such as the Target Companies within Offshore.  Compl. ¶¶ 190-198, 210-211, 284, 367-368.  The Director Defendants failed to independently verify the values reported by Lancer Management although there were numerous signs that the values were inaccurate.  *Id.* ¶¶ 366-368.  Citco N.V. calculated the NAV using the erroneous values reported by Lauer and then calculated the fees it charged to Offshore based on the inflated NAV, turning a blind eye to Lancer Management's grossly inaccurate valuations.  *Id.* ¶¶ 198, 206, 277, 285, 367.  Citco NV then agreed to a "silent" withdrawal, failing to disclose both Lauer's misdeeds and their own conflicts so that the Investors and the authorities would not be alerted to the massive fraud.

Third parties who knowingly collude with fiduciaries are liable under ERISA.  *Harris Trust*, 530 U.S. at 252-53; *In re Xerox Corporation ERISA Litigation*, 483 F. Supp. 2d 206, 216 (D. Conn. 2007).  As the Supreme Court succinctly explained in *Harris Trust*, the fact that an entity was not the original wrongdoer does not insulate it from ERISA liability as a party in interest.  530 U.S. at 251.  Citco N.V. knew or should have known that Lancer Management's valuations were erroneous and, therefore, that the fees Citco N.V. charged Offshore were artificially inflated and excessive.  Compl. ¶¶ 190-198, 210-211, 284, 367-368.  The Director Defendants recklessly accepted Citco N.V.'s calculations of the NAV and published them even though they knew or should have known that the NAVs were based on Lancer Management's inflated asset valuations.  The Director Defendants' breach resulted in the receipt, by a party in interest (Citco N.V.), of excessive fees from Offshore's ERISA plan assets, among other damages.  *Id.* ¶¶ 198, 206, 277, 285, 367.  Therefore, Citco N.V. and the Director Defendants are liable under ERISA as parties in interest because they knowingly participated in Lancer Management's breaches of fiduciary duties with respect to Offshore's ERISA plan assets.

The Receiver has pled sufficient facts to establish that: (1) Citco N.V. was an ERISA fiduciary because (a) it rendered investment advice with respect to Offshore's ERISA plan assets when it calculated the NAVs and (b) was an "affiliate" of the Director Defendants, who had discretionary authority and control with respect to purchasing or selling Offshore's ERISA plan assets; and (2) Citco N.V. breached its ERISA fiduciary duties by approving and/or acquiescing in Lancer Management's scheme to defraud investors and receiving exorbitant fees based on fraudulent valuations.

Additionally, the Receiver pleads sufficient facts to allege that Citco N.V. and Director Defendants are liable as parties in interest because: (1) Lancer Management, as Offshore's investment manager, was an ERISA fiduciary; (2) Citco N.V., as a result of its contract with Offshore, provided services to Offshore's ERISA plan investors; (3) individual Director Defendants served as employees, officers and directors of both Citco N.V. and Offshore; (4) Citco N.V. and Director Defendants, as fiduciaries and parties in interest, knew or should have known that Lancer Management grossly inflated the value of Offshore's assets; (5) Citco N.V. calculated the NAVs based upon what it knew or should have known were inflated values provided by Lauer; (6) the Director Defendants accepted and published the inflated NAVs; (7) the Director Defendant caused Offshore to pay Citco N.V. inflated fees for its services based on

- 28 -

those faulty values; (8) Citco N.V. received payment of such excessive fees from ERISA plan assets; and (9) failed to disclose Lauer's scheme or their own conflict of interest.  *See* 29 U.S.C. § 1002(14)(B), (G), (H), (I); 29 U.S.C. § 1106(a)(1)(D); Second Amended Compl. ¶¶ 190-198, 206, 277, 285, 366-368.  Citco N.V. and Director Defendants, as parties in interest, cannot avoid liability for Lancer Management's fiduciary breaches of which they knew or should have known and failed to remedy and from which Citco N.V profitted.  *See Harris Trust*, 530 U.S. at 252-253.  Collectively, these allegations sufficiently state a claim for relief under ERISA.

### 4.       The Director Defendants and Citco N.V. are ERISA Co-Fiduciaries

The Director Defendants and Citco N.V. are liable as co-fiduciaries because, as fiduciaries, they knew or should have known that Lancer Management, which the Receiver has adequately alleged is a fiduciary itself, breached its fiduciary duty and failed to remedy the breach.  A fiduciary is liable as a co-fiduciary if he (i) knowingly participates in or conceals a breach of fiduciary duty, (ii) enables another fiduciary to commit a breach, or (iii) knows of a breach by another fiduciary and fails to take reasonable steps to remedy it.  29 U.S.C. § 1105. The Defendants qualify under all three categories. A co-fiduciary claim, thus, will survive a motion to dismiss where a plaintiff alleges fiduciary breaches and knowledge of another fiduciary's breaches with sufficient factual support.  *Woods v. Southern Company*, 396 F. Supp. 2d 1351, 1379 (N.D. Ga. 2005).

The Receiver sufficiently pleads that Citco N.V. knew or should have known of Lancer Management's breaches of ERISA fiduciary duties with respect to Offshore's ERISA plan assets to establish co-fiduciary liability claims under ERISA.  Compl. ¶¶ 385, 386, 405, 416, 441. Citco N.V. breached its fiduciary duty by accepting Lancer Management's faulty valuations and using the valuations as a basis for calculating the NAV on which it based the inflated fees paid from Offshore's ERISA plan assets.  *Id*. ¶ 358, 373-375, 385, 396-397, 416-423.  Under *Woods,* the Receiver sufficiently pleads that Citco N.V. as a co-fiduciary is liable for Lancer Management's breach of its fiduciary duties because, rather than taking steps to remedy Lancer Management's breach, it enabled, concealed, and profited from it.  *Id*. ¶¶ 189-206, 385, 393, 396-397.

Additionally, the Receiver sufficiently pleads that the Director Defendants had knowledge of Lancer Management's breaches of ERISA fiduciary duties with respect to Offshore's ERISA plan assets to establish co-fiduciary liability claims under ERISA.  *Id*. ¶¶ 321,

323, 366-368.  The Director Defendants breached their fiduciary duty when they (i) failed to adequately monitor the investment manager they appointed, (ii) approved without independent verification Lancer Management's valuations, (iii) retained Lancer Management as Offshore's investment manager after they discovered or should have discovered the inaccuracies in the valuation reports, (iv) approved and paid both Lancer Management and themselves based on the improperly inflated fees, and (5) failed to disclose Lauer's scheme and their own conflict of interest.  *Id*. ¶¶ 365-368, 371, 406, 409-412.  Under *Woods,* the Receiver has sufficiently pled that the Director Defendants as co-fiduciaries are liable for Lancer Management's breach of its fiduciary duties because, rather than take action to remedy Lancer Management's breach or remove it from its roll as investment manager, they ignored, concealed, and caused Citco N.V. to profit from it.  *Id*. ¶¶ 189-206, 385, 393, 396-397.

The Receiver, therefore, pleads sufficient facts that allege (i) Lancer Management was an ERISA fiduciary because it managed the investment of ERISA plan assets; (ii) Director Defendants were ERISA fiduciaries because they exercised discretion over the management of ERISA plan assets (and were affiliates) and appointed Lancer Management as investment manager; (iii) Citco N.V. was an ERISA fiduciary because it provided investment advice as to the value of Offshore's ERISA plan assets and through its affiliates, the Director Defendants, had discretionary authority and control with respect to purchasing or selling Offshore's ERISA plan assets; (iv) the Director Defendants breached their ERISA fiduciary duties by failing to adequately supervise and subsequently terminate Lancer Management; (v) Citco N.V. breached its ERISA fiduciary duties by accepting Lauer's faulty valuations of certain portfolio companies within Offshore and failed to independently calculate Offshore's value; (vi) the Director Defendants and Citco N.V. are liable as ERISA co-fiduciaries because they knew of and failed to act on Lancer Management's fiduciary breach which resulted in defrauding ERISA plan investors; and (vii) they benefitted from this conduct.  The Complaint, accordingly, sufficiently alleges co-fiduciary liability under ERISA and states a claim for relief.

III.    **CONCLUSION**

For the reasons stated above, the Receiver respectfully requests that the Court deny Citco N.V. and the Director Defendants' motion to dismiss.  In the event that the Court determines that the Receiver has failed to adequately allege any claim or that the law of the British Virgin Islands governs any portion of this action, the Receiver requests leave to amend his complaint.

Dated:  November 24, 2009.

HUNTON & WILLIAMS LLP
*Attorneys for Receiver*
1111 Brickell Avenue - Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460


By:___/s/ Courtney Caprio_____
        Andrew D. Zaron (FBN 965790)
        Barry R. Davidson (FBN 107678)
        Juan C. Enjamio (FBN 571910)
        Courtney Caprio (FBN 933961)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 24th day of November, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Dyanne Feinberg, Esq., Gilbride Heller & Brown, One Biscayne Tower, 15th Floor, 2 South Biscayne Boulevard, Miami, Florida 33131 in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By:   /s/ Courtney Caprio
Courtney Caprio (FBN 933961)

99999.000311 EMF_US 28464071v12