UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-60080-CIV-MARRA/JOHNSON

COURT APPOINTED RECEIVER
of LANCER OFFSHORE, INC.
and OMNIFUND, LTD.

      Plaintiff,

vs.

THE CITCO GROUP LTD.,
et al.

      Defendants.

_____/

## ORDER AND OPINION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss the Receiver's

Second Amended Complaint by Citco Fund Services (Curacao) N.V., Inter Caribbean

Services, Ltd., Anthony Stocks, Kieran Conroy and Declan Quilligan [DE 132].  The

Court has carefully considered the motion, response, reply, argument of counsel, and

is otherwise fully advised in the premises.

**Introduction and Background**

The Receiver commenced this action by filing a six-count Complaint against

several Defendants, including Citco Fund Services (Curacao) N.V. ("CFS-Curacao"),

Anthony Stocks, Kieran Conroy and Declan Quilligan.  All Defendants moved to dismiss

the Complaint.  Prior to any ruling on the motion, the Receiver filed an Amended

Complaint, naming two additional Defendants, and adding additional claims.[1]  The 113-page, 319 paragraph Amended Complaint ("Complaint" or "Compl.") contained eleven separate counts.  *See* DE 32.

On March 31, 2008, the Court entered its Order and Opinion (the "Order") dismissing all counts of the Receiver's Amended Complaint against CFS-Curacao, other than one claim for breach of contract, which CFS-Curacao did not move to dismiss.  *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.,* No. 05-60080, 2008 WL 926513 (S.D. Fla. Mar. 31, 2008).  In the Order, the Court identified specific substantive defects in the Amended Complaint, and gave the Receiver one opportunity to amend each claim to cure these deficiencies.

Also on March 31, 2008, the Court entered a separate Order and Opinion on the Director Defendants' motion to dismiss (the "Director Defendants' Order").  *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.,* No. 05-60080, 2008 WL 926509 (S.D. Fla. Mar. 31, 2008).  In the Director Defendants' Order, the Court dismissed several counts of the Receiver's Amended Complaint, including the claims for professional malpractice, aiding and abetting CFS-Curacao's breach of

---

[1]  One of the Defendants added by the Receiver was Defendant Inter Caribbean Services, Ltd.  Movants collectively refer to defendants Inter Caribbean Services, Ltd., Anthony Stocks, Kieran Conroy and Declan Quilligan as the "Director Defendants."  Anthony Stocks is deceased and a Statement Noting a Party's Death has been filed.  The Receiver has indicated an intention to proceed against Stocks' estate, and has obtained an extension of time to do so.  Accordingly, movants state that this motion is filed on behalf of Stocks as well.

fiduciary duty, and liability under ERISA for breach by co-fiduciaries.

The Receiver has subsequently filed a 194-page, 532-paragraph Second Amended Complaint ("SAC") [DE 110]. CFS-Curacao has moved once again to dismiss. In fact, this time CFS-Curacao moves to dismiss the Receiver's claim for breach of contract. CFS-Curacao seeks an order dismissing with prejudice all claims for relief against it including: Breach of Contract; Breach of Implied Duty of Good Faith and Fair Dealing; Gross Negligence; Breach of Fiduciary Duty; two counts of Aiding and Abetting a Breach of Fiduciary Duty; Professional Malpractice; Breach of ERISA Fiduciary Duty; and Liability under ERISA for Breach of Co-Fiduciaries. In addition, the Director Defendants move to dismiss with prejudice the same claims the Court previously dismissed as to them: Professional Malpractice, Aiding and Abetting CFS-Curacao's Breach of Fiduciary Duty, and Liability under ERISA for Breach of Co-Fiduciaries.

## Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, - U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing  *Twombly*, 550 U.S. at 570).

**Discussion**

**A.**    **Count V:  Breach of Contract Claim**

In its previous motion to dismiss, CFS-Curacao did not move to dismiss the breach of contract count.  CFS-Curacao did not previously, and does not now, dispute the existence and validity of the Administrative Service Agreements ("ASAs" or "Agreements") with the Funds from 1996 through 2002.  But now, CFS-Curacao argues that the Receiver no longer states a claim for breach of contract because he has improperly alleged two breaches of obligations that are not imposed by the contractual agreements between the parties:  (1) that the Citco Defendants "failed to independently verify the valuations stated by Lauer and Stenton Leigh, who were both conflicted," and (2) "failing to appoint independent directors to the Funds' boards."  SAC ¶ 428.

The Receiver responds that even if he pleads duties outside of the Agreements, that fact does not render null the allegations he does make regarding CFS-Curacao's

breach of duties that are itemized in the contracts.  CFS-Curacao replies that the

Receiver, who stands in the shoes of the Offshore Funds, is bound by the contract

signed by the Funds, and he cannot now claim that CFS-Curacao had duties beyond

what was agreed to by the parties.

In order to state a breach of contract claim, a party must allege: (1) a valid

contract; (2) a material breach; and (3) damages.  *Trowell v. S. Fin. Group, Inc.*, No.

08-11242, 2008 WL 4787142, at *2 (11th Cir. Nov. 4, 2008).  It is undisputed that in the

previous complaint, the Receiver had adequately alleged the necessary elements to

state a breach of contract claim.  No argument is made that the Receiver has

changed that part of the count.  The Receiver still alleges the existence of a

contract, that CFS-Curacao breached duties specified in the contract, and damages to

the Funds as a result of the breach.  Therefore, a breach of contract claim has been

stated.  To the extent Defendants claim that the Receiver alleges breaches of duties

or obligations that are outside the contract, that issue is more appropriately

addressed in a motion for summary judgment.  The Court is not prepared at this time

to determine, as a matter of law, whether any implied duties exist.  Citco's motion to

dismiss Count V of the SAC will be denied without prejudice to reassert this argument

at the summary judgment stage or at trial.

**B.**      **Count VI:  Claim for Breach of Implied Duty of Good Faith and Fair Dealing**

Florida courts recognize an implied covenant of good faith and fair dealing in

every contract.  *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1315 (11th Cir.

1999); *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So.2d 1049, 1050 (Fla. 1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith"). The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract. *County of Brevard,* 703 So.2d at 1050. This rule is aimed at protecting the reasonable or justifiable expectations of the contracting parties in light of their express agreement. *See Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1999); *Barnes v. Burger King Corp.*, 932 F.Supp. 1420 (S.D. Fla. 1996); *Burger King Corp. v. Austin*, 805 F.Supp. 1007 (S.D. Fla. 1992).

The implied covenant is not a limitless duty or obligation. It is an interpreting, gap-filling tool of contract law. *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) citing *Taylor Equipment, Inc. v. John Deere Company*, 98 F.3d 1028, (8th Cir. 1996) ("the covenant is a method to fill gaps in a contract"); *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 579 (7th Cir. 1995) (holding that the covenant is gap-filling tool and is not applied to block use of terms that actually appear in the contract). A cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract, or (b) in the absence of a breach of an express term of the underlying contract. *See Burger King*, 169 F.3d at 1318; *Hospital Corp.*, 710 So.2d at 575.

Because it is a gap-filling rule, the covenant applies only when the propriety of the conduct is not resolved by the terms of the contract. That situation ordinarily

arises when: (1) the contract is ambiguous about the permissibility of the conduct, or

(2) when the conduct is undertaken pursuant to a grant of discretion and the scope of

that discretion has not been designated.  *See Indian Harbor Citrus, Inc. v. Poppell*,

658 So.2d 605, 606 (Fla. Dist. Ct. App. 1995) (covenant may be invoked to explain or

qualify ambiguous terms); *Cox*, 732 So.2d at 1097 (where the terms of the contract

afford a party substantial discretion to promote that party's self-interest, the duty to

act in good faith nevertheless limits that party's ability to act capriciously to

contravene the reasonable contractual expectations of the other party).  When,

however, the express terms of the contract determine the permissibility of the

conduct, no gap-filler is needed and the covenant does not apply.

To allege a breach of the implied covenant, the Receiver must demonstrate a

failure or refusal to discharge contractual responsibilities.  This failure or refusal

must be prompted not by an honest mistake, bad judgment or negligence.  Rather,

the failure or refusal to act must be the result of a conscious and deliberate act,

which unfairly frustrates the agreed common purpose of the contract and disappoints

the reasonable expectations of the other party, thereby depriving that party of the

benefits of the agreement.  *See, e.g., Cox*, 732 So.2d at 1097 (covenant limits party's

ability to act capriciously when exercising his discretion).  Thus, a party can maintain

a claim for breach of the implied duty only if it is based on allegations different than

those underlying the accompanying breach of contract claim.  If the allegations do

not go beyond the statement of a mere contract breach and, relying on the same

alleged acts, simply seek the same damages or other relief already claimed in a

companion contract cause of action, they may be disregarded as superfluous as no

additional claim is actually stated.  *Shibata*, 133 F. Supp. 2d at 1319.

The contractual provisions upon which this count is based are the following:

1.1(g) computing the monthly Net Asset Value of the Company's shares, as of
the close of business on the last Business Day of each month, in
accordance with the Explanatory Memorandum and the Articles of
Association of the Company, and reporting such to the Investment
Advisor;

1.1(h) independently pricing the fund by reference to data supplied by
Interactive Data Services International and other independent pricing
sources, or as agreed by the Board of Directors pursuant to the
Explanatory Memorandum;

\*     \*     \*     \*     \*

1.1(m) providing, subject to Clause 1.2 [compensation], directors.

SAC, Exs. J, K, L.

CFS-Curacao asserts that the Receiver's claim for breach of implied duty of

good faith and fair dealing, asserted for the first time in the SAC, must be dismissed

because it is duplicative of the claim for breach of contract, and to the extent the

Receiver attempts to allege additional duties, they are contradicted by or

inconsistent with the express terms of the contract.

Count VI addresses CFS-Curacao's contractual obligation  to "independently

price" the Funds' investment portfolio, to "compute the monthly NAV" in accordance

with GAAP, and to appoint directors.  Compl. ¶¶ 8-14, 433-36.  The Agreements

required CFS-Curacao to independently price the Fund by reference to specifically-

defined data.  The Funds' Placement Memorandum and Articles of Association set forth in great detail the precise means by which CFS-Curacao was to compute the Offshore Funds' NAVs.  SAC, Exs. H, M.  No discretion was granted to CFS-Curacao in connection with computing the monthly NAV of the Funds' shares.  There is no "gap" to be filled when the contract clearly delineates this express duty.

On the other hand, the other action complained of, CFS-Curacao's placement of their own conflicted employees on the Funds' board of directors, is another matter.  The Agreements simply required CFS-Curacao to "appoint . . . directors," without specifying any particular selection parameters.  The Receiver alleges that CFS-Curacao abused this discretion by, among other acts and omissions, appointing their own employees and directing them to act in ways that benefitted CFS-Curacao to the detriment of the Funds.  SAC ¶¶ 8-14, 432, 436.  Allegedly, these appointed directors did not act independently, but rather were under CFS-Curacao's control and direction.  While CFS-Curacao had the express duty to appoint directors, it is argued that it had to exercise that duty in good faith by appointing individuals who would make independent decisions not tainted by conflicts.  Since the Agreements are silent about the methodology for selecting directors, the allegations that CFS-Curacao appointed conflicted high-level employees to the Funds' boards for the purpose of increasing its administrative fees, raises issues of fact as to whether the manner by which CFS-Curacao exercised its discretion to appoint the Funds' directors violated the implied duty of good faith and fair dealing.

Accordingly, this count may proceed solely as to the allegation that CAC-Curacao appointed conflicted high-level employees to the Funds' board, but is dismissed as to the issue of computing the NAVs and independently pricing the Fund.

## C.   Professional Malpractice

The Court previously dismissed the Receiver's professional malpractice claim against all Defendants, finding that the claim failed "where there are no allegations that fund administrators are required to obtain a four-year degree for licensing in Florida." *Court Appointed Receiver*, 2008 WL 926513, at *2.  The SAC fails to make these critical allegations.  Instead, the Receiver argues that the Court's prior ruling "is based on an unnecessarily broad misreading of Florida law."  DE 165 at 16. However, as this Court recognized, the definition adopted by the Florida Supreme Court in *Garden v. Frier*, 602 So. 2d 1273 (Fla. 1992), has consistently been applied in cases addressing issues other than the statute of limitations.  *See, e.g., Moransais v. Heathman*, 744 So. 2d 973, 976 (Fla. 1999); and *Warner v. Boston Sec., S.A.*, No. 03-81026-CIV-RYSKAMP, 2004 WL 691787, at *13 (S.D. Fla. Mar. 22, 2004) (applying definition of professional for purposes of economic loss rule).  Since the SAC does not allege that fund administrators or corporate directors are required to obtain a four-year degree for licensing in Florida, these claims will be dismissed with prejudice as to the Citco Defendants and the Director Defendants.

D.    **Count VII:  Gross Negligence**

In the Order, this Court also dismissed the gross negligence count against CFS-Curacao, finding that the claim was barred by Florida's economic loss rule.  Because the Receiver did not allege extra-contractual duties assumed by CFS-Curacao or breaches of duties not imposed by the contract claim, the economic loss rule barred a claim in tort.  *Court Appointed Receiver*, 2008 WL 926513, at *3.  Specifically, the Court found that "[a] review of the paragraphs in the Complaint cited by the Receiver does not support his assertion that independent duties not imposed by the contracts are alleged."  *Id*.  Now, the Receiver asserts that he pleads specific duties that are outside the Agreements.  Of note, the SAC alleges that Citco N.V. owed *a duty to disclose* because it voluntarily disseminated false valuations.  DE 165 at 14.

**Duty to Disclose**

The Receiver pleads that "separate, distinct, and independent from its contractual responsibilities set forth in the Citco Agreements, Citco N.V. owed additional direct duties of care to the Offshore Funds.  First and foremost, Citco N.V. owed the Offshore Funds the duty to disclose the inflated and baseless NAVs to the Independent Directors, the appropriate authorities, and the investors."  SAC ¶ 119. In support of this allegation, the Receiver argues:

> a duty to disclose may "be created by a defendant's previous decision to speak voluntarily.  Where a defendant's failure to speak would render its own prior speech misleading or deceptive, a duty to disclose arises." [*Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986).]  Here, a duty to disclose exists because Citco N.V. elected to

"speak voluntarily" *by issuing thousands of NAV statements to Lancer personnel, the Funds' management, and the investors.  See, e.g.,* Compl. ¶ 31.  This duty is independent from its contractual duties to price and compute the value of the Funds because the Agreements did not require Citco N.V. to disseminate the NAVs. . .  The economic loss rule does not apply to the duty to disclose because this duty is not specifically delineated in the Agreements.

DE 165 at 14-15 (emphasis supplied).  This argument is well founded.

Pursuant to the ASAs, CFS-Curacao was to "comput[e] the monthly Net Asset Value" of the Funds' shares *and* "report[] such to the Investment Manager."[2]  *See* SAC, Ex. K & L, ¶ 1.1(g).  Any assertions of wrongful conduct relative to reporting NAVs to the Investment Manager would constitute a contractual breach and cannot be said to be independent of the contract.  Additionally, if the Receiver is basing the claim on any information allegedly imparted by CFS-Curacao to investors, the Receiver lacks standing to bring a claim on behalf of the investors.  *See* SAC ¶ 2 ("This action is brought on behalf of the Offshore Funds only and asserts claims for damages caused directly to the Offshore Funds by its former fund administrators and directors, as opposed to any damages the fund administrators and directors may have caused to the Offshore Funds' investors and creditors.")

---

[2]  "The Fund's assets are managed by Lancer Management Group, LLC (the "Investment Manager") a limited liability company . . .  Michael Lauer is the sole manager and principal owner of the Investment Manager and, as such, he controls the operations and activities of the Investment Manager."  Placement Memorandum of Lancer Offshore, Inc. at (i), SAC, Ex. M.

However, the Receiver does have a claim based on a duty to disclose to the "independent" Directors and the appropriate authorities.  As pointed out above, the only reporting duty CFS-Curacao had was to the Investment Manger.  But it is alleged that CFS-Curacao voluntarily disseminated thousands of NAV statements to Lancer personnel, the Funds' management, and the investors.  Because the SAC alleges that CFS-Curacao was aware of the Funds' inflated valuations, its failure to speak accurately rendered its own prior speech concerning the Funds' values misleading and deceptive.  SAC ¶¶ 119-20.  As the Receiver alleges, CFS-Curacao thus owed the Funds a duty to disclose the inflated valuations to the "independent" Directors and the appropriate authorities.  SAC ¶¶ 119, 441.  The SAC further alleges that CFS-Curacao breached this independent duty and caused damage to the Funds.  SAC ¶¶ 18, 137, 142, 452, 467, 476.  This duty, combined with the alleged underlying financial incentive to increase their own fees, adequately states a claim for gross negligence. The economic loss rule does not apply to the duty to disclose because this duty does not arise from the Agreements, but rather from CFS-Curacao's own alleged voluntary action.  This count will not be dismissed.  However, it must be tailored to reflect the findings herein.

E.    **Count VIII: Breach of Fiduciary Duty**

1.    **CFS-Curacao as to the Offshore Funds**

Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.  *Capital*

*Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. Dist. Ct. App. 1994).  Courts have found a fiduciary relation implied in law when "confidence is reposed by one party and a trust accepted by the other."  *Id.* citing *Dale v. Jennings*, 90 Fla. 234, 244, 107 So. 175, 179 (1925).  Generally, the relationship between CFS-Curacao and the Offshore Funds would be characterized as one in which the parties engaged in arms-length transactions, and where CFS-Curacao owed no fiduciary responsibilities to the Funds. *Id.*; *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176 (S.D. Fla. 1991).

In the previous Order, the Court dismissed the breach of fiduciary duty claim against CFS-Curacao, finding that CFS-Curacao did not owe a fiduciary duty to the Offshore Funds, as opposed to a contractual duty under the ASAs.  *Court Appointed Receiver*, 2008 WL 926513, at *4.  Specifically, the Court held "the actions complained of do not indicate that CFS-Curacao stepped out of its contractual role as administrator for the Funds or that CFS-Curacao made representations or assurances that developed a dependency by the Funds."  *Id.*

The Court also dismissed with prejudice a similar claim for breach of fiduciary duty in the related *Bruhl v. PricewaterhouseCoopers Int'l* case.  The plaintiffs in *Bruhl* attempted to assert a breach of fiduciary duty claim against CFS-Curacao, contending that CFS-Curacao owed a fiduciary duty to the plaintiff investors.  In dismissing that claim, this Court held that "the actions complained of do not indicate that CFS-Curacao stepped out of its contractual role as administrator for the Funds or developed a special relationship and undertook a duty beyond those duties already

assumed under the ASAs, to advise, counsel, protect, or benefit the Plaintiffs." *Bruhl v. PricewaterhouseCoopers Int'l*, No. 03-23044-Civ, 2008 WL 899250, at *4 (S.D. Fla. Mar. 31, 2008).  The Court found that "'[c]onclusory allegations that a confidential or fiduciary relationship existed, without any supporting factual assertions, are insufficient' to state a claim for breach of an implied fiduciary duty."  *Id.* at *6 (quoting *American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005)).

In the Order, this Court also rejected the Receiver's argument that he alleged "special circumstances" sufficient to satisfy the stringent standard under *Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994) ("we recognize a fiduciary relationship between a bank and a customer where the bank knows or has reason to know of the customer's trust and confidence under circumstances exceeding an ordinary commercial transaction").  The Receiver did not allege facts that showed that a fiduciary relationship existed based on confidence reposed by one party and a trust accepted by the other.  *Maxwell v. First United Bank*, 782 So.2d 931, 933-34 (Fla. Dist. Ct. App. 2001); *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991); *see also* Smith Decl., ¶¶ 151-52.

In the SAC, the Receiver attempts to cure the defects in its Amended Complaint by alleging that the Citco Defendants established a fiduciary relationship with the Offshore Funds because:  (1) "they undertook to counsel and advise the Funds and went above and beyond a ministerial administrative role" (SAC ¶ 461), and

(2) because they became involved in "investment and management decisions" not contemplated by the Agreements" (SAC ¶ 462).

"Special circumstances" in *Capital Bank* were found to transform the bank's traditional status as a non-fiduciary arms-length lender into a fiduciary with a duty to disclose.  This transformation occurred, and Capital Bank was found to have breached its fiduciary duty, when Capital Bank facilitated a transaction between two of its customers, it expressly invited a customer's reliance by urging the customer to trust that the bank's plans would benefit his business, it possessed confidential information about each customer, and it failed to disclose material information to the customer which failure resulted in harm to the customer.  *Capital Bank*, 644 So.2d at  521.  A bank assumes a duty to disclose to the customer a fact (1) material to the transaction, (2) "peculiarly within [the bank's] knowledge," and (3) "not otherwise available to the customer" if the bank transacts business with a customer with whom it established "a relationship of trust and confidence" and the transaction is one "from which the bank is likely to benefit at the customer's expense."  *Barnett Bank of West Fla. v. Hooper,* 498 So.2d 923, 925 (Fla. 1986); *Capital Bank,* 644 So.2d at 518-21.

Relying upon this theory, the Receiver urges the Court to find that CFS-Curacao stepped out of its arms-length contractual role when it immersed itself in the management and direction of the Funds by (i) CFS-Curacao volunteering to assist Lauer in restructuring the Funds' holdings; (ii) CFS-Curacao controlling its employees

who served as directors of the Funds, and thus directly influenced the Funds'

management, activities, and direction; and (iii) CFS-Curacao receiving greater

economic benefit than is typical for similar arms-length relationships, namely direct

payment tied to the inflated NAV of the Funds.  SAC ¶¶ 125-37, 140-46, 453-75.

When dismissing this count before, the Court stated that "the Receiver will be

given one more opportunity to attempt to allege *facts* to support a claim that CFS-

Curacao owed anything more than a contractual duty to the Offshore Funds."  *Court*

*Appointed Receiver*, 2008 WL 926513, at *4.  In essence, the only newly alleged fact is

that CFS-Curacao "internally acknowledged and admitted that they owed fiduciary

duties to the Funds, and even suggested to restructure the Funds' portfolio so that

the manipulated values would be in a separate "class" in an attempt to justify Lauer's

inflation of the NAV, so that their administrative fees would continue to increase."

SAC ¶ 136.  What is lacking is any assertion that CFS-Curacao fostered the Funds'

confidence beyond what would be expected pursuant to the Agreements, or

allegations that the Funds placed trust and reliance on CFS-Curacao beyond the

contractual Agreements.  Since the Receiver has again failed to state a claim for

breach of fiduciary duty against CFS-Curacao, this claim will be dismissed with

prejudice.

### 2.    CFS-Curacao's Breach of Fiduciary Duty
###        Under the Theory of Respondeat Superior

The Receiver alleges in the alternative that CFS-Curacao, as the employer of the Director Defendants, is liable for their alleged breach of fiduciary duties under the theory of respondeat superior. SAC ¶ 468. However, this Court previously held that the Receiver's Amended Complaint failed to plead such a claim properly, because the Complaint did not allege that the Director Defendants were acting in their capacity as employees of CFS-Curacao while committing the purported breaches of duty. *Court Appointed Receiver*, 2008 WL 926513, at *5. The Receiver attempts to overcome this hurdle by summarily alleging that at all times, the Director Defendants were "employed by and acting for" CFS-Curacao, and that they were "dominated and controlled" by CFS-Curacao. SAC ¶¶ 83, 91, 457, 458. The Court has held that such conclusory allegations are insufficient to sustain the Receiver's claim. *Court Appointed Receiver*, 2008 WL 926513, at *5. ("The Receiver's assertion, that because CFS-Curacao provided the Director Defendant's to the Offshore Funds it is liable under the doctrine of respondeat superior, is a mere legal conclusion.") The Receiver still has not alleged sufficient facts to state a claim for vicarious liability under the theory of respondeat superior for breaches of fiduciary duty by the Director Defendants. *See also infra* at 23-24. Accordingly, this claim fails again. It will be dismissed with prejudice.

**F.**     Count IX and X:  Aiding and Abetting Breach of Fiduciary Duty

In the SAC, the Receiver alleges that CFS-Curacao aided and abetted a breach
of fiduciary duty by the Director Defendants, and in a separate count, alleges that
CFS-Curacao aided and abetted a breach of fiduciary duty by Lauer.  A claim for
aiding and abetting a breach of fiduciary duty requires:  (1) a fiduciary duty on the
part of the primary wrongdoer (in this case, either the Director Defendants or Lauer);
(2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider
and abettor; and (4) the aider and abettor's substantial assistance or encouragement
of the wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla.
2002); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).
To satisfy the substantial assistance element, a plaintiff must allege (1) recklessness
and a duty to disclose and/or (2) conscious intent.  *Woods v. Barnett Bank of Ft.
Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985).

With respect to the prior complaint, the Court dismissed the Receiver's aiding
and abetting claims against CFS-Curacao because the element of "substantial
assistance" was found to be lacking.  Specifically, the Court found that in the
absence of an allegation of a duty to disclose, liability can be imposed only upon a
finding of a "high conscious intent" and a "conscious and specific motivation" to aid
the fraud.  *Court Appointed Receiver*, 2008 WL 926513, at *5-6.  Only if a duty to
disclose is alleged, would a defendant be subject to liability based upon a finding of
recklessness.  *Id*.  In the Order, the Court found that the Receiver did not allege that

CFS-Curacao had a duty to disclose any alleged misconduct of a third party to the Offshore Funds, and further, that the Amended Complaint failed to contain allegations that set forth the requisite degree of scienter. *Id.* Thus, the Court dismissed the aiding and abetting claims.

Now the Court finds that the Receiver states a duty to disclose based on CFS-Curacao's previous decision to speak voluntarily. *See infra* at pages 11-13; SAC ¶ 31; *Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986). The Court has also found in this Order that the Receiver states a claim for gross negligence against CFS-Curacao. The allegations of these two claims taken together satisfy the Receiver's burden to allege the substantial assistance element of a claim for aiding and abetting a breach of fiduciary duty. As the Receiver has sufficiently alleged a fiduciary duty on the part of the primary wrongdoer (in this case, both the Director Defendants or Lauer[3]); (2) a breach of this fiduciary duty; (3) knowledge of the breach by CFS; and (4) CFS' substantial assistance in the wrongdoing, this count may stand.

---

[3] Previously the Court found that the Receiver stated a claim against the Director Defendants for aiding and abetting Lauer's breach of fiduciary duty, *Court Appointed Receiver,* 2008 WL 926509, at *5-7, and that a claim had been stated against the Director Defendants for breach of fiduciary duty under ERISA, *id.* at *9.

G.   **Employee Retirement Income Security Act ("ERISA")**[4]

1.   **Breach of ERISA Fiduciary Duty as to CFS-Curacao**

In its Order, the Court previously dismissed the Receiver's claim for breach of

ERISA fiduciary duty as to CFS-Curacao because the Receiver did not allege that "CFS-

Curacao had actual authority or control over the underlined decisions by the Director Defendants

to either take or not take actions with respect to Offshore's ERISA plan assets" and

that "the Receiver has failed to allege sufficient facts demonstrating that CFS-

Curacao rendered investment advice for a fee." *Court Appointed Receiver*, 2008 WL

926513, at *8 (emphasis in original).  The Court further held that

> [p]erformance of the contractual obligation to compute and price the
> monthly NAV for Offshore is not, in and of itself, sufficient to meet the
> requirements of the applicable regulation.  The regulation requires that,
> in addition to rendering advice as to the value of securities, the
> individual must also, either directly or indirectly, have discretionary
> authority or control with respect to purchasing or selling the securities
> or render advise to the plan on a regular basis.  Such services must serve
> as a primary basis for investment decisions and the individual must
> render individualized investment advise to the plan based on the
> particular needs of the plan regarding, among other things, investment
> policies or strategy, overall portfolio composition or diversification of
> the plan investments.  29 C.F.R. § 2510.3-21(c)(1).  At best, the
> Receiver only alleges that CFS-Curacao rendered advice regarding the

---

[4]  The Court has previously found that the Receiver has sufficiently alleged that
the equity interests of Benefit Plan Investors in Offshore exceeds 25%, and that those
Benefit Plan Investors include certain ERISA plans.  Consequently, the Receiver has
sufficiently alleged that an undivided interest in each of the underlying assets of
Offshore is an ERISA plan asset.  The Court also found that by alleging that the
Receiver is an ERISA fiduciary with respect to the underlying assets of Offshore, the
Receiver sufficiently pled that he had standing to assert ERISA claims.

> value of securities.  While the Receiver may have alleged the Director
> Defendants performed the other requisites of a fiduciary, it has not
> alleged CFS-Curacao did so.  The mere fact CFS-Curacao appointed the
> Director Defendants is insufficient to impute the duties the Director
> Defendants were obligated to perform to CFS-Curacao.

*Court Appointed Receiver*, 2008 WL 926513, at *9.  Now, the Receiver asserts that he

has alleged that CFS-Curacao is an ERISA fiduciary because it (a) rendered investment

advice with respect to Offshore's ERISA plan assets for a fee and (b) was an affiliate

of certain Director Defendants who had discretionary authority and control with

respect to purchasing or selling Offshore's ERISA plan assets.  In support of his

argument as to (a), the Receiver argues *again* that

> Citco N.V. had a contractual obligation to compute the monthly NAV for
> which it received a substantial annual fee from Offshore.  Compl. ¶¶ 96-
> 99, 352, 360, 380.  This establishes that Citco N.V. "render[ed] advice to
> an ERISA plan as to the value of securities" to satisfy the first element
> of the fiduciary analysis.

DE 165 at 23.

As cited above at length from this Court's previous Order, the "[p]erformance

of the contractual obligation to compute and price the monthly NAV for Offshore is

not, in and of itself, sufficient to meet the requirements of the applicable

regulation."  The Receiver has still failed to allege sufficient facts to allow this claim

to go forward.  Additionally, the argument that Directors Conroy and Quilligan were

"affiliates" under ERISA is a theory of liability not pled in the SAC but merely raised

in the Receiver's opposition memorandum.  *See Bruhl v. PricewaterhouseCoopers

Int'l*, No. 03-23044, 2007 WL 997362 at *4 (Mar. 27, 2007).

**2.     Respondeat Superior Theory**

The Receiver again attempts to assert that CFS-Curacao, as the employer of the Director Defendants, is vicariously liable for the Director Defendants' breach of fiduciary duty[5] under the doctrine of respondeat superior.[6]  For respondeat superior liability to attach, the Director Defendants must have breached their duty to the Funds while acting in the scope of their employment with CFS-Curacao.  *Hamilton v. Carell*, 243 F.3d 992, 1001 (6th Cir. 2001).  But the Director Defendants did not allegedly breach their fiduciary duties while acting in the scope of their employment with CFS-Curacao, they are alleged to have breached their fiduciary duties when

---

[5]  Previously, the Court found that the Receiver had adequately alleged the fiduciary status of the Director Defendants under ERISA.  See *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2008 WL 926509, *9 (S.D. Fla. Mar. 31, 2008)

[6]  It is unclear whether respondeat superior is even applicable to ERISA cases.  Neither the Eleventh Circuit Court of Appeals, nor any district court in Florida, has addressed the question of respondeat superior liability in the ERISA context.  Several courts have found it inapplicable or expressed reservations about imposing respondeat superior liability under ERISA, since the statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it did not expressly incorporate.  *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig*, No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005); *Woods v. Southern Co*, 396 F. Supp. 2d 1351, 1370 n.10 (N.D. Ga. 2005); *Tool v. Nat'l Employee Benefit Servs., Inc.*, 957 F. Supp. 114, 1120-21 (N.D. Cal. 1996).  On the other hand, a number of courts have recognized respondeat superior in the ERISA context.  *See, e.g., Kling v. Fidelity Management Trust Co.*, 323 F. Supp. 2d 132, 146-47 (D. Mass. 2004); *Hamilton v. Carell*, 243 F.3d 992, 1000 (6th Cir. 2001) (recognizing that respondeat superior can be applied in ERISA context where employee breaches fiduciary duties while acting in the scope of employment); *Nat'l Football Scouting Inc. v. Cont'l Assurance Co.*, 931 F.2d 646 (10th Cir. 1991) (same).

acting as Directors of the Fund.  The breaches of duties alleged are clearly beyond

the scope of their duties as employees of CFS-Curacao.  CFS-Curacao cannot be held

liable under the doctrine of respondeat superior because it cannot be said that the

Director Defendants' function of providing investment services to the Fund was in the

course and scope of their employment as employees of CFS-Curacao.  As one court

has explained:

> Under the doctrine of respondeat superior, a principal may be liable
> "for the false statement or other misconduct of the agent acting within
> the scope of his authority."  *Gleason v. Seaboard Air Line Ry. Co.*, 278
> U.S. 349, 356 (1929).  In line with the "two hats" theory, however, an
> employee who performs services on behalf of her employer's benefit
> plan may serve two masters: the company (as an employee), and the
> plan (as a fiduciary or agent thereof).  When an employee takes actions
> regarding the plan, he is not "acting within the scope of his authority"
> granted by the employer, but rather that granted by the plan or plan
> fiduciary. . . .  Accordingly, respondeat superior cannot create fiduciary
> status on behalf of the employer, but could only give rise to liability
> where the employer is otherwise a plan fiduciary as to the functions
> performed by its agents.

*In re Mutual Funds Inv. Litigation*, No. 04-md-15864, 2005 WL 3692756, *9 n.15  (D.

Md. Dec. 6, 2005); *see also Hamilton v. Carell*, 243 F.3d 992, 1003 (6th Cir. 2001)

(corporate employer cannot be held liable under the doctrine of respondeat superior

because employee's function of providing investment services to the trust fund was

not in the course and scope of his employment as Comptroller for employer).  This

theory cannot make CFS vicariously liable for the Director Defendants' alleged acts

where it had no fiduciary duty of its own to the Funds.  *See supra* at 18.

### 3.      Parties in Interest Under ERISA

Alternatively, the Receiver argues that CFS-Curacao and the Director

Defendants are liable as parties in interest under ERISA because they provided

investment services with respect to the Funds' ERISA plan assets and, together with

Lancer Management, defrauded the Funds' ERISA plan investors by overstating the

value of the Offshore's ERISA plan assets.  This theory of liability is not pled in the

SAC and the Receiver may not use his opposition to the motion to dismiss as a means

by which to amend his theory of the complaint.  *See Bruhl v. PricewaterhouseCoopers*

*Int'l*, No. 03-23044, 2007 WL 997362 at *4 (Mar. 27, 2007); *Artubel v. Colonial Bank*

*Group, Inc.*, No. 08-cv-179, 2008 WL 3411785, at *12 n.38 (M.D. Fla. Aug. 8, 2008).

### 4.      Co-Fiduciaries

The Receiver argues that CFS-Curacao and the Director Defendants are liable

as co-fiduciaries because, as fiduciaries, they knew or should have known that Lancer

Management, which the Receiver has adequately alleged is a fiduciary itself,

breached its fiduciary duty and failed to remedy the breach.  This claim cannot go

forward as the Court has concluded that the Receiver has not adequately alleged that

CFS-Curacao is a fiduciary.

### Leave to Amend

In its previous order, when the Court dismissed the Amended Complaint, the

Receiver was specifically given *one more opportunity* to attempt to state the various

dismissed claims.  After almost four months, the Receiver submitted his significantly

expanded 194-page Second Amended Complaint.  As the Receiver has been given

ample opportunity to attempt to state the claims asserted, those claims that are

dismissed above, are dismissed with prejudice.

**Conclusion**

For the foregoing reasons, Motion to Dismiss the Receiver's Second Amended

Complaint by Citco Fund Services (Curacao) N.V., Inter Caribbean Services, Ltd.,

Anthony Stocks, Kieran Conroy and Declan Quilligan [DE 132] is **GRANTED in part and**

**DENIED in part**, as provided herein.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th day of March, 2011.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record