UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-60080-CIV-MARRA/JOHNSON

COURT APPOINTED RECEIVER
of LANCER OFFSHORE, INC.
and THE OMNIFUND, LTD.,

       Plaintiff,

vs.

THE CITCO GROUP LTD., CITCO FUND
SERVICES (CURACAO) N.V., CITCO FUND
SERVICES (USA) INC., INTER CARIBBEAN
SERVICES, LTD., ANTHONY STOCKS,
KIERAN CONROY, and DECLAN QUILLIGAN,

       Defendants.

_____/

## ORDER AND OPINION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss the Receiver's

Second Amended Complaint by the Citco Group Limited and Citco Fund Services (USA)

Inc. [DE 134].  The Court has carefully considered the motion, response, reply, oral

argument of counsel, and is otherwise fully advised in the premises.

**Introduction and Background**

      The Receiver commenced this action by filing a six-count Complaint against

several Defendants, including movants, The Citco Group Limited ("CGL") and Citco

Fund Services (USA), Inc. ("CFS-USA").[1]  All Defendants moved to dismiss the

_____

     [1]  As alleged, CGL, a Cayman Islands corporation, is the parent company of
both CFS-USA, a Florida corporation, and Citco Fund Services (Curacao) N.V. ("CFS-
Curacao"), a Netherlands Antilles company (SAC ¶¶ 29, 35,50.)  The Receiver's claims

Complaint.  Prior to any ruling on the motion, the Receiver filed an Amended

Complaint, naming two additional Defendants,[2] and adding additional claims.   The

113-page, 319 paragraph Amended Complaint contained eleven separate counts.  *See*

DE 32.

On March 31, 2008, the Court entered its Order and Opinion (the "Order")

dismissing all counts of the Amended Complaint against CGL and CFS-USA.  *Court*

*Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.,* No. 05-60080,

2008 WL 926512 (S.D. Fla. Mar. 31, 2008).  In the Order, the Court identified

numerous procedural and substantive defects, and gave the Receiver one opportunity

to amend each claim to cure these deficiencies.

On July 22, 2008, the Receiver filed a 194-page, 532-paragraph Second

Amended Complaint ("SAC") [DE 110].  CGL and CFS-USA have moved once again to

dismiss.  CFS-USA argues that the Receiver has again failed to satisfy even the lowest

pleading standard, Federal Rule of Civil Procedure 8 ("Rule 8"), with respect to the

claims against it.  CGL and CFS-USA also maintain that the SAC fails to state a claim

---

against the CGL and CFS-USA stem from CFS-Curacao's contractual role as
administrator of two offshore hedge funds: Lancer Offshore, Inc. and the OmniFund,
Ltd. (collectively, the "Offshore Funds" or "Funds").  The Receiver brings this action
on behalf of the Offshore Funds and asserts claims for damages caused directly to the
Funds by defendants, as opposed to any damages the defendants may have caused to
the Offshore Funds' investors and creditors.  *See* SAC ¶ 2

[2] One of the added Defendants is Inter Caribbean Services, Ltd. ("ICS").
Movants refer to Defendants ICS, Anthony Stocks, Kieran Conroy and Declan Quilligan
collectively as the "Director Defendants."

for direct liability against either one of them.  The SAC also asserts secondary or vicarious liability under theories of actual agency, apparent agency, respondeat superior, and piercing the corporate veil.  CGL and CFS-USA assert that the SAC fails to satisfy the pleading requirements for any of these theories.

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . .  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, - U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing  *Twombly*, 550 U.S. at 570).

Discussion

The Problem With "Lumping" Continues

In its prior Order granting CGL and CFS-USA's Motion to Dismiss the Amended

Complaint, the Court admonished the Receiver for improperly "lumping" CGL, CFS-

USA and CFS-Curacao together through the repeated use of the term "Citco

Defendants," and the claims as to CFS-USA were dismissed for failing to satisfy Rule

8(a).  The Court observed:

> the Receiver makes hundreds of references to the "Citco Defendants" as
> a single, monolithic entity, ignoring the very obvious distinctions
> between CFS-Curacao, the administrator of the Offshore Funds, and The
> Citco Group and CFS-USA, separate corporations with no apparent
> contractual or legal duties to the Offshore Funds.

*Court Appointed Receiver*, 2008 WL 926512, at *3.  This lumping technique "creates

confusion and make the analysis [of the complaint] unnecessarily burdensome," and

results in the Receiver making accusations that are "just not accurate."  *Id*. at *4.[3]

Rather than remedying these deficiencies, the Receiver compounds the

problem in the SAC, by not only continuing to employ the term "Citco Defendants,"

but also by utilizing the term "Citco" as an alternative means of collectively referring

to CGL, CFS-USA and CFS-Curacao.  Ignoring the Court's admonishment, the Receiver

---

[3]  The Court has repeatedly held in ancillary and related cases that such
"lumping" is inappropriate.  *See, e.g., Court Appointed Receiver v. The Citco Group
Limited*, No. 05-60055-CIV, 2008 WL 926506, at *3 (S.D. Fla. Mar. 31, 2008); *Bruhl v.
PricewaterhouseCoopers Int'l*, No. 03-23044-Civ-Marra, 2007 WL 997362, at *4 (S.D.
Fla. Mar. 27, 2007).

uses the term "Citco Defendants" and "Citco" over 800 times throughout the 194-page, 532-paragraph SAC.  The Receiver defends his use of the collective label "Citco Defendants" asserting the "[f]acts establishing that the Citco Defendants acted in concert are part of the Receiver's substantive case against them. . . .  The Receiver sufficiently alleges that Citco USA and The Citco Group are vicariously liable for the acts of Citco N.V. under an agency theory, thus allowing the Court to treat these entities as a single entity."  DE 166 at 3-4.  The Court dismisses the Receiver's various agency theories below, but notes that this purported explanation is inadequate to justify the SAC's use of the collective term throughout the entire complaint.

Previously, this lumping led the Court to rule that the complaint failed to satisfy Rule 8 as to CFS-USA due to the lack of specific, individualized allegations directed to CFS-USA as a separate entity.  *Court Appointed Receiver*, 2008 WL 926512, at *5.  In so ruling, the Court observed that "[t]he only thread that connects CFS-USA to this suit is the fact that William Keunen is a named officer of that company. . .  Having Keunen as a named officer, in and of itself, does not suggest direct participation by CFS-USA."  *Id*.  The Court explicitly stated that in any forthcoming complaint, the Receiver must make "independent allegations" against CFS-USA which "demonstrate it engaged in wrongful conduct."  *Id*.

The Receiver claims he has cured these pleading deficiencies as to CFS-USA. He has not.  Despite adding 81 pages and 213 paragraphs to his pleading, the Receiver makes no independent allegations directed to CFS-USA.  The only change the Receiver

has made is to add the conclusory phrase, repeated dozens of times, that Keunen acted both "in his express authority as Director of Fund Services of [CGL] and as an officer of [CFS-USA]".  SAC ¶¶ 127-130.  But as already stated, the mere fact that Keunen is an officer of CFS-USA cannot constitute "sufficient facts" that would demonstrate direct participation by CFS-USA "as a separate and independent entity." *Court Appointed Receiver*, 2008 WL 926512, at *5.

### Claims Alleging Direct Liability

**A.** **Breach of Contract and Breach of**
**Implied Duty of Good Faith and Fair Dealing**

Although the Breach of Contract and Breach of Implied Duty of Good Faith and Fair Dealing (Counts V and VI) are directed to the "Citco Defendants" collectively, the Receiver acknowledges that neither CGL nor CFS-USA were in "direct privity" with the Offshore Funds, and thus cannot be held liable under a *direct* liability theory.  DE 166 at 12, 26.  By repeatedly alleging that "the Citco Defendants" entered into the Administrative Service Agreements with the Offshore Funds, or that "the Citco Defendants" collectively served as the Funds' administrator, the Receiver continues to make allegations that are factually and undisputedly inaccurate.  SAC ¶¶ 80, 82, 143, 426, 433.  Because there are no breach of contract or breach of implied duty of good faith and fair dealing claims made directly against either CGL or CFS-USA, Counts V and VII are construed to be brought only against CFS-Curacao.  If the Receiver intended to proceed against CGL or CFS-USA for these claims, he may not.

**B.**  **Professional Malpractice (Count XII)**

In defense of his professional malpractice claim against CGL and CFS-USA, the Receiver refers the Court to the arguments asserted in his Memorandum of Law in Opposition to CFS-Curacao and the Director Defendants' Motion to Dismiss Complaint. The Court, in kind, refers the Receiver to and incorporates herein, its Order and Opinion which rules on CFS-Curacao and the Director Defendants' Motion to Dismiss, which dismisses with prejudice the professional malpractice claim.

**C.**  **Gross Negligence (Count VII)**

In another Order and Opinion entered this same day, the Court concludes that the gross negligence claim against CFS-Curacao may proceed because the Receiver alleges that CFS-Curacao *voluntarily* (separate and independent of any contractual obligation) disseminated NAV statements to Lancer personnel, the Funds' management, and investors.[4]  Because it is alleged that CFS-Curacao was aware of

---

[4]     Because the SAC alleges that CFS-Curacao was aware of the Funds' inflated valuations, its failure to speak accurately rendered its own prior speech concerning the Funds' values misleading and deceptive. SAC ¶¶ 119-20.  As the Receiver alleges, CFS-Curacao thus owed the Funds a duty to disclose the inflated valuations to the "independent" directors and the appropriate authorities.  SAC ¶¶ 119, 441. The SAC further alleges that CFS-Curacao breached this independent duty and caused damage to the Funds.  SAC ¶¶ 18, 137, 142, 452, 467, 476.  This duty, combined with the alleged underlying financial incentive to increase their own fees, adequately states a claim for gross negligence.

DE 190 at 11-13.

the Funds' inflated valuations, its failure to speak accurately rendered its own prior speech concerning the NAVs misleading and deceptive.  SAC ¶¶ 119-20.  Accordingly, the Court found that the Receiver has stated a claim for gross negligence against CFS-Curacao based on its breach of a duty owed to the Funds to disclose the inflated valuations to the "independent" directors and the appropriate authorities.  SAC ¶¶ 119, 441.  The Receiver also seeks to proceed on a gross negligence claim against CGL and CFS-USA.  This claim is based on CGL's and CFS-USA's theoretical duty to disclose (plus of course, breach, damages, and reckless, wanton, and willful disregard of this duty).

It is undisputed that CGL and CFS-USA did not have a contractual relationship with the Funds.  So, in order to properly allege the first element of negligence, the Receiver must allege facts which would show that CGL and CFS-USA[5] owed the Funds a duty of care.  The Receiver makes several arguments in this respect.  The Receiver argues that CGL's and CFS-USA's "close involvement with the Funds" created such a duty, *i.e.*, they put their own conflicted employee (Anthony Stocks) and alter ego (ICS) on the Funds' Board, and controlled the actions of the Funds' directors through Keunen, who was acting on their behalf, and directed CFS-Curacao to disseminate the

---

[5] For the vast majority of the allegations, CFS-USA is not even mentioned.  CFS-USA is brought in strictly through William Keunen, "who at all times acted in his express authority as the Director of Fund Services of The Citco Group and an officer of Citco USA and/or within the scope of his employment with The Citco Group and Citco USA. . ."  SAC ¶ 12, *see also* ¶¶ 127, 147, 149, 151, 166, 177, 188.

inflated NAVs despite knowledge that they were not based in reality.  SAC ¶¶ 8, 10,

49, 53, 121-23, 128-31, 138, 144, 256, 259-62.  The Receiver's assertion that CGL's

and CFS-USA's close involvement with the Funds created a duty to disclose is based

on a single case, *Carson v. Lynch Multimedia Corp.*, 123 F. Supp. 2d 1254, 1259 (D.

Kan. 2000).  *Carson* addresses a claim for breach of fiduciary duty pursuant to Kansas

law and is neither binding nor persuasive authority.  Moreover, the same allegations -

based on the internal emails between CGL and CFS-Curacao - existed in the Amended

Complaint, which this Court deemed insufficient to establish a duty of care owed to

the Funds.  *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*,

No. 05-60080, 2008 WL 926512, *7 (S.D. Fla. Mar. 31, 2008).

Similarly, the Receiver's argument that CGL and CFS-USA owed a duty to

disclose because its employees on the Funds' Board were aware that the NAVs they

helped disseminate were inaccurate also fails because there are no facts alleged to

support such allegation, and the NAV statements attached to the SAC unambiguously

indicate that they were sent by CFS, not CGL.  SAC, Ex. C.  The name "Citco Fund

Services (Curacao) N.V." appears in the letterhead at the top of the page along with

the address and phone number of CFS's office in the Netherlands Antilles.  *See, e.g.*,

DE 110-5 at 22, 39.  The name "The Citco Group Limited" or "Citco Fund Services

(USA) Inc." does not appear anywhere on the NAV statements.

The SAC also alleges that CGL and CFS-USA held themselves out to the Funds as

having policies and procedures to ensure that their independent pricing of the Funds'

NAVs would be accurate and fair.  But there is no allegation *of fact* as to how this

purported representation was communicated to the Funds.  SAC ¶¶ 138.  Regarding

the claim that Keunen directed CFS-Curacao in an e-mail to disseminate inflated

NAV's, the Court has already held that "[a]s far as the e-mails are concerned, even if

true, they do not show that The Citco Group had a duty to disclose."  *Court*

*Appointed Receiver*, 2008 WL 926512, at *7.  Because the documents attached to the

SAC do not show that either CGL or CFS-USA directly disclosed any information to the

Offshore Funds, the Receiver has not alleged sufficient facts to support his allegation

that CGL or CFS-USA owed the Funds a duty of care.  Accordingly, it is unnecessary to

address the other elements of a gross negligence claim and the SAC's claim for gross

negligence against CGL and CFS-USA will be dismissed with prejudice.

**D.      Breach of Fiduciary Duty (Count VIII)**

In an Order and Opinion entered this same day, the Court dismisses with

prejudice the breach of fiduciary duty claim against CFS-Curacao.  *See* DE 190 at 13-

17.   The Receiver makes similar arguments in his response to the instant motion as

he made in response to CFS-Curacao's motion to dismiss the breach of fiduciary duty

count.  Here, however, because there is no contractual duty between the Funds and

CGL or CFS-USA, the Receiver argues the Director Defendants' fiduciary duty should

be imputed to CGL and CFS-USA because CGL and CFS-USA influenced and controlled

the Director Defendants.  For the same reasons provided in the Order and Opinion as

to CFS-Curacao, the Court concludes that this claim fails because, at a minimum,

such allegations do not show that the Funds expressly "reposed their confidence" in

CGL or CFS-USA, or that CGL or CFS-USA in turn "accepted" that trust. *Id.; see also*

*Court Appointed Receiver*, 2008 WL 926512, at *8.

**E.     Aiding and Abetting Breach of Fiduciary Duty (Count X and XI)**

In the SAC, the Receiver alleges that CGL and CFS-USA aided and abetted

breaches of fiduciary duty by the Director Defendants, and in a separate count, aided

and abetted a breach of fiduciary duty by Lauer.  A claim for aiding and abetting a

breach of fiduciary duty requires:  (1) a fiduciary duty on the part of the primary

wrongdoer (in this case, either the Director Defendants or Lauer); (2) a breach of this

fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4)

the aider and abettor's substantial assistance or encouragement of the wrongdoing.

*See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla. 2002); *see also*

*AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).  To satisfy the

substantial assistance element, a plaintiff must allege (1) recklessness and a duty to

disclose and/or (2) conscious intent.[6]  *Woods v. Barnett Bank of Ft. Lauderdale*, 765

F.2d 1004, 1010 (11th Cir. 1985).

---

[6] Only if a duty to disclose is alleged, would a defendant be subject to liability
based upon a finding of recklessness.  *Court Appointed Receiver*, 2008 WL 926513, at
*5-6.  In the absence of an allegation of a duty to disclose, liability can be imposed
only upon a finding of a "high conscious intent" and a "conscious and specific
motivation" to aid the fraud.  *Id.*

With respect to the prior complaint, the Court dismissed the Receiver's aiding and abetting claims because the allegations relating to the element of "substantial assistance" was lacking.  Now the Receiver asserts the SAC alleges substantial assistance through allegations of both recklessness and a duty to disclose, as well as independent allegations of conscious intent.

As analyzed in the section on gross negligence, the Court finds that the Receiver's attempt to allege that CGL and CFS-USA owed the Funds a duty to disclose is untenable.  The Receiver's attempt to argue "conscious intent" is also rejected because he relies on conclusory allegations that are substantially similar to those previously rejected by the Court.  *See Court Appointed Receiver*, 2008 WL 926512 at *9.  Further, in arguing "conscious intent," the Receiver relies on an opinion from a related case brought by certain investors in the Offshore Funds, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 382 (2d. Cir. 2009).  This opinion involves aiding and abetting claims asserted against Banc of America Securities LLC, the Offshore Funds' prime broker, which, as part of its contractual duties, prepared trade and position reports that incorporated Lauer's allegedly fraudulent information.  *Id*. at 504-06.  This opinion provides no support for imposing liability on two entities that had no contractual relationship with the Funds, and which did not issue NAV statements.

Since it cannot be said that CGL and CFS-USA had a duty to disclose any alleged misconduct of a third party to the Offshore Funds, and because the SAC does not

contain allegations that set forth the requisite degree of scienter for conscious intent, this count will be dismissed with prejudice.

**Claims for Secondary or Vicarious Liability**

**F.      Employee Retirement Income Security Act Claims (Counts II and IV)**[7]

The Receiver asserts respondeat superior liability exists under the Employee Retirement Income Security Act ("ERISA")[8] and that the Citco Defendants are vicariously liable for the actions and inactions of the Director Defendants.[9]  For respondeat superior liability to attach, the Director Defendants must have breached their duty to the Funds while acting in the scope of their employment with CGL.[10]

---

[7]  The Court previously found that the Receiver sufficiently alleged that the equity interests of Benefit Plan Investors in Offshore exceeds 25%, that those Benefit Plan Investors include certain ERISA plans, and that consequently an undivided interest in each of the underlying assets of Offshore is an ERISA plan asset.  The Court also found that by alleging the Receiver is an ERISA fiduciary with respect to the underlying assets of Offshore, the Receiver sufficiently pled that he had standing to assert ERISA claims.

[8]  It is unclear whether respondeat superior is even applicable to ERISA cases. Neither the Eleventh Circuit Court of Appeals, nor any district court in Florida, has addressed the question of respondeat superior liability under ERISA.

[9]  Previously, the Court found that the Receiver had adequately alleged the fiduciary status of the Director Defendants under ERISA.  See *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2008 WL 926509, *9 (S.D. Fla. Mar. 31, 2008)

[10]  There is no legal basis for alleging that CFS-USA is vicariously liable for the acts of any of the Director Defendants under a respondeat superior theory because not one of the individual directors is alleged to be an employee of CFS-USA. SAC ¶¶ 23-25.  The Receiver's argument that CGL or CFS-USA can be held liable under the doctrine of respondeat superior for the alleged acts of non-party Keunen is rejected. The Receiver has not pled the elements of any claim against Keunen.

*Hamilton v. Carell*, 243 F.3d 992, 1001 (6th Cir. 2001).  But it is not alleged that the

Director Defendants breached their fiduciary duties while acting in the scope of their

employment with CGL.  Rather, it is alleged that they breached their fiduciary duties

when acting as Directors of the Fund.  The breaches of duties alleged are clearly

beyond the scope of their duties as employees of CGL.  CGL cannot be held liable

under the doctrine of respondeat superior because the Director Defendants'

"authority or control with respect to the management or disposition of Offshore's

assets" cannot be said to have been in the course and scope of their employment as

employees of CGL.  SAC, *e.g.*, ¶¶ 346-54.  As one court has explained:

> Under the doctrine of respondeat superior, a principal may be liable
> "for the false statement or other misconduct of the agent acting within
> the scope of his authority."  *Gleason v. Seaboard Air Line Ry. Co.*, 278
> U.S. 349, 356 (1929).  In line with the "two hats" theory, however, an
> employee who performs services on behalf of her employer's benefit
> plan may serve two masters: the company (as an employee), and the
> plan (as a fiduciary or agent thereof).  When an employee takes actions
> regarding the plan, he is not "acting within the scope of his authority"
> granted by the employer, but rather that granted by the plan or plan
> fiduciary. . . .  Accordingly, respondeat superior cannot create fiduciary
> status on behalf of the employer, but could only give rise to liability
> where the employer is otherwise a plan fiduciary as to the functions
> performed by its agents.

*In re Mutual Funds Inv. Litigation*, No. 04-md-15864, 2005 WL 3692756, *9 n.15  (D.

Md. Dec. 6, 2005); *see also Hamilton v. Carell*, 243 F.3d 992, 1003 (6th Cir. 2001)

(corporate employer cannot be held liable under the doctrine of respondeat superior

because employee's function of providing investment services to the trust fund was

not in the course and scope of his employment as Comptroller for employer).  This

theory cannot make CGL vicariously liable for the Director Defendants' alleged acts where CGL had no fiduciary duty of its own to the Funds.  *See supra* at 17.

Alternatively, the Receiver argues that CGL is liable under ERISA as a party in interest because (a) it is a 100% owner of CFS-Curacao, a party in interest, and (b) it knew that the asset values provided by Lauer were inflated.  Movants respond that this theory of liability is not pled in the SAC.  The ERISA claims asserted in the SAC against CGL and CFS-Curacao are based on a respondeat superior theory of liability. Not only is the argument that CGL is *directly* liable as a party in interest not pled in the SAC, it is also inconsistent with the vicarious liability scheme alleged.  *See, e.g., supra*, section A.  The Receiver may not use his opposition to the motion to dismiss as a means by which to amend his complaint.  *See Bruhl v. PricewaterhouseCoopers Int'l*, No. 03-23044, 2007 WL 997362 at *4 (Mar. 27, 2007); *Artubel v. Colonial Bank Group, Inc.*, No. 08-cv-179-T-23MAP, 2008 WL 3411785, at *12 n.38 (M.D. Fla. Aug. 8, 2008).

**G.     "Piercing the Corporate Veil" Theory of Liability**

The Receiver also asserts a veil-piercing theory against CGL.  SAC ¶¶ 164-69. To state a cognizable claim for piercing the corporate veil, a plaintiff must allege facts that, if taken as true, demonstrate that the subsidiaries are "mere instrumentalities" of the parent, and that the defendants engaged in "improper conduct" in the formation or use of the subsidiary.  *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60055, 2008 WL 926506, *4 (S.D.

Fla. Mar. 31, 2008) citing *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d

1346, 1357 (S.D. Fla. 2000); *Aldea Communications, Inc. v. Gardner*, 725 So.2d 456

(Fla. Dist. Ct. App. 1999); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114,

1119-20 (Fla. 1984).

Under Florida law, the corporate veil may be pierced "in only the most

extraordinary cases." *Old West Annuity and Life Ins. Co. v. Apollo Group*, No.

03-cv-354, 2008 WL 2993958, *7 (M.D. Fla. Aug. 1, 2008).  Florida courts have adopted

a very stringent three-part test, which requires persuasive evidence that: (1) the

shareholder dominated and controlled the corporation to such an extent that the

corporation's independent existence was in fact nonexistent and the shareholders

were alter egos of the corporation; (2) the corporate form must have been used

fraudulently or for an improper purpose; and (3) the fraudulent or improper use of

the corporate form caused injury to the claimant.  *Hillsborough Holdings Corp. v.

Celotex Corp.*, 166 B.R. 461, 468 (M.D. Fla. 1994); *see also Homelands of DeLeon

Springs, Inc,* 190 B.R. 666, 670 (M.D. Fla. 1995); *Hobco, Inc. v. Tallahassee Assoc.*, 807

F.2d 1529, 1534 (11th Cir. 1987); *Lovette v. Happy Hooker II,* 2006 WL 66722, *6 (M.D.

Fla. 2006) ("[t]he Florida courts have imposed a strict standard upon those wishing to

pierce the corporate veil"); *Mills v. Webster*, 212 B.R. 1006, 1009 (M.D. Fla. 1997)

("[t]hose who seek to pierce the corporate veil ... carry a very heavy burden.")

(citing *Hillsborough Holdings*, 166 B.R. at 468).

In *Court-Appointed Receiver of Lancer Offshore*, on a motion to dismiss containing identical allegations to those now under consideration, this Court observed, solely for purposes of that motion and order, that the Receiver had alleged a veil piercing theory of liability.  2008 WL 926506 at *4.  This statement, however, was *dicta* and was intended to address the fact that the *elements* of piercing the corporate veil had been alleged.  It was not a ruling that a valid and supportable veil piercing cause of action had in fact been stated.  On closer examination, the Court finds that the SAC's conclusory allegations that CFS-Curacao was the "alter ego" and "mere instrumentality" of CGL fall short of stating a plausible basis for the claim. *Ashcroft v. Iqbal*,  - U.S. --, 129 S.Ct. 1937, 1949 (2009).  "[E]ntitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

When considering whether the "mere instrumentality" element has been properly alleged, the following factors are considered relevant:  If (i) the subsidiary has substantially no business or assets; (ii) the parent finances the subsidiary; (iii) the subsidiary has grossly inadequate capital; and (iv) the parent pays the subsidiary's expenses and salaries.  *See Church of Scientology v. Blackman*, 446 So.2d 190, 193 n.4 (Fla. Dist. Ct. App. 1984).  These factors are demonstrably absent here.  Indeed, the SAC confirms that corporate formalities were observed, including that

- CFS-Curacao had its own Managing Directors (Quilligan and Conroy), who were *not* directors or officers of CGL.  SAC ¶¶ 24-25, 32;

- CFS-Curacao employed over 100 people, and provided administrative services for over 200 funds from its own offices in Curacao.  SAC ¶¶ 24-25, 29, 32;

- CFS-Curacao signed the ASAs on its own behalf.  SAC ¶¶ 96, 351, Exs. J, K, L;

- The fees for its administrative services were invoiced by, and paid to, CFS-Curacao, which maintained its own bank accounts.  SAC ¶¶ 31(e), 32, Exs. D, E.

These factual allegations do not indicate that CFS-Curacao was so dominated and controlled by CGL that it lacked a separate corporate existence.  The Court's duty to accept the facts alleged in the complaint as true does not require it to ignore specific factual allegations that negate the underlying theory of liability in favor of general or conclusory allegations.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Wydler v. Bank of Am., N.A.*, 360 F. Supp. 2d 1302, 1306 n.1 (S.D. Fla. 2005) (court is not required to credit allegations that are negated by exhibited to complaint).  The action of the management of CFS-Curacao to report on significant matters to Keunen, who in turn reported to CGL's executive committee, also fails to indicate that CGL "disregarded corporate formalities."  *See Hillsborough Holdings Corp.*, 166 B.R. at 472  ("line-of-business reporting and general oversight" does not nullify corporate form").

Having failed to allege that CFS-Curacao was the "mere instrumentality" of CGL, there is no need to further analyze the other elements for piercing the corporate veil.

The Receiver also pleads that CGL selected its alter ego ICS to serve on the Offshore Funds' board for the improper purpose of increasing CFS-Curacao's administrative fees.  SAC ¶¶ 8-10, 12, 49, 131.  In support of the allegation that CGL dominated and controlled ICS, the Receiver relies on the allegation that CGL employees, Stocks and Verhooren, were authorized to sign on ICS's behalf as attorneys-in-fact and/or directors.  SAC ¶¶ 168-69.  This allegation of overlapping authority does not rise to the level of total domination required for a Court to ignore the corporate form.  Further, the only purported claim of improper conduct is based on the conclusory allegation that CGL controlled ICS's activities as a corporate director.  SAC ¶ 169.  As with CFS-Curacao, there is no legitimate basis set forth in the SAC for disregarding the separate corporate form of ICS.  *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (the fact that subsidiaries were created to perform specific functions for other related companies did not provide a justification to pierce the corporate veil).  Therefore, the Receiver's attempt to hold CGL liable as the "alter ego" of ICS is rejected.  *Court Appointed Receiver*, 2008 WL 926512, at *3, n.3.

**H.**    **Actual Agency Theory of Liability**

To establish an agency relationship, a plaintiff must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent.  *Whetstone Candy Co. v. Kraft Foods, Inc,*, 351 F.3d 1067, 1077 (11th Cir. 2003);

*Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, 2008 WL 2557503, *3 (S.D. Fla. Jun. 23, 2008). The Receiver is attempting to proceed on a theory that CFS-Curacao served as the agent of both CGL and CFS-USA. This theory has already been rejected once because the Receiver had not pled "acknowledgment" by CGL or "acceptance" by CFS-Curacao. *Court Appointed Receiver*, 2008 WL 926512, at *6.

The Receiver provides no meaningful argument as to why the Court should depart from its prior ruling rejecting the actual agency theory. The SAC's new allegations - relating to Keunen's alleged involvement in administrative services - are the same that this Court previously deemed insufficient to demonstrate acknowledgment and acceptance. *Id.* Moreover, the SAC does not plead the control element of actual agency. In order for a parent company to be liable for its subsidiary's acts under an agency theory, the parent "must exercise control to the extent that the subsidiary manifests no separate corporate interest of its own and functions solely to achieve the purposes of the dominant corporation." *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1356 (S.D. Fla. 2000). Even if true, the allegations that Keunen ordered CFS-Curacao to send out erroneous NAVs, reported to CGL regarding CFS-Curacao's resignation, and "controlled [CFS-Curacao's] appointment of the Funds' board members," SAC ¶ 151, are insufficient to demonstrate that CFS-Curacao had "no separate corporate interest" and functioned "solely to achieve the purposes of" CGL or CFS-USA. *See State v. Am. Tobacco Co.*, 707 So.2d 851, 856 (Fla. Dist. Ct. App. 1998) (finding no agency relationship between

parent and subsidiary despite assertion that, among other things, parent adopted policy statements and established goals and objectives of its subsidiaries).

For the first time, the Receiver also seeks to hold CGL liable for ICS's conduct under an agency theory.  SAC ¶¶ 152-54.  However, the Receiver does not even attempt to allege facts that would support his purely conclusory allegations of acknowledgment by CGL or acceptance by ICS.  SAC ¶¶ 152-53.  Further, the Receiver's allegations of control, SAC ¶¶ 154 161, amount to nothing more than the allegation that CGL and ICS shared certain officers or employees.  These allegations are not sufficient to establish the control element.  *See, e.g., Cook*, 2006 WL 580991, at *3 (sharing officers fails to establish that one company was the "mere agency or instrumentality of the other").

I.    **Apparent Agency Theory of Liability**

Previously, this Court wrote:

> Apparent authority exists when the principal creates the appearance of an agency relationship.  *Ja Dan, Inc. v. L-J Inc.*, 898 F.Supp. 894, 900 (S.D. Fla. 1995).  Three elements are required to establish an apparent agency: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation.  *Roessler v. Novak*, 858 So.2d 1158, 1161-62 (Fla. Dist. Ct. App. 2003).  The Court stops its analysis at element (a) because the Receiver does not allege that The Citco Group made any representation that it was authorizing CFS-Curacao to act as its agent to provide administrative services for the Funds. Therefore, the Receiver's Complaint does not allege vicarious liability on the Citco Group through an apparent agency relationship theory.

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 05-60080-Civ-

Marra, 2008 WL 926512, *7 (S.D. Fla. Mar. 31, 2008).  Now the Receiver asserts these pleading requirements are satisfied by the allegation that "Keunen notified Lancer Management of the decision to have Citco N.V. resign as administrator [and signed the Transition Agreement with Lancer Management] while acting within his express authority as a director of the Citco Group and officer of Citco USA."  DE 166 at 25, citing SAC ¶ 280.  Keunen's alleged role in alerting Lancer Management, as opposed to the Funds, of CFS-Curacao's resignation does not sufficiently allege the elements of an apparent agency between CGL, CFS-USA and the Funds.  Moreover, this argument is belied by a document attached to the SAC which shows that CFS-Curacao's resignation letter is on CFS-Curacao stationary and is signed on behalf of CFS-Curacao.  SAC, Ex. BB [DE110-37].  The letter informed the Offshore Funds' Board of Directors that the decision to resign "reflects our disagreement with the Investment Manager regarding its approach to the valuation of the Fund's portfolio." *Id*.  Thus, CFS-Curacao's resignation as administrator of the Funds does not support a claim of apparent agency, nor does it show a change in position by the Offshore Funds in reliance upon the resignation.

Finally, the Receiver points to paragraph 157 of the SAC where he alleges that Keunen, CGL's director Stocks, employee Verhooren, and fully-owned subsidiary ICS, represented to the Funds that CFS-Curacao had the authority to act on their behalf by controlling the Funds' administration and directing other acts which are attributed to CFS-Curacao in the delegation of its duties under the Agreements.  These facts are

conclusory, are contrary to terms of the ASAs and PPM (which identify only CFS-Curacao as the administrator), and are contrary to prior findings of this Court.  *See supra* at 9.; SAC, Exs. J-N.  Accordingly, the claim that CFS-Curacao served as CGL's and CFS-USA's apparent agent will be dismissed with prejudice.  *Ashcroft v. Iqbal*,  - U.S. --, 129 S.Ct. 1937, 1949 (2009).

**Leave to Amend**

In its previous order, when the Court dismissed the Amended Complaint, the Receiver was specifically given *one more opportunity* to attempt to state the various dismissed claims.  After almost four months, the Receiver submitted his significantly expanded 194-page Second Amended Complaint.  As the Receiver has been given ample opportunity to state any and all claims, those claims that are dismissed herein, are dismissed with prejudice.

**Conclusion**

For the foregoing reasons, the Motion to Dismiss the Receiver's Second Amended Complaint by the Citco Group Limited and Citco Fund Services (USA) Inc. [DE 134] is **GRANTED**.  The Citco Group Limited and Citco Fund Services (USA) Inc. are dismissed from this action.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of March, 2011.

KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record